WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150

Direct Dial: (212) 403-1329
Direct Fax: (212) 403-2329
E-Mail: WDSavitt@wlrk.com

June 28, 2023

<u>Via ECF</u>

The Honorable Katherine Polk Failla, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

       Re: *Securities and Exchange Commission* v. *Coinbase, Inc.*
         *and Coinbase Global, Inc.*, 23 Civ. 4738 (KPF)

Dear Judge Failla:

  Pursuant to Rule 4(A) of the Court's Individual Rules of Practice in Civil Cases, defendants Coinbase, Inc. and Coinbase Global, Inc. (together, "Coinbase" or the "Company") respectfully write to notify the Court of Coinbase's intent to file a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and to request a briefing schedule.

  Coinbase, the largest U.S. digital asset exchange, has been publicly traded since April 2021, when plaintiff the Securities and Exchange Commission ("SEC" or "Commission") declared the Company's registration statement effective after months of review. Compl. ¶¶ 16, 111; Answer ¶¶ 2, 63. Around that time, SEC Chair Gary Gensler testified before Congress that "there is not a market regulator around these crypto exchanges" and "only Congress" could confer authority to regulate crypto exchanges. Answer ¶¶ 7, 50. Two years on, with no intervening legislative act or material change in Coinbase's services, the SEC charges that the business exhaustively described to the SEC and the public in connection with the Company's direct public offering involves unregistered securities-related activities under federal law. Compl. ¶¶ 3-4, 7-8.

  Coinbase has answered the SEC's Complaint with numerous defenses, including that this action violates due process and constitutes an abuse of discretion. But there is a more fundamental problem with the SEC's case—one that the Chair recognized two years ago and that entitles Coinbase to judgment on the pleadings now: The subject matter falls outside the SEC's authority. The SEC may pursue this enforcement action only if relevant transactions in the digital assets and services identified in the Complaint are properly considered "investment contracts" and therefore "securities" within the meaning of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Because as a matter of law none of them are, the claims must be dismissed.

  ***Background.*** The core of Coinbase's business—and of the SEC's charges—is the provision of a spot exchange for secondary market trading of digital assets, sometimes called "cryptocurrencies" or "tokens" or "crypto assets." Answer ¶¶ 21, 31. And through a service called

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Katherine Polk Failla
June 28, 2023
Page 2

Coinbase Prime, institutional customers can execute at scale trades over the Coinbase spot exchange and other secondary spot exchanges of assets that have been approved for listing on Coinbase. *Id.* ¶ 32. On both the spot exchange and Prime, one customer's offer to buy or trade an asset at a given price is matched with another's offer to sell or trade—the exchange is (i) one digital asset for (ii) another such asset or fiat currency. *Id.* ¶¶ 27, 31-32. Nothing else is exchanged or promised. *Id.* ¶ 27.

Senior SEC officials have admitted that two tokens traded on Coinbase, Bitcoin and Ether, are *not* securities. *Id.* ¶¶ 48, 73 & n.94. But the SEC now asserts that twelve of the more than 240 other tokens listed for trading *are* securities. Compl. ¶¶ 114, 119. And it claims that Coinbase acts as a broker of a thirteenth "security," NEXO, by making that token available for self-custody by Coinbase customers in a free software application called Coinbase Wallet that allows users to store and access their own digital assets on their own devices. *Id.* The SEC makes this allegation even though Coinbase never takes custody of or even is able to access the assets stored using the Wallet tool. Answer ¶ 33.

The final target of the SEC's charges is Coinbase's "staking" services, which allow customers to earn rewards by contributing to the security of proof-of-stake blockchains. Compl. ¶ 7; Answer ¶ 34. The SEC calls this an unregistered "securities" offering, even though customers who stake through Coinbase never surrender ownership of their tokens (or any other property) or risk any loss by staking with Coinbase, and even though Coinbase's fee for this service is not for managerial but rather administrative IT services. Compl. ¶¶ 7-8; Answer ¶¶ 34, 62.

Congress has consistently recognized that regulatory authority over digital assets remains unassigned. It has considered at least 15 legislative proposals concerning the regulation of digital assets—including one as to which Coinbase's Chief Legal Officer was scheduled to appear before Congress and testify the morning this action was filed. None reflect the view that the SEC presently has the authority it claims through this action. Answer ¶¶ 51-53.

**Summary of Motion.** The SEC can pursue its claims only if the tokens and staking services it has identified are "securities." They are not. The claims must therefore be dismissed.

