# EXHIBIT D

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


  Securities Exchange              )
  Commission,                      ) Civil Action
                                   ) No. 23-cv-1599
                   Plaintiff,      )
                                   ) Hearing for Temporary
  vs.                              ) Restraining Order
                                   )
  Binance Holdings Limited,        ) Washington, DC
  et al.,                          ) June 13, 2023
                                   ) Time:  2:00 p.m.
                   Defendants.     )
  _____

        TRANSCRIPT OF HEARING FOR TEMPORARY RESTRAINING ORDER
                          HELD BEFORE
              THE HONORABLE JUDGE AMY BERMAN JACKSON
                   UNITED STATES DISTRICT JUDGE
  _____

                       A P P E A R A N C E S

  For Plaintiff:      Matthew Scarlato
                      Jennifer Farer
                      David Nasse
                      Securities and Exchange Commission
                      100 F Street, NE
                      Washington, DC  20549

                      Jorge G. Tenreiro
                      John Emmett Murphy
                      Securities and Exchange Commission
                      100 Pearl Street
                      New York, NY  10004

  For Defendant:
    Binance           Daniel Nelson
                      Jason Mendro
                      Richard Grime
                      Kendall Day
                      Stephanie Brooker
                      Gibson, Dunn & Crutcher, LLP
                      1050 Connecticut Avenue, NW, Suite 300
                      Washington, DC  20036
```

```
 1   For Defendant
       Binance           Mary Beth Maloney
 2                       Gibson, Dunn & Crutcher, LLP
                         200 Park Avenue
 3                       New York, NY  10166

 4                       Michael Celio
                         Gibson, Dunn & Crutcher, LLP
 5                       1881 Page Mill Road
                         Palo Alto, CA  94304
 6
       BAM Entities      Matthew Martens
 7                       Matthew Beville
                         Wilmer, Cutler, Pickering, Hale and Dorr
 8                       2100 Pennsylvania Avenue, NW
                         Washington, DC  20037
 9
                         Adam Fee
10                       Milbank, LLP
                         1850 K Street, NW, Suite 1100
11                       Washington, DC  20006

12     Changpeng Zhao    Abid R. Qureshi
                         Michael Bern
13                       William Baker, III
                         Douglas Yatter
14                       Melanie Blunschi
                         Latham & Watkins, LLP
15                       555 11th Street, NW, Suite 1000
                         Washington, DC  20004
16
     _____
17
     Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
18                            Official Court Reporter
                              United States Courthouse, Room 6523
19                            333 Constitution Avenue, NW
                              Washington, DC  20001
20                            202-354-3267
```

