# EXHIBIT J

```
 1                    UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW HAMPSHIRE
 2

 3     * * * * * * * * * * * * * * * * *
                                        *
 4     U.S. SECURITIES AND EXCHANGE     *
       COMMISSION,                      *
 5                                      *  No. 1:21-cv-260-PB
                        Plaintiff.      *  January 30, 2023
 6                                      *  3:00 p.m.
                  v.                    *
 7                                      *
       LBRY, INC.,                      *
 8                                      *
                        Defendant.      *
 9                                      *
       * * * * * * * * * * * * * * * * *
10
                       TRANSCRIPT OF MOTIONS HEARING
11                BEFORE THE HONORABLE PAUL J. BARBADORO

12     APPEARANCES:

13
       For the SEC:              Peter Moores, Esq.
14                               Marc Jonathan Jones, Esq.
                                 Amy Burkart, Esq.
15                               Securities and Exchange Commission

16
       For the Defendant:        Keith Miller, Esq.
17                               Emily Drinkwater, Esq.
                                 Rachel Mechanic, Esq.
18                               Perkins Coie LLP

19                               Timothy John McLaughlin, Esq.
                                 Shaheen & Gordon
20
       For the Amicus:           John Deaton, Esq.
21     Naomi Brockwell           Deaton Law Firm

22

23     Court Reporter:           Brenda K. Hancock, RMR, CRR
                                 Official Court Reporter
24                               United States District Court
                                 55 Pleasant Street
25                               Concord, NH 03301
                                 (603) 225-1454
```

1  current employees.  LBRY has eight.  Yes, a lot of them came
2  from LBRY.  Why?  Because they understood the business, the
3  application business.  So, one thing that's important, and I
4  asked Mr. Chandra this question:  Tell me what the 18 people
5  do.  It's different.  So, tell me what.  Did they do any coding
6  on the LBRY blockchain?  None.  What do they do?  Sales.  They
7  do their own coding because there's, you know, software
8  between --
9              THE COURT:  I thought Odysee needs software distinct
10 from the LBRY blockchain to function.
11             MR. MILLER:  Yes.
12             THE COURT:  I may be misunderstanding it completely,
13 but that's what I thought Odysee was, something that could run
14 on the LBRY blockchain but wasn't the LBRY blockchain.
15             MR. MILLER:  Exactly.  It's an application that runs
16 on the LBRY blockchain, but it can run on any blockchain.
17             THE COURT:  That's what, yeah, I was thinking.  At
18 least according to your representations it isn't necessary to
19 run on the LBRY blockchain; it could run on other kinds of
20 blockchains.
21             MR. MILLER:  And Mr. Chandra also puts in his
22 affidavit another fact, which is they borrowed money.  They
23 borrowed money from LBRY.  They didn't have any money.  They
24 borrowed money from LBRY to get it going, to pay its employees.
25             What does Odysee do today?  Okay.  Look at how it

1   operates.  It doesn't -- it has LBRY tokens, it has LBC, and
2   where do they get them?  They buy them on the open market.  How
3   do they make money?
4           Judge, during our last hearing on summary judgment you
5   asked me how is LBRY going to make money if I'm a VC?  Pitch
6   that to me.  Let me pitch you what Odysee does.  It has
7   customer premium fees in cash, it obtains advertising revenue,
8   and it has revenue from subscribers.  So, they don't have
9   pre-mined tokens that they can use to sell to fund the
10  business.  It's a completely separate and distinct entity and
11  business.
12          There's more in the affidavit, your Honor.  I don't
13  want to bore you with going through each and every point, but
14  the point here is Odysee is separate and distinct.  The problem
15  -- and I go back to your comment during the November 21st
16  conference that we had.  You made this point, and I think it's
17  loud and clear to the crypto industry:  Let's make the best out
18  of a bad situation.  And you asked the SEC, Provide some
19  clarity, particularly for the secondary holders, right?  Odysee
20  is no different than anyone else.  Naomi Brockwell, secondary
21  holder, Odysee secondary holder.  They use LBC.  If someone
22  comes and you'll ask me how does Odysee use LBC --
23          THE COURT:  Yeah, I do want to -- I know there may be
24  some artificiality to this, but I think it makes sense to hold
25  this issue of secondary acquirers of LBC to the end, because

