# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>    v.<br><br>COINBASE, INC. AND COINBASE GLOBAL, INC.<br><br>                Defendants. | Case No. 1:23-cv-04738 |

## AMICUS CURIAE BRIEF OF
## UNITED STATES SENATOR CYNTHIA M. LUMMIS

JENNER & BLOCK LLP

Kayvan B. Sadeghi
Sarah Purtill
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1600
Fax: (212) 891-1699
ksadeghi@jenner.com
spurtill@jenner.com

William F. Ryan
(pro hac vice motion pending)
10 Exchange Square
London, UK EC2A 2BR
Tel: 44 330 060 5433
wryan@jenner.com

Michelle S. Kallen
(pro hac vice)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
mkallen@jenner.com

*Attorneys for Amicus Curiae United States Senator Cynthia M. Lummis*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTERESTS OF AMICUS CURIAE ............................................................................... 1

PRELIMINARY STATEMENT ....................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.      The SEC's Enforcement Stance In This Action Runs Counter To
        Ongoing Legislative Efforts ................................................................................. 3

II.     The SEC's Attempt to Treat Crypto Assets, Themselves, As Securities
        Improperly Expands the Statutory Definition of "Securities" And
        Violates The Separation Of Powers ..................................................................... 9

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.,*
   141 S. Ct. 2485 (2021) ............................................................... 10

*Biden v. Nebraska,*
   143 S. Ct. 2355 (2023) ........................................................... 12, 15

*In re Coinbase, Inc.,*
   No. 23-1779 (3d Cir. Jun. 20, 2023) ....................................... 15

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) .................................................................. 5

*Nat'l Pork Producers Council v. Ross,*
   143 S. Ct. 1142 (2023) .............................................................. 9

*Util. Air Regul. Grp. v. Env't Prot. Agency,*
   573 U.S. 302 (2014) .................................................................. 9

*W. Virginia v. Env't Prot. Agency,*
   142 S. Ct. 2587 (2022) ................................................ 9, 10, 14, 15

STATUTES

Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ....................... 2, 12

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ....... 2, 12

OTHER AUTHORITIES

Andrew Perrin, *16% of Americans Say They Have Ever Invested In,*
   *Traded or Used Cryptocurrency,* Pew Resch. Ctr. (Nov. 11, 2021) ..................... 12

Blockchain Regulatory Certainty Act, H.R.1747, 118th Cong. (2023) ..................... 5

Clarity for the Payment Stablecoins Act of 2023, H.R. 4766, 118th
   Cong. (2023) ........................................................................... 5

*Coincidence or Coordinated? The Administration's Attack on the*
   *Digital Asset Ecosystem Before the H. Subcomm. on Digital Assets,*
   *Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.,* 118th Cong.
   (2023) ...................................................................................... 4

Commission Regulation 2023/1114, art. 6, 2023 O.J. (L150/40) 1 .............................. 8

Crypto-Currency Act of 2020, H.R. 6154, 116th Cong. (2020) .................................... 5

*Crypto Crash: Why Financial System Safeguards are Needed for Digital Assets Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 118th Cong. (2023) ................................................................... 3

*Crypto Crash: Why the FTX Bubble Burst and the Harm to Consumers Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022) ................................................................................... 3

Crypto Exchange Disclosure Act, H. R. 9421, 117th Cong. (2022) ............................ 5

Derek Saul, *Crypto Market Crosses $1 Trillion For First Time In Months As Bitcoin Recovers From FTX-Driven Crash,* Forbes (Jan. 16, 2023) ..................................................................................... 12

*Digital Assets and the Future of Finance: Examining the Benefits and Risks of a U.S. Central Bank Digital Currency Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022) (May 26, 2022) .................... 4

*Digital Assets and the Future of Finance: The President's Working Group on Financial Markets' Report on Stablecoins Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022) ..................................... 4

Digital Commodities Consumer Protection Act of 2022, H.R.8730, 117th Cong. (2022) ............................................................... 5

Digital Commodity Exchange Act of 2022, H.R. 7614, 117th Cong. (2022) ............................................................................... 5

Eliminate Barriers to Innovation Act of 2021, H.R. 1602, 117th Cong. (2021) ............................................................................... 5

*Examining Regulatory Frameworks for Digital Currencies and Blockchain Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 116th Cong. (2019) (statement of Rebecca N. Nelson, Specialist in Int'l Trade and Fin.), .............................................................. 8

Exec. Order No. 14067, 87 F.R. 14143 (2022) ....................................................... 7, 11

FINMA, *Developments in FinTech* .............................................................................. 8

*Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III Before the H. Comm. on Fin. Serv.*, 117th Cong. (2021) (statement of Gary Gensler, Chairman, Sec. and Exch. Comm'n) ................................................................ 12, 13

H. Comm. on Agric. and H. Comm. on Fin. Serv., *Why is Action Needed on Digital Assets Market Structure Legislation?* (July 20, 2023) ..................... 4, 7

*Investigating the Collapse of FTX, Part I Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022) ........................................................................ 3