The Exchange Act and the Securities Act both define "security" to include, among dozens of other "instrument[s] commonly known as a 'security,'" an "investment contract." 15 U.S.C. § 78c(a)(10); 15 U.S.C. § 77b(a)(1). The Supreme Court, drawing from state Blue Sky law jurisprudence, long ago defined this as a contract—or "transaction or scheme" of connected contractual undertakings—in which an investor pays money for a promise to pay out profits or income of a business at a future date. *SEC* v. *W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

The transactions over Coinbase's platform and through Prime neither are nor involve contracts of this kind. They are asset sales, with the obligations on both sides discharged at the moment the digital token is delivered in exchange for payment. *See Revak* v. *SEC Realty Corp.*, 18 F.3d 81, 89 (2d Cir. 1994). No purchaser on Coinbase can claim any right beyond the right to take possession of the token. *See Rodriguez* v. *Banco Cent. Corp.*, 990 F.2d 7, 11 (1st Cir. 1993); *SEC* v. *Belmont Reid & Co.*, 794 F.2d 1388, 1391 (9th Cir. 1986). An "investment contract" is a

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Katherine Polk Failla
June 28, 2023
Page 3

security because it has "the essential properties of a debt or equity security." *Wals* v. *Fox Hills Dev. Corp.*, 24 F.3d 1016, 1018 (7th Cir. 1994) (Posner, C.J.). But unlike common stock and other securities, no statutory, contractual, or common law rights travel with the tokens the SEC has identified in its Complaint when they are traded on Coinbase. The absence of any such ongoing contractual relationship is fatal to the SEC's claims. As the Commission itself put it 77 years ago in *Howey*, an "investment contract" is "any contractual arrangement for the investment of money in an enterprise with the expectation of deriving profit through the efforts of the promoters." Br. for the SEC, *SEC* v. *W.J. Howey & Co.*, No. 843 (U.S. Apr. 17, 1946), 1946 WL 50582, at *9. The SEC's position today—that "*Howey* says that an investment contract can cover schemes *or* contracts," *SEC* v. *Binance Holdings Ltd.*, No. 1:23-cv-01599-ABJ, Tr. Hr'g TRO 16 (D.D.C. June 13, 2023)—is a distortion of the decades-old precedent it invokes.

What is more, whatever extra-contractual expectation a Coinbase purchaser may have in the increase of her token's market value is not an "interest[] in an enterprise"—a claim to the profits, assets, or management of the business. *Rodriguez*, 990 F.2d at 10 (citing *Howey*, 328 U.S. at 298-99). Reflecting the varieties of corporate finance, a classic security can be a simple share of stock, constituting a claim on dividends and the residual value of an enterprise; a preferred share of stock, with a coupon and a liquidation preference; a bond, note, or other debt contract that yields a fixed return for the investor, *see SEC* v. *Edwards*, 540 U.S. 389, 394 (2004); and an investment contract, where the investor pays money in exchange for a contractual claim on the proceeds of the business. But there must be a legal interest in an enterprise. Because the transactions over Coinbase involve no such interest, they are not securities.

Even if the SEC presented a colorable claim that the transactions at issue here are "investment contracts," the "major questions" doctrine would require dismissal of the Complaint. Having expressly recognized that it has not yet delegated regulatory authority over cryptocurrency, Congress is actively considering regulatory structures. The SEC thus lacks the "clear congressional authorization" required to exercise "[e]xtraordinary" wholesale power over an emergent $1 trillion industry. Answer ¶¶ 16-17, 82; *see West Virginia* v. *EPA*, 142 S. Ct. 2587, 2608-09 (2022).

The SEC's attacks on Wallet and Coinbase's staking services likewise founder. The SEC fails to allege that the tokens it identifies as available in Wallet bear critical features of an investment contract, and pleads nothing to suggest that Wallet functions as a broker under the securities laws in any event. As for staking, because the facts pleaded establish that staking service customers neither invest money for a share in an enterprise nor expose themselves to a risk of loss of their staked tokens by staking through Coinbase's software nor receive managerial as opposed to administrative services, there is no investment contract as a matter of law.

Coinbase looks forward to briefing more fully these case-dispositive arguments. To achieve prompt presentation and resolution of its anticipated motion, Coinbase respectfully asks the Court to order the following briefing schedule: (a) Coinbase's motion due within 7 days of the Court's order; (b) opposition due within 28 days of Coinbase's motion; (c) reply due within 14 days of opposition. Counsel for the SEC has indicated the Commission will oppose the motion. Counsel are available for a pre-motion conference at the Court's convenience.

Case 1:23-cv-04738-KPF   Document 23   Filed 06/28/23   Page 4 of 4

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Katherine Polk Failla
June 28, 2023
Page 4

                                      Respectfully,

                                      /s/ William Savitt

                                      William Savitt

cc:    Steven R. Peikin, Esq.,
        Sullivan & Cromwell LLP

        Peter Mancuso, Esq.
        U.S. Securities and Exchange Commission