```
 1                THE COURT:  All right.  And --
 2                MR. SCARLATO:  Go ahead.
 3                THE COURT:  When you use the formulation crypto asset
 4      versus crypto asset securities, can you tell me, what are the
 5      differentiating factors?
 6                MR. SCARLATO:  Whether they meet the Howey test.
 7                THE COURT:  That's it?  The Howey test for each
 8      one --
 9                MR. SCARLATO:  Yes.
10                THE COURT:  -- in --
11                MR. SCARLATO:  I'm sorry, Your Honor.  Yes, that's
12      how a security is defined, and we give 14 specific
13      representatives.  We're not saying that's exclusive, Your
14      Honor.  Our complaint, we feel like, was long enough, so we
15      gave a bunch that we thought satisfied that test and reserve
16      our right in discovery to, you know, conform our complaint to
17      the pleadings or whatever is necessary before trial.
18                THE COURT:  All right. Are the other crypto assets
19      that you're not labeling as securities, commodities?
20                MR. SCARLATO:  The other -- that aren't alleged in
21      our complaint, Your Honor?
22                THE COURT:  The others that you say they're trading
23      in that you're not saying are securities, because you're not
24      saying all of the ones they're trading in are securities,
25      correct?
```

|     |                                                                      |
| --- | -------------------------------------------------------------------- |
| 1   | MR. SCARLATO: We -- at this time, Your Honor, we're                  |
| 2   | reserving our rights, just given we're at the pleading stage we      |
| 3   | have to get into discovery where we can make a full assessment.      |
| 4   | But our position, Your Honor, is that if one of these coins are      |
| 5   | a security, we've won.                                               |
| 6   | THE COURT: I heard that.                                             |
| 7   | MR. SCARLATO: Okay.                                                  |
| 8   | THE COURT: But you have said all over the complaint                  |
| 9   | crypto assets -- and you differentiate that specifically from        |
| 10  | crypto asset securities, and you make it clear that one              |
| 11  | category is larger than the other category and that both             |
| 12  | categories are on the Binance.com platform and the Binance.US        |
| 13  | platform, correct?                                                   |
| 14  | MR. SCARLATO: Yes.                                                   |
| 15  | THE COURT: So I'm asking you, the ones that you are                  |
| 16  | not putting in the securities category, what are they? Are           |
| 17  | they commodities?                                                    |
| 18  | MR. SCARLATO: We are not -- thank you, Your Honor.                   |
| 19  | We are not taking a position at this time. We're at the              |
| 20  | pleading stage. We are trying to get past, you know, any             |
| 21  | potential motion to dismiss and satisfying our burden under the      |
| 22  | rules. So we have, we think, way more than is required under         |
| 23  | Rule 8. We gave the Court and the parties notice as to -- I          |
| 24  | think the number is 14 total coins, including BNB, which is at       |
| 25  | issue in the TRO.                                                    |