1   this is an issue that has been of concern to me from the
2   beginning, but it's not an issue that the parties have
3   litigated with me.  The SEC has elected not to litigate it, and
4   this argument, which has been an interesting argument that some
5   of the *amici* present, and I have been thinking about before I
6   received the *amici* filings about it, does not necessarily
7   follow that the token is the security that is restricted.  What
8   I was focused on is what the parties were litigating, was
9   whether these particular offerings of the token were securities
10  offerings, and I said that they were.  That does not
11  necessarily mean that every offering of the -- every resale of
12  the token violates the Securities Act because it's a restricted
13  security.  That does not necessarily mean that, and it might
14  mean that, but that's an issue that the parties have not
15  litigated in my case.
16          I think you're going to litigate it in Ripple, aren't
17  you?  At some point the SEC is going to have to do that,
18  because there are a lot of tokens that have consumptive use
19  that maybe ultimately should be regulated as a commodity rather
20  than as a security.  But that's not me.  That's not my job.
21  That's the SEC's job, and I can't make the SEC litigate
22  something in front of me that it doesn't want to.
23          There is a principle in jurisprudence, I think it's
24  called the party presentation principle, that the litigants get
25  to control what issues they want the court to resolve, not the

1  judge, and, while I would like that issue to be resolved, the
2  SEC has rejected every suggestion I have made that they should
3  resolve that issue with me.
4          And I can tell you this, though:  I don't have the
5  power to take up issues that the SEC doesn't choose to litigate
6  with me, but I can be absolutely clear I'm not going to do
7  anything to restrict resales of LBC in this case, because the
8  SEC had its chance to argue that in front of me, and they are
9  not arguing it.  So, to the extent that somebody has some kind
10 of concern that this Court is going to restrict resales of LBC,
11 I'm not, because I think that raises interesting issues.
12         But if I'm wrong, Counsel, you'll tell me, but I
13 recall you telling me many times, Oh, that's an issue of
14 policy.  The Commission has to make the policy.  I said, Okay,
15 that's true, but don't come to me asking me to order some kind
16 of relief that goes to things that you aren't litigating with
17 me.  And that's -- am I frustrated by that?  I am frustrated by
18 that.  But that's the SEC that controls what it chooses to
19 litigate, and judges can't just go reach out and decide issues
20 that would be interesting for the judge to decide.  That's just
21 --
22         MR. MILLER:  So, your Honor, what I would say is the
23 SEC has put that issue squarely before you.  Why?  They want an
24 injunction from Odysee.  Odysee is no -- it's just like any
25 other secondary holder of LBC.  That's what I would argue.

1   They put that squarely before you by saying, We want a
2   permanent injunction against Odysee.  They're not entitled to a
3   permanent injunction, like you said.  They weren't a party to
4   this litigation, right?  They weren't a party.  The SEC could
5   have amended their complaint.  The SEC, if they thought that
6   Odysee and LBRY was continually violating, they could have
7   sought a preliminary injunction.  They didn't do this.  So, now
8   that they're asking for an injunction against Odysee, I think
9   it is before the Court, more importantly, regulation through
10  enforcement.  And that's what the SEC is doing.  There's no
11  qualms.  They recognize it.  They're regulating through
12  enforcement.
13          It has to come to a point in time where the Court
14  needs to step in, and that's the frustration I think that the
15  crypto industry and my client has, is someone needs to say, and
16  in this case I think it can be said, and that is LBRY offered a
17  security.  People who have -- but LBC is not a security.  It
18  could be, but it's no more than a rock.  A rock is a thing.  If
19  you bundle it with a bunch of other rocks and sell it as an
20  interest saying, It's going to go up because I'm going to
21  create a lot of rocks, then it could be a security, but in and
22  of itself it's nothing; it's software code.
23          THE COURT:  Yeah, I mean, I get the point.  Is it
24  oranges or is it the contract to sell -- contract to buy an
25  orange tree or something in a market coupled with a promise to