Joanna Ossinger, *Crypto World Hits $3 Trillion Market Cap as Ether, Bitcoin Gain,* Bloomberg (Nov. 8, 2021) ................................................. 12

Julie Tsirkin, *Sen. Cynthia Lummis: Crypto Regulation Bill Could Prevent Another FTX-style Crisis,* NBC News (July 19, 2023) ............................. 4

Kara McKenna Rollins, *Have the SEC's Delay Tactics Made Its Petition for Rulemaking Process Vulnerable to Challenge? A Look at In re Coinbase Inc. and SEC's Nullification of 5 U.S.C. § 553(e) by Inaction,* Yale J. on Reg.: Notice & Comment Blog (May 3, 2023) .................. 15

Letter from Chairman Gensler to Sen. Warren (Aug. 5, 2021) .................................. 4

Letter from Rep. Patrick McHenry to Chairwoman Maxine Waters (Jan. 24, 2022) ......................................................................................... 3

Lewis Cohen *et al., The Ineluctable Modality of Securities Law: Why Fungible Crypto Assets Are Not Securities* (Nov. 10, 2022) ................................. 14

Michael P. Regan, *Laser Eyes Aglow on the US Presidential Campaign Trail,* Bloomberg, (Aug. 1, 2023) ........................................................... 11

Office of Senator Lummis, *What's New in Lummis-Gillibrand 2023* .......................... 4

Press Release, Kristen Gillibrand, Lummis, Gillibrand Reintroduce Comprehensive Legislation to Create Regulatory Framework for Crypto Assets (Jul. 12, 2023) ..................................................................... 3

Press Release, Warren Davidson, Davidson Reintroduces Token Taxonomy Act (Mar. 9, 2021) ..................................................................... 4

*Protecting Investors and Savers: Understanding Scams and Risks in Crypto and Securities Markets Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022) ................................................. 3

*Putting the 'Stable' in 'Stablecoins:' How Legislation Will Help Stablecoins Achieve Their Promise Before the H. Subcomm. on Digital Assets, Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.*, 118th Cong. (2023) ........................................................... 3

Nikhilesh De, *SEC Chair Gensler Suggests Lummis-Gillbrand Bill May "Undermine" Market Protections*, Coindesk (Jun. 14, 2022) ........................ 4

Responsible Self-Regulation Act of 2022, S. 5286, 117th Cong. (2022) ..................... 5

Securities Clarity Act, H.R. 3572, 118th Cong. (2023)................................................. 5

Securities Clarity Act, H.R. 4451, 117th Cong. (2021)................................................. 5

Sen. Kirsten Gillibrand, *To Maintain America as the Financial Capital of the World, the Federal Government Needs to Encourage Innovation in the Digital Assets Markets and Protect Consumers Through Thoughtful Regulation. Here's How*, Medium (June 7, 2023)............................................................................................................................ 7

Special Measures to Fight Modern Threats Act, H.R. 7128 and S. 3876, 117th Cong. (2022) ................................................................................................... 5

Subcomm. on Digital Assets, Fin. Tech. and Inclusion (118th Congress)................... 5

The Central Bank Digital Currency Study Act of 2021, H.R. 2211, 117th Cong. (2021) ........................................................................................................ 5

The Financial Innovation and Technology for the 21st Century Act, H.R. 4763, 118th Cong. (2023) .............................................................................. 5, 6

*The Future of Digital Assets: Identifying the Regulatory Gaps in Digital Asset Market Structure Before the H. Comm. on Fin. Serv. & H. Comm. on Agric. Joint Subcomm.*, 118th Cong. (2023)................................ 4

*The Future of Digital Assets: Measuring the Regulatory Gaps in the Digital Asset Markets Before the Joint Subcomm. of the H. Comm. on Fin. Serv. and the H. Comm. on Agric.*, 118th Cong. (2023) ............................ 4

*The Future of Digital Assets: Providing Clarity for Digital Asset Spot Markets: Hearing Before the H. Comm. on Agric.*, 118th Cong. (2023) ............................................................................................................................ 4

*The Future of Digital Assets: Providing Clarity for the Digital Asset Ecosystem Before the H. Comm. on Fin. Serv.*, 118th Cong. (2023) ...................... 4

*The Promises and Perils of Central Bank Digital Currencies Before the H. Comm. on Fin. Serv.*, 117th Cong. (2021)......................................................... 8

Token Taxonomy Act, H.R. 1628, 117th Cong. (2021) ................................. 5

*Understanding Stablecoins' Role in Payments and the Need for Legislation Before the H. Subcomm. On Digital Assets, Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.*, 118th Cong. (2023)........................ 4

*Understanding the Role of Digital Assets in Illicit Finance Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022) ......................... 4

U.S. Dep't of Commerce, *Responsible Advancement of U.S. Competitiveness in Digital Assets* (Sept. 2022) ..................................................... 11

U.S. Dep't of Justice, *The Report of the Attorney General Pursuant to Section 8(b)(iv) of Executive Order 14067: How to Strengthen International Law Enforcement Cooperation for Detecting, Investigating, And Prosecuting Criminal Activity Related to Digital Assets* (June 6, 2022)........................................................... 8

U.S. Virtual Currency Market and Regulatory Competitiveness Act of 2019, H.R. 923, 116th Cong. (2019) ........................................................... 5

William Hinman, Dir., Sec. and Exch. Comm'n, Remarks at the Yahoo Finance All Markets Summit: Crypto (June 14, 2018)......................................... 14

## INTERESTS OF AMICUS CURIAE

Amicus curiae, United States Senator Cynthia M. Lummis of Wyoming, is among the principal crypto asset policy leaders in Congress and is a member of the Senate Committee on Banking, Housing and Urban Affairs, which has jurisdiction over crypto assets and the U.S. Securities and Exchange Commission (SEC).