```
 1              THE COURT:  All right.  If the Binance coin is the
 2   only security that you're relying on right now for purposes of
 3   the TRO and the facts that you rely upon when you describe to
 4   me why it meets the test are from the time of the initial
 5   offering, how does that -- how does that make it a security
 6   now, such that BAM Trading, which was created later, didn't
 7   even exist at the time of the ICO, how does it make it a dealer
 8   in these securities?
 9              MR. SCARLATO:  And, Your Honor, I want to see if my
10   colleague wants to -- do you mind if I defer to my colleague,
11   Mr. Murphy, on this?
12              THE COURT:  No.  Go ahead.  I don't want two of you
13   answering the same question, but two of you can answer
14   different questions.
15              MR. MURPHY:  So, sorry, Your Honor, let me just
16   restate -- oh, Emmett Murphy, from the SEC.
17              So let me just restate, so I understand.  The
18   question is, why is -- why are facts back from 2017 relevant to
19   whether BNB is a security when BAM Trading as a platform hadn't
20   opened by 2017?
21              THE COURT:  Yes.  There's an argument made in their
22   opposition that when you describe it as a security, the facts
23   you're relying upon are the fact that it was offered at the
24   time when they were saying we're going to use these funds to
25   set up this platform, et cetera, et cetera, and you talk about
```

1    the enterprises being created and you -- all your facts relate
2    to the 2017 offering.  And they have pointed out that they
3    didn't exist at the time of the offering and now these coins
4    have been around since then.  So, how does it make it a
5    security?  Why is it still a security now?
6             MR. MURPHY:  Yeah, Your Honor, so I was reading that
7    last night and I was confused because I thought at one point
8    they were making an argument about statute of limitations for a
9    Section 5 offering under the Securities Act, which they can
10   raise as a defense.  I don't think that undermines our prima
11   facie case.  But if the question is:  Why is it a security?
12   *Howey* looks at the economic substance of the instrument at
13   issue.
14            And here, those statements back in 2017 are
15   unfiltered statements about what the economic reality is of
16   these crypto assets.  They were absolutely candid that these
17   were investments where they were seeking money for investors to
18   grow the enterprise.  If their argument is that it somehow is
19   no longer an investment contract because -- and they have a
20   bunch of different things in their papers -- because it's
21   become adequately decentralized or somehow has changed its
22   nature --
23            THE COURT:  I guess the point is, when you did the
24   offering, people could buy them.  And since then they've been
25   on the platforms and people could trade them, sell them,

1  repurchase them.  At that point the people aren't responding to
2  the initial offering, they're responding to that asset.  I want
3  one of those, I don't want one of those.  So at that point, why
4  is it a security, as opposed to, like, another coin?
5              MR. MURPHY:  I guess I would just say that there are
6  secondary trading markets for all kinds of securities.  And if
7  the idea that once it goes into the secondary trading market it
8  doesn't become a security, that would destroy all kinds of
9  understandings of how the securities markets work.  The
10 statements that they made, again, go to the raw economic
11 reality of these people buy them so that their value will be
12 appreciated.
13             The Binance enterprise -- and you know in our papers
14 that we don't think there's such a clear distinction between
15 .com and BAM and the platforms.  Right?  Binance is running
16 both.  But they're clear in statement after statement that we
17 set out in our papers that this is an ongoing enterprise, there
18 are ties to the BNB, their prestige is tied to the BNB, they
19 will support the price; you will make money if you buy BNB.
20 And that is continuous from that ICO to the present day.
21             THE COURT:  Isn't that the flip side of what you say
22 a security is?  You're saying that they're saying it's tied to
23 them, as opposed to they're tied -- the success of the coin is
24 based on the success of the platform, and you just turned that
25 the other way, I think.

1        MR. MURPHY:  I don't know, Your Honor.  I think
2   they've tied their fate to BNB in many ways, which goes to the
3   commonality element of *Howey*, where folks are looking at the
4   efforts of others.  And the question might be, there's
5   statements in their papers to the effect of Binance has nothing
6   to do with BNB anymore, BNB is a baby that's been born and we
7   have nothing to do with it and it will be fine without Binance.
8   And I think the facts that we put into our papers are very
9   clear that that's not the case, that they've -- on their web
10  page and their blog, they are constantly monitoring the price,
11  talking about how it's a valuable asset, giving you additional
12  uses for the asset, and making clear to the investing public
13  that they are invested in it, they are going to continue to
14  create ways to make money on BNB.
15       THE COURT:  All right.  What is your response to the
16  argument that the coin can't be a security contract for
17  purposes of the *Howey* case if there's no contract?
18       MR. MURPHY:  I would respond by pointing to the
19  language in *Howey* itself which says, essentially, that
20  investment contract was meant to be a catchall term for all the
21  different ways that people solicit capital to get other
22  people's money on the promise of profits.  And the language in
23  *Howey* -- if I could just look, so I don't -- *Howey* says that an
24  investment contract can cover schemes or contracts.  And I
25  think that language is clear.  And if you look at -- this is

1    on, sorry, 298 and -99 in *Howey*.
2            *Howey* defined the investment contract as a contract
3    transaction or scheme.  If you look at the *Telegram* case that
4    we cited in our papers, there you had initial purchasers who
5    had contracts and the later public where it was distributed
6    very quickly.  And the Court looked through the economic
7    substance of that, where there had clearly been an attempt made
8    to insulate themselves from the securities laws by saying we
9    had these initial sophisticated purchasers, they're exempt from
10   the securities laws, they're very sophisticated, and whatever
11   happens after that we have no control of.
12           The Court in *Telegram* looked through that and said,
13   no, it's all part of the same offering.  You are selling to a
14   broader public, that's the only reason it has its value.  There
15   was no contract with that broader public and yet the Court
16   still found a Section 5 offering there.
17           THE COURT:  Okay.  I want to talk about the
18   misrepresentations, which is section 6 of your statement of
19   facts.  I don't know if that's your issue.
20           MR. MURPHY:  We're going to tag team, if you'd allow.
21           THE COURT:  All right.
22           MR. MURPHY:  Sorry, I don't want to walk off with
23   Mr. Scarlato's papers here.
24           THE COURT:  All right. That section alleges
25   misrepresentations by the U.S. BAM entities regarding trade