1    fertilize the trees and harvest the oranges.  It's a
2    legitimate, interesting issue and an important issue that at
3    some point needs to be resolved.
4            But, again, I hear your point, I'll think about the
5    Odysee issue, but up until now neither you nor they have
6    litigated this argument.  Not once did one of you say to me,
7    Oh, yeah, our offerings were securities but our tokens are not,
8    okay?  Certainly they never claimed, Issue an order that the
9    tokens are the security, and you never claimed, We should win
10   because the tokens are not a security.  That is a new argument
11   that has emerged only late in this process, but I've got to
12   tell you it's one I've been thinking about for many, many
13   months, because courts kind of look to analogies when they try
14   to determine how to apply concepts like very broad definitions,
15   like securities, and if you play it out you have to ask
16   yourself to what extent does that fit or not fit?
17           And that's primarily a concern about secondary sales,
18   and this case isn't primarily, at least up until this point,
19   has not been about primarily secondary sales, and I can
20   understand why LBRY didn't make that argument, because it was
21   facing a huge problem regardless of how that issue was, because
22   it's my conclusion, right or wrong, that these offerings of LBC
23   were investment contracts, and therefore meet the definition of
24   a security, whether or not the token stripped from the rest of
25   the offering is itself an investment contract.  That's why I

1   can understand why you didn't raise it, but people may be
2   trying to read something into my order that isn't there.  It
3   isn't there because it wasn't litigated by the parties because
4   it wasn't necessary to the particular form of relief that the
5   SEC was seeking.  I thought we would get there at the remedy
6   stage, potentially, but the SEC's argument every time I raise
7   it is, Oh, it's a matter of policy.  We're not litigating that
8   here, and the Commission has to decide that, and blah, blah,
9   blah.
10              But I understand your point.  In order to extend an
11  injunction to Odysee, you would have to necessarily conclude
12  that its LBC transactions somehow violate the registration
13  requirement because they are restricted and because, doing
14  that, in order to grant them the injunction you would have to
15  buy the argument that the tokens themselves are the security,
16  right?  That's your --
17              MR. MILLER:  Yeah.  And I think they've put this
18  squarely in issue for your Honor to rule on.
19              THE COURT:  I don't think they've put it squarely in
20  issue.  I don't think they would say that, because they are
21  trying as hard as they possibly can not to put it as an issue
22  for whatever reason in front of me.
23              Okay.  Thank you.  I appreciate that.
24              Let's turn to the -- well, inevitably we've bled into
25  this question that the *amici* are raising.  Did you want to say

1    anything about that, just briefly?  And then we'll go on.
2    There is somebody -- are you representing one of the *amici*?
3              MR. DEATON:  Yes, your Honor, Naomi Brockwell.
4              THE COURT:  Okay.  Mr. Brockwell (sic), why don't you
5    just -- I don't think you have a right to do this, but I'm
6    happy to give you a brief opportunity to say what you want to
7    say, and then the government can respond to that.
8              MR. DEATON:  Absolutely, your Honor.  John Deaton on
9    behalf of Naomi Brockwell.  I acknowledge you exercise your
10   discretion, but, your Honor, I have to respectfully disagree
11   that it's not before the Court.  This permanent injunction says
12   "all personals in active concert."  That can be implied that
13   all LBC holders who may have received LBC.  It violates
14   Morrison, because there are international LBC holders.
15             And here's the thing that I implore of the Court,
16   because I know my comments have to be brief as a non-party.  I
17   would ask the Court to look at the 11/21 transcript hearing.
18   It's extraordinary, Judge.  It's extraordinary the fact that
19   Mr. Kauffman spoke and how your Honor handled that situation.
20   "Secondary sales" was brought up 14 times in that brief
21   transcript.  The word "clarity" was raised 16 times.
22             THE COURT:  A lot of them by me.
23             MR. DEATON:  Half by your Honor, and your Honor was
24   saying something needs to be done, there needs to be clarity.
25   These users -- the SEC concedes that people, many, if not more,