Senator Lummis, alongside Senator Kirsten Gillibrand of New York, recently introduced the bipartisan Lummis-Gillibrand Responsible Financial Innovation Act, S. 2281, 118th Cong. (2023), which is the most comprehensive, detailed crypto asset legislation introduced in Congress.  Amicus seeks to draw the Court's attention to the numerous, bipartisan legislative efforts of Congress with respect to crypto assets.

Amicus also has a special interest in upholding the Constitution's separation of powers by ensuring that federal administrative agencies do not exceed the authority conferred upon them or encroach upon Congress's ongoing legislative efforts.  Amicus believes that the SEC's approach to enforcement in this case and in the crypto asset industry more broadly contravenes that separation of powers.

## PRELIMINARY STATEMENT

The SEC brings this enforcement action in the midst of debates in the halls of Congress and around the world about how crypto assets should be regulated.  The Constitution empowers Congress—not the SEC—to legislate in such an area of profound economic and political significance.

Congress and the SEC share a desire to protect investors and orderly markets.  Crypto asset related concerns, however, are not confined to the securities markets, and the SEC is not their sole protector.  Although the SEC seeks broad authority over crypto asset markets, most legislative proposals in Congress would instead grant much of that authority to other agencies.  Unsatisfied, the SEC seeks to circumvent the political process to commandeer that authority for itself.  To do so, the SEC relies on a novel interpretation of two words—"investment contract"— nested in the definition of "security" set forth 90 years ago in the Securities Act of 1933 and the Securities Exchange Act of 1934 (Exchange Act) (collectively, the Acts).  When Congress created the SEC to regulate securities markets, it did not grant the SEC power to reimagine the definition of "securities" to expand the agency's sphere of influence into other asset classes, or to encroach on other agencies and regulatory schemes.  The SEC's attempt to shoehorn an entire new class of assets into the existing definition of a "security," and thereby add to the definition enumerated by Congress, exceeds the SEC's authority, encroaches on Congress's lawmaking, and contravenes the separation of powers.

The SEC cannot legislate by enforcement.

## ARGUMENT

This is no run-of-the-mill enforcement case.  Through this case the SEC seeks primary influence over economic, political, and legal questions under active consideration by Congress and multiple agencies.

Amicus submits this brief to highlight: (i) the important questions implicated here, which are properly before Congress right now; and (ii) the fundamental separation-of-powers principles that weigh strongly in favor of deferring to Congress rather than adopting the SEC's novel and expansive view of its own authority.

## I.   THE SEC'S ENFORCEMENT STANCE IN THIS ACTION RUNS COUNTER TO ONGOING LEGISLATIVE EFFORTS.

Crypto asset regulation is a Congressional priority and momentum currently exists toward the passage of a balanced framework that promotes responsible innovation and protects consumers.[1]  Both the House and Senate are actively considering how the United States should classify and regulate this emerging class of crypto assets, as reflected in numerous hearings.[2]  In so doing, Congress is

---

[1] *See, e.g.,* Press Release, Kirsten Gillibrand, Lummis, Gillibrand Reintroduce Comprehensive Legislation To Create Regulatory Framework For Crypto Assets, (July 12, 2023), https://tinyurl.com/35vfxjkp ("[Senator Lummis and I] will make passing this bipartisan legislation a priority in this Congress."); Letter from Rep. Patrick McHenry to Chairwoman Maxine Waters (Jan. 24, 2022), https://tinyurl.com/2aed92n9 ("I believe it is critical that we thoroughly review the current environment and prioritize the issues [around digital assets] that must be addressed.").

[2] Since January 2022, the Senate Committee on Banking, Housing and Urban Affairs and the House Committee on Financial Services have held multiple hearings solely dedicated to examining the role of digital assets in the U.S. economy and potential legislation to address their regulation.  *See, e.g., Crypto Crash: Why Financial System Safeguards are Needed for Digital Assets Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 118th Cong. (2023); *Crypto Crash: Why the FTX Bubble Burst and the Harm to Consumers Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022); *Investigating the Collapse of FTX, Part I Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022); *Protecting Investors and Savers: Understanding Scams and Risks in*

weighing views of the SEC among myriad other equally important perspectives.[3]

Through these efforts, it is clear that existing law is inadequate to the task of

addressing crypto assets.[4]