31

1    received LBC and acquired it for non-investment reasons, for
2    consumptive use, just like Naomi Brockwell, but they won't
3    provide clarity because of their policy issues and whatnot.
4            I'm not asking your Honor to do the SEC's job, but I
5    am asking your Honor to clarify what you meant.  I put in as
6    Exhibit B that huge article by Lewis Cohen.
7            THE COURT:  I read that article before you put it in.
8    Again, I didn't raise that stuff for the fun of it.  It's
9    something that I've been concerned about, because it appears to
10   me that certainly blockchain is a legitimate, important
11   technology, and there's a need for tokens, and there are
12   consumptive uses for tokens, and the evidence in my case was
13   there are consumptive uses for LBC that don't have anything to
14   do necessarily with investment.  So, trying to be clear about
15   how you address tokens of that type while still protecting the
16   public from unregistered securities offerings is an important
17   challenge, and I don't think -- I don't fully understand the
18   SEC's ultimate position on that at this point.
19           MR. DEATON:  Your Honor, but here's the problem, and I
20   understand your Honor intentionally avoided it for those
21   reasons, but in that article they do quote, they interpret --
22   and I'm not necessarily agreeing with them.  It's a bit
23   awkward, because they are critical of the Court's decision in
24   the article.
25           THE COURT:  I thought it was a very -- I mean, I don't

1    mind that people are critical of me.  I thought their analysis
2    was very interesting.  I think it misunderstood my ruling and
3    doesn't understand the party presentation principle, which is
4    an important restraint on judicial power.  It's to prevent
5    judges from going out and using cases as vehicles to decide
6    whatever issue interests them.  Within the last five-or-so
7    years there is a Supreme Court case that discusses this very
8    issue.  So, I think the authors, they raise the very issue I
9    have been concerned about.
10              MR. DEATON:  Yes.
11              THE COURT:  They misunderstand my order as being
12   something different from what it is --
13              MR. DEATON:  Right.
14              THE COURT:  -- and I understand why.  I used the
15   language of the case law, which is, they offered LBC as a
16   security.  From that one statement they construe my order to be
17   saying I think tokens are securities --
18              MR. DEATON:  Exactly.
19              THE COURT:  -- when I'm saying, no, I haven't made
20   that determination.  That issue hasn't been raised in front of
21   me.  No one should understand my order as taking a position on
22   an issue that wasn't briefed that I was thinking about but
23   consciously hadn't decided simply because I used the language
24   of the case law that defines what an investment contract is.
25   So, that's my position on that particular issue.

```
 1              But I think the authors of that article, it's a very
 2    carefully thought-out, interesting article, and I don't mind
 3    that it's critical of me.  In my view, it misunderstands my
 4    order, but that's fine.
 5              MR. DEATON:  Your Honor, that's the issue, is that
 6    they do say that it reads, and I'm not necessarily agreeing
 7    with it --
 8              THE COURT:  To the extent it's necessary to disabuse
 9    anybody that the order had some meaning -- when I issue an
10    order on remedy I'll make clear that I am not taking the
11    position that LBC is or is not a security.  What I held, and
12    all that I held, and I think the SEC acknowledges this, is that
13    the offerings here of LBC were investment contracts, and they
14    are subject to the registration requirement.
15              MR. DEATON:  Your Honor, and that's why I'm here, and
16    I'll sit down real soon.  That's why I'm here before you and
17    traveled, because that clarity needs to be made.  It was made
18    in Telegram in the second decision that Judge Castel out of the
19    Southern District of New York, he stated, the first time he
20    said it, and the second time he says, You're not listening.
21    The underlying contract is not the security.  The Gram token,
22    its alphanumeric code, that's not the security.  It is the
23    offering and it's the scheme, and I think that needs to be
24    clear.
25              Here's the thing:  The SEC would agree, I believe they
```