---

*Crypto and Securities Markets Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022); *The Future of Digital Assets: Providing Clarity for the Digital Asset Ecosystem Before the H. Comm. on Fin. Serv.*, 118th Cong. (2023); *Putting the 'Stable' in 'Stablecoins:' How Legislation Will Help Stablecoins Achieve Their Promise Before the H. Subcomm. on Digital Assets, Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.*, 118th Cong. (2023); *The Future of Digital Assets: Measuring the Regulatory Gaps in the Digital Asset Markets Before the H. Comm. On Fin. Serv. & H. Comm. on Agric. Joint Subcomm.*, 118th Cong. (2023)); *The Future of Digital Assets: Identifying the Regulatory Gaps in Digital Asset Market Structure Before the H. Comm. on Fin. Serv. & H. Comm. on Agric. Joint Subcomm.*, 118th Cong. (2023); *Understanding Stablecoins' Role in Payments and the Need for Legislation Before the H. Subcomm. On Digital Assets, Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.*, 118th Cong. (2023); *Coincidence or Coordinated? The Administration's Attack on the Digital Asset Ecosystem Before the H. Subcomm. on Digital Assets, Fin. Tech. and Inclusion of the H. Comm. on Fin. Serv.*, 118th Cong. (2023); *Digital Assets and the Future of Finance: Examining the Benefits and Risks of a U.S. Central Bank Digital Currency Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022) (May 26, 2022); *Understanding the Role of Digital Assets in Illicit Finance Before the S. Comm. on Banking, Hous., and Urb. Aff.*, 117th Cong. (2022); *Digital Assets and the Future of Finance: The President's Working Group on Financial Markets' Report on Stablecoins Before the H. Comm. on Fin. Serv.*, 117th Cong. (2022).

[3] The SEC was invited to provide early feedback on RFIA, *see* Office of Senator Cynthia Lummis, What's New in *Lummis-Gillbrand 2023*, https://tinyurl.com/56598c67, and Chair Gensler publicly commented on the proposal, *see* Nikhilesh De, *SEC Chair Gensler Suggests Lummis-Gillbrand Bill May "Undermine" Market Protections*, Coindesk (Jun. 14, 2022), https://tinyurl.com/2nm99cyt. *See also* Letter from Chairman Gensler to Sen. Warren, (Aug. 5, 2021), https://tinyurl.com/4ym4fbu6 (responding to a request for information concerning the sufficiency of existing SEC authority by stating that "we need additional authorities to prevent transactions, products, and platforms from falling between regulatory cracks" and that "Regulators would benefit from additional plenary authority to write rules for and attach guardrails to crypto trading and lending."); *see also, e.g., The Future of Digital Assets: Providing Clarity for Digital Asset Spot Markets: Hearing Before the H. Comm. On Agric.*, 118th Cong. (2023) (statement of Rostin Benham, Chairman, Commodity Futures Trading Comm'n), https://tinyurl.com/47w447p5 (highlighting "the need for Congressional action to address the lack of federal regulation over the digital commodity market.").

[4] *See* Julie Tsirkin, *Sen. Cynthia Lummis: Crypto Regulation Bill Could Prevent Another FTX-style Crisis*, NBC News (July 19, 2023), https://tinyurl.com/k44cjcah (Senator Lummis: "Companies like Kraken and Coinbase have gone to the SEC and asked them to be clear and lay out the regulatory requirements that the SEC believes should apply to them. And they're frustrated because they feel like they were trying to comply, but instead some of them got enforcement actions slapped on them"); H. Comm. on Agric. and H. Comm. on Fin. Serv., *Why is Action Needed on Digital Assets Market Structure Legislation?* (July 20, 2023) https://tinyurl.com/34v9hypz ("Until there is a consistent, clear framework in place, market participants, consumers, and investors will continue to seek regulatory clarity given the requirements that stem from the classification of a particular digital asset"); Press Release, Warren Davidson, Davidson Reintroduces Token Taxonomy Act (Mar. 9, 2021), https://tinyurl.com/45df3rup (stating "a patchwork of laws and regulations creates confusion and even hostility to various blockchain businesses.").

The SEC's assertion of authority in this case is out of step with active legislative efforts.  Congress has introduced various bills to address the role of various federal agencies in the regulation of crypto assets.[5]  Several of these bills have been introduced and passed through committee in just the past few weeks. The House established a subcommittee dedicated specifically to crypto regulation.[6] While some pending bills may be different, the SEC's expansive, novel interpretation of its own authority is inconsistent with most of the pending bills.[7] For example:

1.     On July 12, 2023, Amicus Senator Lummis and Senator Kirsten Gillibrand introduced the Responsible Financial Innovation Act (RFIA), S. 2281, 118th Cong. (2023).  This bipartisan bill takes comprehensive steps to regulate the industry and impose consumer protections, and carefully delineates the roles of the