1  would agree that Naomi Brockwell's acquisition of LBC doesn't
2  even meet the first prong of Howey.  She does all her own
3  efforts to build her platform, so it doesn't meet the third
4  prong of Howey.  Arguably, they could try to say she's in some
5  kind of common enterprise, yet this injunctive request that
6  they're asking could be argued to be applied against her.  So
7  I'm asking that, your Honor, if you do enter injunctive relief
8  or in the clarification that you state that your ruling has
9  nothing to do with secondary sales.
10             THE COURT:  I absolutely will intend to do that,
11  unless the SEC changes its position and argues that some of the
12  relief I order should affect secondary sales.  If they stick to
13  their current position, which is, I'm not asking you to do
14  anything with respect to secondary sales, I'm going to make it
15  very clear that nothing in my order has anything to do with
16  secondary sales.  And, as I said, I have doubts about whether
17  to grant any injunction at all here, and, to the extent I don't
18  grant any injunction at all, that part of your concern will go
19  away, because I won't be granting any injunction in any way
20  that could be, in my view, misconstrued to apply to secondary
21  sales, something the SEC has expressed multiple times to me it
22  has no desire to try to effect in this particular case.
23             MR. DEATON:  Your Honor, the final thing I would say
24  is, if you don't order injunctive relief at all, if you would
25  still address that, because if you review the record, when

1  counsel for the SEC was up here in the initial presentation
2  this afternoon it was a little confusing, because you said,
3  Wait, my order has nothing to do with secondary sales, and then
4  there was this discussion, well, there is a market where maybe
5  it is.  It is a bit confusing, and a clarification on that
6  issue would help not just LBC holders but the industry at
7  large.  And it's not doing SEC's job; it's just making sure
8  that your decision isn't misapplied.
9           THE COURT:  I don't want my order to be misunderstood,
10 to be misapplied, again.  And I commend both LBRY and the SEC.
11 They tried in my case to raise a very narrow set of issues.  If
12 you look at the order you can see this is not in dispute, that
13 is not in dispute.  There's only one little issue that is in
14 dispute.  My view of judging is you focus on only that which
15 you need to focus on to resolve the problem in front of you,
16 and that's the way -- someone would call that incrementalism.
17 It's an idea that judges should be restrained in what they do,
18 because we are not accountable directly to the public, only to
19 higher courts, and we should rule as narrowly as we can to
20 resolve the problem in front of us.
21          But I understand your point.  I appreciate it.  Thank
22 you.
23          MR. DEATON:  Your Honor, sincerely on behalf of Naomi
24 and Brockwell and LBC holders, I appreciate you giving me an
25 opportunity.

1           THE COURT:  Sure.

2           So, let me just ask the SEC, have I misstated anything
3  you -- I understand you to say, have said to me repeatedly, We
4  are not seeking in this action to regulate secondary sales of
5  LBC; we are not asking you to do that in anything that you are
6  doing, Judge.  That's what I've understood your position to be.
7  Have I misunderstood your position?

8           MR. MOORES:  No.  I do think just a clarification.
9  I'm not sure exactly what secondary sales -- the term has been
10 bandied about, but we're concerned about the offers and sales
11 by LBRY.  So, with all due respect to the *amici*, I think what
12 they're presenting is not what's in front of the Court, and we
13 agree with you.