---

[5] *See, e.g.*, Responsible Financial Innovation Act, S. 2281, 118th Cong. (2023); Clarity for the Payment Stablecoins Act of 2023, H.R. 4766, 118th Cong. (2023); The Financial Innovation and Technology for the 21st Century Act, H.R. 4763, 118th Cong. (2023); Securities Clarity Act, H.R. 3572, 118th Cong. (2023); Blockchain Regulatory Certainty Act, H.R.1747, 118th Cong. (2023).  At least 50 measures relating to cryptocurrency, blockchain, and central bank digital currency were introduced during the 117th Congress.  *See e.g.*, Responsible Self-Regulation Act of 2022, S. 5286, 117th Cong. (2022); Crypto Exchange Disclosure Act, H. R. 9421, 117th Cong. (2022); Digital Commodities Consumer Protection Act of 2022, H.R.8730, 117th Cong. (2022); Special Measures to Fight Modern Threats Act, H.R. 7128 and S. 3876, 117th Cong. (2022); Digital Asset Market Structure and Investor Protection Act, S. 5030 117th Cong. (2022); ; Digital Trading Clarity Act of 2022, S. 5030, 117th Cong. (2022) ; Digital Commodity Exchange Act of 2022, H.R. 7614, 117th Cong. (2022); Securities Clarity Act, H.R. 4451, 117th Cong. (2021); The Central Bank Digital Currency Study Act of 2021, H.R. 2211, 117th Cong. (2021); Token Taxonomy Act, H.R. 1628, 117th Cong. (2021); Eliminate Barriers to Innovation Act of 2021, H.R. 1602, 117th Cong. (2021); U.S. Virtual Currency Market and Regulatory Competitiveness Act of 2019, H.R. 923, 116th Cong. (2019); Crypto-Currency Act of 2020, H.R. 6154, 116th Cong. (2020).

[6] *See* Subcomm. on Digital Assets, Fin. Tech. and Inclusion (118th Congress), https://tinyurl.com/mr3ut7yw.

[7] *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 144 (2000) (noting that it is telling when Congress has "considered and rejected" bills authorizing or endorsing something akin to the agency's proposed course of action).

SEC and the U.S. Commodity Futures Trading Commission (CFTC).  It recognizes that many initial sales of tokens may be investment contract transactions subject to SEC oversight, but also recognizes that the underlying crypto assets themselves are typically commodities and thus requires crypto asset exchanges to register with the CFTC.  The legislation also grants the SEC significant new disclosure authority over crypto assets.  The bill also appropriates $1.4 billion in additional funding over the next five years to the CFTC, SEC, the U.S. Department of the Treasury, and other agencies.

2.      On July 10, 2023, Representative Glenn Thompson, Chair of the House Committee on Agriculture, and Representative French Hill introduced The Financial Innovation and Technology for the 21st Century Act (FIT21), H.R. 4763, 118th Cong. (2023).  Two weeks later, bipartisan majorities of both the House Committee on Financial Services and the House Committee on Agriculture voted to advance FIT21 to the House floor for consideration.  FIT21 provides the CFTC with primary jurisdiction over crypto assets and clarifies the circumstances under which such assets would fall under SEC's jurisdiction.  It would also establish a Digital Commodity Exchange framework that would serve as a vehicle for important consumer protections.

3.      On August 3, 2022, Senators Debbie Stabenow and John Boozman introduced the Digital Commodities Consumer Protection Act of 2022 (DCCPA), S. 4760, 117th Cong. (2022).  The DCCPA grants exclusive authority to the CFTC over activities involving digital commodities while excluding securities and stablecoins

backed by the full-faith and credit of the United States.  It creates a new registration regime for all "digital commodity platforms" under the Commodity Exchange Act, 7 U.S.C. § 1a *et seq.*, and designates a set of "core principles" that platforms must follow to provide important safeguards.[8]

Each of these bills recognizes that the crypto industry does not fit entirely within existing securities laws and transcends the current statutory powers of the SEC.  The multitude of interests at stake require a holistic approach beyond the scope of a single agency, including approaches taken around the world.  Congress is attuned to these important considerations.[9]  And, in its investigative and fact-

---

[8] On July 27, 2023, the House Financial Services Committee advanced out of committee by a bipartisan vote the Clarity for Payment Stablecoins Act of 2023, introduced by Chairman Patrick McHenry, which recognizes several regulatory paths for approving and regulating stablecoin issuers while ensuring protections for consumers.  H.R. 4766, 118th Cong. (2023).

[9] *See* Sen. Kirsten Gillibrand, *To Maintain America as the Financial Capital of the World, the Federal Government Needs to Encourage Innovation in the Digital Assets Markets and Protect Consumers Through Thoughtful Regulation. Here's How*, Medium (June 7, 2023), https://tinyurl.com/4bvnvbwx (recognizing that without "a clear and defined regulatory framework to guide their businesses practices, digital asset companies could be compelled to take their operations overseas"); H. Comm. on Agric. and H. Comm. on Fin. Serv., *Why is Action Needed on Digital Assets Market Structure Legislation?* (July 20, 2023), https://tinyurl.com/34v9hypz (cautioning that "entrepreneurs are warning against doing business in the United States because of a lack of structure and are advocating for digital asset companies to move offshore" underscoring "the need for Congress to act").