14          But just with respect to secondary sales, to the
15 extent that that incorporates what LBRY has offered and sold,
16 then I think what we're asking for an injunction -- we don't
17 think LBRY should be going out into the secondary market --

18          THE COURT:  Let's talk about an exemplar case, because
19 I'm not sure I'm completely understanding you.  If LBRY made
20 certain sales to an investment club -- I can't remember the
21 name of it.  Right?  Remember that?

22          MR. MOORES:  Flipside Crypto, your Honor.

23          THE COURT:  Pardon me?

24          MR. MOORES:  Flipside Crypto, your Honor.

25          THE COURT:  Flipside Crypto, right?  Okay.  Flipside

```
1     Crypto bought that, right, that LBC?
2              MR. MOORES:  Correct.
3              THE COURT:  If Flipside Crypto decided tomorrow to
4     sell their LBC holdings, you would not in any way argue that
5     you are seeking any way to restrict the ability of Flipside
6     Crypto to sell its LBC.  Am I right about that?
7              MR. MOORES:  Correct.  Not in this case, your Honor.
8              THE COURT:  Not in this case.  Okay.  So, nobody
9     should have any more thought that this case involves any effort
10    to restrict someone like Flipside Crypto from reselling their
11    LBC.  I'm not saying that they can resell it; I'm not saying
12    they can't resell it.  I'm saying I can only address problems
13    that the litigants present to me, and the SEC has very
14    consciously and repeatedly refused to address those issues in
15    this litigation and said this litigation does not concern that.
16    So, I will make it very clear, Counsel, that when somebody like
17    Flipside wants to resell, this order, this Court's order does
18    not in any way restrict their ability to do that.
19             MR. DEATON:  Thank you, your Honor.
20             THE COURT:  All right.  And that's because the SEC
21    acknowledges that its litigation in this case does not reach
22    those particulars matters, okay?  I understand your point.  To
23    the extent LBRY -- your view is, and I'm now understanding it,
24    I think, for the first time -- to the extent LBRY bought LBC
25    from someone else other than its pre-mine and then tried to
```

```
1    resell it, you would say that is a resale that should be
2    subject to an injunction, but to the extent anybody else other
3    than LBRY or Odysee are doing it, you're not trying to restrict
4    their ability to do that in this litigation at all?
5             You've got to tell me one way or the other, okay?  I'm
6    entitled to know what your position is.
7             MR. MOORES:  It is, your Honor.  We're just saying the
8    Rule 65 encompasses agents, servants, employees and attorneys.
9    Just to be clear, we want the full scope of Rule 65.  That's
10   all.
11            THE COURT:  All right.  All right.  All right.
12            Okay.  Let's deal with disgorgement.  What's the SEC's
13   position on the disgorgement remedy?  So I understand your view
14   is essentially that it's their burden to prove that they have
15   legitimate business expenses that offset any profits they
16   otherwise would have earned.  You say they haven't demonstrated
17   that.  I think you say you need some discovery before you can
18   adequately respond to their contention.  They say you conceded
19   in your pleadings that all of their expenses were business
20   expenses, and they say, Look, we've provided, we've given you
21   our financial statements, and we show that we had had
22   legitimate business expenses.  You say that's not sufficient.
23   So, elaborate on your argument there as I've --
24            MR. MOORES:  I think you've got a lot of that in a
25   nutshell, your Honor, essentially that we lack the full
```

```
1                        C E R T I F I C A T E
2
3
4          I, Brenda K. Hancock, RMR, CRR and Official Court
5    Reporter of the United States District Court, do hereby certify
6    that the foregoing transcript constitutes, to the best of my
7    knowledge, skill, ability and belief, a true and accurate
8    transcription of the within proceedings.
9
10
11
12
13   Date:  ___3/10/23___          /s/ Brenda K. Hancock
                                   Brenda K. Hancock, RMR, CRR
14                                 Official Court Reporter
15
```