On these points, Congress is not alone.  In March 2022, the White House issued an Executive Order recognizing that the "growing development and adoption of digital assets and related innovations . . . necessitate an evolution and alignment of the United States Government approach to digital assets."  Exec. Order No. 14067, 87 F.R. 14143 (2022), https://tinyurl.com/mttbeenp (calling for a coordinated interagency process to evaluate and report on a variety of government interests and policy considerations, including concerns for consumer protection and market stability with the United States' "interest in ensuring that it remains at the forefront of responsible development and design of digital assets and the technology that underpins new forms of payments and capital flows in the international financial system").

gathering functions, Congress has heard testimony from numerous experts on these issues.[10]

Meanwhile, the SEC's treating virtually all crypto assets as securities, and subjecting them to all the requirements of existing securities laws, is inconsistent with the approaches being taken in other jurisdictions.  For example, Swiss regulations distinguish between three separate categories of tokens (payment tokens, utility tokens, and asset tokens),[11] many of which the SEC would sweep into its broad definition of crypto asset securities.  The European Parliament, meanwhile, has passed a regulation that introduces a disclosure regime for crypto asset issuers reminiscent of securities regulation, but adapted to the distinct features of digital assets and without need to classify the tokens as securities, much like the Lummis-Gillibrand legislation.[12]

The SEC is not suited to the task of crafting a holistic regulatory framework for crypto assets, particularly through a judicial enforcement action (where neither the SEC nor this Court is positioned to grapple with the unintended consequences

---

[10] *See, e.g.*, *Examining Regulatory Frameworks for Digital Currencies and Blockchain Before the S. Comm. on Banking, Hous., and Urb. Aff.,* 116th Cong. (2019) (statement of Rebecca N. Nelson, Specialist in Int'l Trade and Fin.), https://tinyurl.com/3nxm3xd2; *The Promises and Perils of Central Bank Digital Currencies Before the H. Comm. on Fin. Serv.,* 117th Cong. (2021), https://tinyurl.com/techr67c; *accord* U.S. Dep't of Justice, *The Report of the Attorney General Pursuant to Section 8(b)(iv) of Executive Order 14067: How To Strengthen International Law Enforcement Cooperation For Detecting, Investigating, And Prosecuting Criminal Activity Related To Digital Assets,* (June 6, 2022), https://www.justice.gov/ag/page/file/1510931/download (recognizing that "[d]ifferences in the substantive treatment or regulation of digital assets across legal systems . . . may complicate the ability or willingness of foreign partners to assist in U.S. investigations").

[11] FINMA, Developments in FinTech, https://tinyurl.com/4p7uu8b6 (last visited Aug. 11, 2023).

[12] Commission Regulation 2023/1114, art. 6, 2023 O.J. (L150/40) ¶ 1, https://tinyurl.com/2p9yps9s.

of the SEC's current enforcement stance, and the policy implications of its novel legal position).  Such policymaking is precisely the role the Constitution assigns to Congress.  Where a balancing of economic factors and trade-offs must occur, the People's elected representatives are "entitled to weigh the relevant 'political and economic' costs and benefits for themselves . . . ."  *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1160 (2023).  The SEC should not "displace the cost benefit analyses inherent in democratically adopted legislation," *id.*, with its own enforcement agenda premised on tenuous authority.

## II.   THE SEC'S ATTEMPT TO TREAT CRYPTO ASSETS, THEMSELVES, AS SECURITIES IMPROPERLY EXPANDS THE STATUTORY DEFINITION OF "SECURITIES" AND VIOLATES THE SEPARATION OF POWERS.

As Congress advances legislation governing crypto assets, this Court should reject the SEC's effort to expand its own reach by reading into the term "investment contract" a lurking power to import a new asset class into the definition of a security.  "Agencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line."  *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022) (internal quotation marks and citation omitted).

Whether dubbed "the major questions doctrine" or basic preservation of the separation of powers, Congress has not conferred on the SEC wholesale regulatory power over this industry, and accepting the SEC's theory encroaches on Congress's legislative role.  This agency action should therefore be treated with skepticism.  *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power to regulate

9

a significant portion of the American economy," courts have long "greet[ed] its announcement with a measure of skepticism.") (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 123 (2000)).

Courts "expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (internal quotation marks omitted). Under the "major questions doctrine," courts are "reluctant to read into ambiguous statutory text the delegation claimed to be lurking there" in "extraordinary cases . . . in which the history and the breadth of the authority that the agency has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." *West Virginia*, 142 S. Ct. at 2608–09 (internal quotation marks and citations omitted). In such cases "separation of powers principles and a practical understanding of legislative intent" require an agency to point to "clear congressional authorization for the power it claims." *Id.* at 2609 (internal quotation marks and citation omitted).

Both pillars of the major questions doctrine favor judicial caution here: (1) there is vast economic and political significance to the SEC's assertion of authority to define crypto assets as securities, and (2) Congress did not speak clearly to confer such power on the SEC.

On the first pillar, regulation of crypto assets is a matter of great economic and political significance. It is the subject of dozens of recent Congressional

10

hearings and legislative proposals.  *See* Section I, *supra*.  An Executive Order calling for a wide-ranging interagency response recognizes the "profound implications" for interests such as financial stability and national security.[13]  A multiplicity of reports from numerous corners of the government and private sector are focused on the issue.[14]  And regulation of the crypto industry is a platform issue for those running for public office.[15]  Few economic issues command more political attention today.

By the numbers, crypto assets alone have been valued between $1 trillion and $3 trillion, which accounts for just one aspect of a broad and growing marketplace including scores of private and public companies, like Coinbase, and their employees that the SEC seeks to pull into its regulatory orbit along with the tokens.  And in a report published in November 2021, the Pew Research Center estimated that 16% of Americans had invested in, traded, or used cryptocurrency.[16]

---

[13] Exec. Order No. 14067, 87 F.R. 14143 (2022), https://tinyurl.com/mttbeenp (calling for a broad interagency response in recognition of the "dramatic growth in markets for digital assets, with profound implications for the protection of consumers, investors, and businesses, including data privacy and security; financial stability and systemic risk; crime; national security; the ability to exercise human rights; financial inclusion and equity; and energy demand and climate change.").

[14] *See supra* notes 4 & 9.  *See also* U.S. Dep't of Com., *Responsible Advancement of U.S. Competitiveness In Digital Assets*, (Sept. 2022), https://tinyurl.com/2p9htyp7 (noting that digital assets present "tangible risks to the soundness and stability of the US financial system and, if unaddressed, could affect the United States' position in the global financial system").

[15] *See* Michel P. Regan, *Laser Eyes Aglow on the US Presidential Campaign Trail*, Bloomberg, (Aug. 1, 2023), https://tinyurl.com/25umpypt.

[16] *See* Joanna Ossinger, *Crypto World Hits $3 Trillion Market Cap as Ether, Bitcoin Gain*, Bloomberg (Nov. 8, 2021); Derek Saul, *Crypto Market Crosses $1 Trillion For First Time in Months As Bitcoin Recovers From FTX-Driven Crash*, Forbes (Jan. 16, 2023); *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III Before the H. Comm. on Fin. Serv.*, 117th Cong. (2021) (statement of Gary Gensler, Chairman, Sec. and Exch. Comm'n), https://tinyurl.com/mtrnkbn2; Andrew Perrin, *16% of Americans Say They Have Ever Invested In, Traded or Used Cryptocurrency,* Pew Resch. Ctr. (Nov. 11, 2021), https://tinyurl.com/2p9fnjys.

The Supreme Court recently held that the Secretary of Education's effort to release borrowers from their obligations to repay $430 billion in student loans was a matter of "economic and political significance" which merited judicial hesitation "before concluding that Congress meant to confer such authority." *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023) (internal quotation marks and citations omitted). If $430 billion in student loans is a matter of "economic and political significance" meriting judicial hesitation, so too is a trillion-dollar industry in which 16% of Americans participate.

And the SEC's position sweeps further still. If the SEC has the power to graft its view of an investment transaction onto non-security financial assets themselves, the same reasoning could apply to other asset classes for which a secondary market develops. On the second pillar, nowhere do the Acts clearly grant the SEC authority over crypto assets. Nor do the Acts grant authority to add to the enumerated definition of "securities" set forth by Congress. To be clear: Congress has reserved for itself—not the SEC—the fundamental task of determining what type of assets fall within the SEC's purview, and Congress is the appropriate body to set forth a framework for regulating crypto assets.[17] Congress may decide to grant that authority to the SEC, in whole or in part, but that is a decision Congress must make and the SEC cannot usurp the decision for itself.

---

[17] Even if Congress ultimately selects a bill that confers on the SEC broad powers over the crypto industry, it is by virtue of Congress conferring that power on the SEC—not the SEC assumption of that power onto itself—that the SEC would have authority to act.

The SEC's assertion of power over crypto asset secondary markets—which it reaches by treating crypto assets themselves as securities—is a marked departure from the existing definition of a "security" established by Congress.  As the SEC Chair acknowledged not long ago, "it is only Congress that could really address it" because "[r]ight now, there is not a market regulator around these crypto exchanges."[18]

The SEC now departs from its prior position to bring this enforcement action against Coinbase.  It does so by labelling crypto assets themselves as securities.  *See, e.g.*, ECF 1, Complaint ¶¶ 1, 61, 74, 92.  To do so, the SEC relies on the *Howey* test, to assert that the crypto assets are (or can be treated as) investment contracts.  *Id.* at ¶¶ 6, 339.

This is an unprecedented use of the *Howey* test, which has not been broadly accepted to capture assets that do not confer an enforceable legal interest in a business entity, like debt, equity or a liquidation preference, even as part of a broader "contract, transaction, scheme" that is itself an investment contract.  As leading practitioners have noted, the SEC's novel attempt to use *Howey* to construe that a non-security asset itself is an "investment contract"—even when traded in secondary markets where it carries with it to the purchaser no legal relationship to any issuer—would be unprecedented in the decades-long history of *Howey*.  *See* Lewis Cohen *et al.*, *The Ineluctable Modality of Securities Law: Why Fungible*

---

[18] *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III: Hearing Before the H. Comm. on Fin. Serv.*, 117th Cong. (2021) (statement of Chairman Gary Gensler, Securities and Exchange Commission), https://tinyurl.com/mtrnkbn2.

*Crypto Assets Are Not Securities* (Nov. 10, 2022), https://tinyurl.com/y6sfurf6.  The SEC's novel interpretation would also create the first class of issuer-independent securities—*i.e.* securities that do not carry any legal relationship to any issuer, *id.*—a concept that Congress has not sanctioned.

The SEC's view that crypto assets can morph into and out of security status when facts change, without notice to consumers holding the assets,[19] is also simply unworkable under United States securities laws, which impose strict liability on third parties in secondary markets.

The SEC's departure from longstanding interpretations of the term "investment contract" and from definition of "security" as legislated by Congress is precisely the sort of "transformative expansion" of the SEC's "regulatory authority" that triggers judicial skepticism as set forth in *West Virginia*.  142 S. Ct. at 2610 (internal quotation marks and citation omitted).  Allowing the SEC to expand the definition of a "security" would encroach on Congress's role and "effect a fundamental revision of the" Exchange Act, "changing it from one sort of scheme of regulation into an entirely different kind."  *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023) (internal quotation marks, citations, and alterations omitted).  The SEC

---

[19] The SEC staff sought to address this transitory problem in a 2018 speech by Director Hinman, addressing the concept that a crypto asset once classified as a security might morph into a non-security.  *See* William Hinman, Dir., Sec. and Exch. Comm'n, Remarks at the Yahoo Finance All Markets Summit: Crypto (June 14, 2018), https://tinyurl.com/36frkm7j ("And putting aside the fundraising that accompanied the creation of Ether, based on my understanding of the present state of Ether, the Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions.").

is improperly "seizing the power of the Legislature" by asserting authority over all crypto assets.  *Id.*

There is a reason the Constitution favors legislation over agency enforcement actions.  A statutory framework balances competing interests and provides both fair warning of obligations and a meaningful opportunity for compliance.  Relying on enforcement actions, by contrast, gives little forewarning and scares away good actors in the process.[20]  "[W]hen it comes to the Nation's policy, the Constitution gives Congress the reins."  *Nebraska*, 143 S. Ct. at 2381 (Barrett, J., concurring).

*   *   *

"Because the Constitution vests Congress with '[a]ll legislative Powers,' Art. I, § 1, a reasonable interpreter would expect it to make the big-time policy calls itself, rather than pawning them off to another branch."  *Nebraska*, 143 S. Ct. at 2380 (Barrett, J., concurring).

As the Supreme Court explained, courts "presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies."  *West Virginia*, 142 S. Ct. at 2609 (internal quotation marks omitted).  Under the SEC's approach, the agency would jump ahead of Congress.  Amicus asks this Court to

---

[20] Even setting aside the fact that Congress did not clearly grant the SEC authorization to regulate secondary crypto markets, the SEC has been criticized for jumping to enforcement while reneging its role to set forth clear regulation.  *See* Kara McKenna Rollins, *Have the SEC's Delay Tactics Made Its Petition for Rulemaking Process Vulnerable to Challenge?  A Look at In re Coinbase Inc. and SEC's Nullification of 5 U.S.C. § 553(e) by Inaction*, Yale J. on Reg.: Notice & Comment Blog (May 3, 2023) (explaining that the SEC has received five petitions for rulemaking in the last five years seeking clarity on the cryptoeconomy, and the SEC has neglected to act on all five); *accord In re Coinbase, Inc.*, No. 23-1779 (3d Cir. Jun. 20, 2023) (retaining jurisdiction over mandamus petition seeking rulemaking).

resist the siren song of a regulatory agency seeking to expand its authority (under the auspices of investor protection) at the expense of the separation of powers. *Id.* ("Extraordinary grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle devices.") (internal quotation marks, citation, and alteration omitted).

## CONCLUSION

For the reasons discussed above, this Court should decline the SEC's novel effort to regulate crypto asset secondary markets on the theory that crypto assets are securities, and defer to Congress to enact a proper regulatory scheme. Coinbase's motion for judgement on the pleadings should be granted.

Dated:  August 11, 2023

Respectfully submitted,

JENNER & BLOCK LLP

By:  /s/ *Michelle S. Kallen*
Michelle S. Kallen (pro hac vice)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
mkallen@jenner.com

Kayvan B. Sadeghi
Sarah Purtill
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600
Fax: (212) 891-1699
ksadeghi@jenner.com
spurtill@jenner.com

William F. Ryan (pro hac vice motion pending)
10 Exchange Square
London, UK  EC2A 2BR
Tel.: 44 330 060 5433
wryan@jenner.com

Attorneys for Amicus Curiae United States
Senator Cynthia M. Lummis

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on August 11, 2023, with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  August 11, 2023                    By:    /s/  *Michelle S. Kallen*
                                                                         Michelle S. Kallen