**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE COMMISSION,

                              *Plaintiff*,

            v.

COINBASE, INC. AND COINBASE GLOBAL, INC.,

                              *Defendants*.

23 Civ. 4738 (KPF)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF COINBASE'S**
**MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

 

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants*

Dated: May 24, 2024

# **TABLE OF CONTENTS**

                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.      THE ORDER PRESENTS A CLEAR AND CONTROLLING QUESTION WARRANTING IMMEDIATE APPELLATE REVIEW. ................................................ 3

          A.      There is no mystery about the question presented. .................................................... 3

          B.      That the Order addresses issues not suggested for interlocutory review does not affect certification under Section 1292(b). ................................................. 5

II.     THE NOVELTY OF THE ISSUE, TENSION WITH APPELLATE AUTHORITY, AND THE CONFLICT WITH *RIPPLE* EXPOSE "SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" ON THE QUESTION PRESENTED. ................................................................................................ 5

          A.      The question is of first impression and "particularly difficult." .............................. 6

          B.      The conflict with *Ripple* cannot be explained away. .................................................. 8

III.    REVERSAL ON THE QUESTION PRESENTED WOULD COMPEL DISMISSAL OF MOST OF THE SEC'S CASE AND DRAMATICALLY REDUCE THE SCOPE AND BURDEN OF THE LITIGATION. .................................... 9

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                     **Page(s)**

*Am. Geophysical Union* v. *Texaco Inc.*,
   802 F. Supp. 1 (S.D.N.Y. 1992)..................................................................4, 9 n.8, 10

*Balintulo* v. *Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)..............................................................................10

*Capitol Records, LLC* v. *Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013)....................................................2 n.2, 5, 10

*Chechele* v. *Std. Gen. L.P.*,
   2022 WL 766244 (S.D.N.Y. Mar. 14, 2022) ........................................................5

*De Luz Ranchos Inv. Ltd.* v. *Coldwell Banker & Co.*,
   608 F.2d 1297 (9th Cir. 1979) ..............................................................................6

*Dill* v. *JPMorgan Chase Bank, N.A.*,
   2021 WL 3406192 (S.D.N.Y. Aug. 4, 2021)........................................................6

*Flo & Eddie, Inc.* v. *XM Radio Inc.*,
   2015 WL 585641 (S.D.N.Y. Feb. 10, 2015)....................................................5, 10

*Glen-Arden Commodities, Inc.* v. *Constantino*,
   493 F.2d 1027 (2d Cir. 1974) ...............................................................................7

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
   986 F. Supp. 2d 524 (S.D.N.Y. 2014)..........................................................5, 9 n.8

*Patterson* v. *Jump Trading LLC*,
   2024 WL 49055 (N.D. Cal. Jan. 4, 2024) .............................................................7

*Pollack* v. *Laidlaw Holdings, Inc.*,
   1993 WL 254932 (S.D.N.Y. June 25, 1993) ........................................................5

*Rodriguez* v. *Banco Cent. Corp.*,
   990 F.2d 7 (1st Cir. 1993)....................................................................................6

*SEC* v. *Arbitrade Ltd.*,
   2024 WL 962372 (S.D. Fla. Mar. 6, 2024)......................................................8 n.7

*SEC* v. *Kik Interactive Inc.*,
   492 F. Supp. 3d 169 (S.D.N.Y. 2020)...............................................................7 n.6

*SEC* v. *Lauer*,
   52 F.3d 667 (7th Cir. 1995) ..................................................................................4

*SEC* v. *Rio Tinto PLC*,
   2021 WL 1893165 (S.D.N.Y. May 11, 2021) ................................................................. 3, 5

*SEC* v. *Ripple Labs, Inc.*,
   682 F. Supp. 3d 308 (S.D.N.Y. 2023) ............................................................... *passim*

*SEC* v. *Telegram Grp., Inc.*,
   448 F. Supp. 3d 352 (S.D.N.Y. 2020) ............................................................... 7 n.6

*SEC* v. *Wahi*,
   2024 WL 896148 (W.D. Wash. Mar. 1, 2024) ....................................................... 7

*United States ex rel. Quartararo* v. *Catholic Heath Sys. of Long Island, Inc.*,
   521 F. Supp. 3d 265 (E.D.N.Y. 2021) ................................................................. 9 n.8

*Wals* v. *Fox Hills Dev. Corp.*,
   24 F.3d 1016 (7th Cir. 1994) .................................................................................. 4

*Zakrzewska* v. *New School*,
   574 F.3d 24 (2d Cir. 2009) ..................................................................................... 8

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................ *passim*

**PRELIMINARY STATEMENT**

The SEC's opposition proceeds as though the Court's March 27 Order was the inevitable application of settled law in a familiar context; a decision of no consequence other than confirming that established legal rules govern the parties' idiosyncratic dispute; a no-brainer.

But the opposite is true. The Order addressed a novel legal question in a regulatory action against a market leader that could shape or distort a multi-trillion-dollar industry. No appellate court has addressed whether a digital asset transaction carrying no post-sale obligations can be an "investment contract" under *Howey*. This case provides just the right vehicle for the Second Circuit to do so. As Coinbase showed in its opening brief, all three prongs of Section 1292(b) are met.

In response, the SEC seeks to side-step the test.

*First*, the SEC avoids the "controlling question" inquiry by asserting it cannot tell what question Coinbase would have the Second Circuit consider—even though Coinbase stated it 10 times in its application. The SEC claims confusion because Coinbase referred to the general issue of *Howey*'s application to digital asset transactions. Opp. 1, 9. But Coinbase nowhere framed this as an alternative question presented; it just observed that courts and litigants stand in critical need of appellate guidance concerning *Howey*'s application to crypto. The SEC made a similar point months ago in seeking interlocutory appeal in *Ripple*, observing there was an "intra-district split on critical aspects of the legal framework" governing the "application of *Howey* to crypto asset offers and sales," and that resolution of that split would "impact [] a large number of pending litigations," including this case. SEC *Ripple* Mot. 2, 8, 9. The number of "pending litigations" has only grown since then.[1]

---

[1] It may grow still. Though the SEC declared in 2018 that "current offers and sales of Ether are not securities transactions," W. Hinman, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), and just yesterday approved on an accelerated basis rule changes proposed by Nasdaq and others to list Exchange Traded Products intended to hold

*Second*, in denying that there exist here substantial grounds for difference of opinion, the SEC ignores that no appellate court in the 78 years since *Howey* has found an investment contract absent a post-sale contractual undertaking; that appellate precedents outside the Second Circuit affirmatively support Coinbase's position; and the Court's own recognition that the case presents difficult issues. The SEC's new-found insistence that *Ripple* is consistent with *Terraform* (and the Order) likewise rings hollow. The split between these cases is one the Court explicitly recognized and one the Commission itself recognized until it became convenient not to. Legislators' disagreement with the SEC's position meanwhile has deepened: just this week, the U.S. House of Representatives approved on a bipartisan basis comprehensive digital asset legislation that would deny the SEC the expansive jurisdiction it claims.[2]

*Finally*, the SEC's effort to downplay the practical impact of dismissing claims accounting for more than 70% of the complaint fails. Most of the SEC's 116 recently-served document requests and all of its 32 requests for admission, 10 third-party subpoenas, and 9 requests for inspection are about Coinbase's platform and Prime services rather than the unrelated staking program. This portends a discovery process, motion practice, and a trial skewed heavily toward claims centering on the "ecosystems" of 12 distinct tokens—claims that are destined to consume substantial judicial and party resources but that, with interlocutory review, could be out of the case.

Certification is warranted to resolve the novel and controlling question of law presented, to guide the conduct of this litigation, and to bring much-needed clarity to the burgeoning crypto industry.

---

ETH as a digital asset commodity and not a security, it also recently "issu[ed] an order of investigation designating ETH as a security," *Consensys Software Inc.* v. *Gensler et al.*, No. 4:24 Civ. 369 (N.D. Tex. Apr. 29, 2024), ECF No. 18 ¶ 10.

[2] Julia Shapero, *House passes bill outlining new framework for crypto regulation despite SEC pushback*, The Hill (May 22, 2024), https://tinyurl.com/3s2bjrxr ("[D]espite opposition from SEC Chair Gary Gensler . . . [s]eventy-one Democrats joined 208 Republicans to support the measure."). The SEC asserts that "disagreements *outside* the courts" are not relevant and that Coinbase cites no case showing otherwise. Opp. 17. Not so. *See Capitol Records, LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 552 (S.D.N.Y. 2013) (citing non-binding report by the U.S. Copyright Office as to scope of the Copyright Act's Safe Harbor provision in support of 1292(b)'s second prong) (cited at Mot. 9, 10, 20, 21).

**ARGUMENT**

I.  **THE ORDER PRESENTS A CLEAR AND CONTROLLING QUESTION WARRANTING IMMEDIATE APPELLATE REVIEW.**

Coinbase demonstrated that "reversal of the district court's opinion . . . could significantly affect the conduct of the action" and that "the certified issue has precedential value for a large number of cases." *SEC* v. *Rio Tinto PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021); *see* Mot. 7-9, 11-12. The SEC does not seriously dispute these showings as applied to the question whether a digital asset sale without post-sale obligations running to the purchaser can be an investment contract. It acknowledges that that question "appear[s] simple" and may have "traction as a pure legal question." Opp. 8, 10 (cleaned up). But the SEC claims not to know whether this is really the question Coinbase asks the Court to identify as part of its certification, and it complains that the Order to be certified implicates other issues. Opp. 8-10. This is all ill-grounded distraction.

A.  **There is no mystery about the question presented.**

Coinbase stated 10 times in its opening brief the question it proposes be certified: Whether a digital asset sale without post-sale obligations running to the purchaser can give rise to an "investment contract." *See* Mot. 1, 7 (twice), 8 (also twice), 15 (three times), 17, 19. The question is clear. Coinbase did observe that resolving the question would entail application of *Howey* to digital asset transactions, and that courts need guidance in this area generally. Mot. 10. That statement is true, as the SEC recognized when it too sought interlocutory review of an aspect of *Howey*'s application to digital asset transactions. *Compare* SEC *Ripple* Mot. 8 ("The rulings at issue involve pure legal questions about the application of *Howey* to crypto asset offers and sales . . . ."), *and* SEC *Ripple* Reply at 8 (emphasizing that question implicates "other courts' *reasoning* and *interpretation* of *Howey*" in the crypto context (emphases original)), *with* SEC *Ripple* Mot. 1 (identifying specific questions presented). The general observation does not reframe the question presented; it is a reason

-3-

why the question should go up now. *See, e.g.*, *Am. Geophysical Union* v. *Texaco Inc.*, 802 F. Supp. 1, 29-30 (S.D.N.Y. 1992) (certifying specific application of "fair use" defense to "photocopying" scientific journals to facilitate "a clear framework or standard governing future cases").

Nor is there any lack of clarity in Coinbase's position as to what an investment contract requires. *See* Opp. 4, 9.[3] Coinbase has consistently argued that there must be the holding out of a contractual undertaking reasonably understood to create an enforceable obligation. Whether an enforceable contract actually results is not dispositive; the federal securities laws cover offers and sales of instruments that purport to be binding even if they turn out not to be. *See SEC* v. *Lauer*, 52 F.3d 667, 670 (7th Cir. 1995) (federal securities laws reach "misrepresenting an interest as a security when it is nothing of the kind"). It is undisputed that the complaint here does not allege even the holding out of any contractual undertaking beyond the point of sale. Order 30.

Nor has Coinbase "abandoned," by not spelling it out in the question presented, the argument that an investment contract requires an "interest in income, profits, or assets of a business" (Opp. 14). Like equity and debt instruments constituting securities, an investment contract is an interest in the income, profits, or assets of an enterprise. *Wals* v. *Fox Hills Dev. Corp.*, 24 F.3d 1016, 1018 (7th Cir. 1994); *Lauer*, 52 F.3d at 670; *see also* ECF Nos. 36 at 18-21, 83 at 9-11. The post-sale contractual undertaking is what confers that interest in the context of an investment contract. The requirements of a contractual obligation and conferral of a stake in an enterprise are thus intertwined, and both are implicated by the question presented—as made clear in Coinbase's opening brief, which discussed the Order's handling of *Wals* and *Lauer* and the SEC's prior briefing relying on those cases. Mot. 4, 18.

---

[3] The SEC persists in asserting that Coinbase advances a "blanket argument that secondary market transactions in crypto assets can never constitute investment contracts." Opp. 15. That is false, as Coinbase made clear in its papers, ECF No. 83 at 11, and again at oral argument, Hr'g Tr. at 81:18-20.

### B. That the Order addresses issues not suggested for interlocutory review does not affect certification under Section 1292(b).

The SEC scolds that Section 1292(b) "authorizes certification of *orders*" and not "*questions*," and suggests that for an order to merit certification it must address no issue other than the question presented. Opp. 8 (citing *Chechele* v. *Std. Gen. L.P.*, 2022 WL 766244, at *9 (S.D.N.Y. Mar. 14, 2022)).[4] That is wrong. Yes, orders rather than questions get certified, but as *Chechele* recognized, "the Second Circuit has found it helpful if the district judge frames the controlling question(s) that the judge believes is presented by the order being certified," *id.* (cleaned up), and that is the practice in this District. *See, e.g.*, *Flo & Eddie, Inc.* v. *XM Radio Inc.*, 2015 WL 585641, at *3 (S.D.N.Y. Feb. 10, 2015); *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 986 F. Supp. 2d 524, 532 (S.D.N.Y. 2014) ("that certification under § 1292(b) is for an 'order' and not 'questions' is not supported by the normal practice of certifying questions for interlocutory review"). District courts also regularly certify orders that implicate both questions that satisfy Section 1292(b) and questions that do not. *See, e.g.*, *Pollack* v. *Laidlaw Holdings, Inc.*, 1993 WL 254932, *2 (S.D.N.Y. June 25, 1993) (rejecting certification based on one question presented but granting on another); *Capitol Records*, 972 F. Supp. 2d at 554-56 (rejecting certification of five questions presented but granting on two others); *see also, e.g.*, *Rio Tinto*, 2021 WL 1893165, at *2 (certifying order where other live issues remained in case); *Flo & Eddie*, 2015 WL 585641, at *2, *4 (same). What Coinbase asks the Court to do here is accordingly consistent with accepted practice.

## II. THE NOVELTY OF THE ISSUE, TENSION WITH APPELLATE AUTHORITY, AND THE CONFLICT WITH *RIPPLE* EXPOSE "SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION" ON THE QUESTION PRESENTED.

Coinbase demonstrated both that the question presented "is particularly difficult and of first

---

[4] The SEC also misrepresents what issues the Order resolved by suggesting it dismissed Coinbase's affirmative defenses. *See, e.g.*, Opp. 2, 6, 19. As the SEC acknowledged during a recent discovery conference between the parties, Coinbase's defenses were neither briefed by the motion for judgment on the pleadings nor resolved by the Order.

impression for the Second Circuit," and that there is "conflicting authority" bearing on it, *Dill* v. *JPMorgan Chase Bank, N.A.*, 2021 WL 3406192, at *7 (S.D.N.Y. Aug. 4, 2021). *See* Mot. 13-19. The SEC's counters to these points lack all force.

### A.   The question is of first impression and "particularly difficult."

The SEC does not dispute that the question Coinbase framed 10 times in its application is a matter of first impression for the Second Circuit. And only by ignoring and mischaracterizing Coinbase's points is the SEC able to insist that the Order's resolution of that question was a foregone conclusion.

*First*, the SEC ignores that no appellate court has found an investment contract absent a contractual undertaking in the 78 years since *Howey*. The SEC's claim, vindicated in the Order, that an investment contract needs no hint of a contract is both counter-intuitive and unprecedented.

*Second*, the SEC is wrong that no court has found that the absence of contractual undertakings forecloses the existence of an investment contract. *Cf.* Opp. 11-12. *De Luz* and *Rodriguez* both found just that, in the context of real estate interests accompanied by non-contractual representations concerning future development. *De Luz Ranchos Inv. Ltd.* v. *Coldwell Banker & Co.*, 608 F.2d 1297, 1301 (9th Cir. 1979); *Rodriguez* v. *Banco Cent. Corp.*, 990 F.2d 7, 11 (1st Cir. 1993). The SEC sought to distinguish these cases by claiming that digital assets, unlike real estate, have "no inherent value." ECF No. 69 at 14-15 & n.8. But that purported fact is not even pleaded, and Coinbase respectfully submits that no part of the *Howey* analysis turns on the "inherent value" of the asset at issue. ECF No. 69 at 14-15. *Joiner* and the SEC's own briefing in *Howey* make that plain. *See* Mot. 18.[5]

---

[5] The SEC accuses Coinbase of "gross mischaracterization" on this point (Opp. 12), but it is the SEC who mischaracterizes Coinbase's argument. Coinbase never argued that *Joiner* forecloses consideration of "economic reality," and the SEC cites no page of any Coinbase submission even suggesting as much.

-6-

*Third*, *Glen-Arden* does not show that an investment contract needs no contractual undertakings. *Cf.* Opp. 12. There the purchasers were "buying in addition [to Scotch whiskey] services absolutely necessary to the turning of the promised profit," including a guarantee that the seller would "find buyers for the Scotch or buy it back themselves." *Glen-Arden Commodities, Inc.* v. *Constantino*, 493 F.2d 1027, 1035 (2d Cir. 1974). "*This* br[ought] th[e] scheme"—*i.e.*, the combination of contracts for sale and service obligations—"within the facts of a long line of cases" finding investment contracts. *Id.* (emphasis added). The sales of digital assets on Coinbase's platform are attended by no such contractual obligations—as the SEC concedes and the Order expressly recognizes. Order 30.

*Fourth*, neither *SEC* v. *Wahi*, 2024 WL 896148 (W.D. Wash. Mar. 1, 2024), nor *Patterson* v. *Jump Trading LLC*, 2024 WL 49055 (N.D. Cal. Jan. 4, 2024), establishes that *Howey*'s application to the secondary transactions at issue here is well-settled (Opp. 15-16). *Wahi* is the unopposed default judgment the SEC secured against a former Coinbase employee suspected of having fled the country. *See* ECF No. 104. *Patterson* involved a copycat class action functionally identical to *Terraform*—same assets, same arguments, same result. Neither case settled anything.

*Fifth*, it is likewise hardly settled that an "ecosystem" may substitute for post-sale contractual obligations. *See* Opp. 13 n.4. Though the term "ecosystem" is certainly used in the digital asset and indeed the tech industry more generally, *id.*, and has been referenced in the same general way in (highly distinguishable) cases discussing crypto assets in the primary offering context, *id.*,[6] the SEC did not introduce the concept to distinguish securities from commodities traded in an atmosphere of promotion until oral argument in this case. Were this a settled determinative point, the SEC might have been expected to raise it earlier.

---

[6] *Kik* and *Telegram*, which the SEC cites, involved pre-operational sales—*i.e.*, investments directly in a business enterprise. *See SEC* v. *Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 361, 363 (S.D.N.Y. 2020) ("The agreements . . . entitled the Initial Purchasers to receive an allotment of Grams upon the launch of the TON Blockchain."); *SEC* v. *Kik Interactive Inc.*, 492 F. Supp. 3d 169, 176, 180 (S.D.N.Y. 2020) (at delivery, "no goods or services were available for sale to holders of Kin").

*Finally*, this Court recognized the issues here are "hard." Hr'g Tr. at 104:16-19, 105:4 (noting "very difficult subject matter"), 155:7-8 (noting difficulty). That observation warrants weight in the certification analysis. *See, e.g.*, *Zakrzewska* v. *New School*, 574 F.3d 24, 27 (2d Cir. 2009) (certifying question on interlocutory appeal and noting district court's statement that "its 'conclusion [wa]s not free from doubt'"). The SEC ignores it entirely.

Viewing the precedential landscape fairly, substantial grounds for disagreement exist here.

### B. The conflict with *Ripple* cannot be explained away.

Though not necessary to support certification, the Order is also at the center of an intra-district conflict. Mot. 14-15. *Ripple* applied *Howey* in a way that supports Coinbase's position, concluding that blind bid-ask digital asset transactions over a secondary exchange were not investment contracts because they lacked features inherent in the ongoing contractual relationship that Coinbase maintains is necessary. *See, e.g.*, *SEC* v. *Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 329 (S.D.N.Y. 2023) ("Ripple did not make any promises or offers because Ripple did not know who was buying the XRP"). Though *Ripple* addressed sales by an issuer, Opp. 10 n.2, and declined to hold that an investment contract requires post-sale obligations as an "essential ingredient[]" outside of *Howey*, *Ripple*, 682 F. Supp. 3d at 322-23, those facts do not mitigate the conflict: Nothing here turns on the identity of the seller; Coinbase's argument is grounded in *Howey* rather than outside it; and application of *Ripple*'s analysis to the secondary-market transactions pleaded here would require dismissal.[7]

---

[7] The SEC cites a Southern District of Florida case to support its new take that no intra-district conflict exists between *Ripple* and *Terraform*. *See* Opp. 16-17 (citing *SEC* v. *Arbitrade Ltd.*, 2024 WL 962372 (S.D. Fla. Mar. 6, 2024)). But that view cannot be squared with the SEC's own position in *Ripple*, *see* SEC *Ripple* Mot. 9 (noting this litigation), or with the Order, *see* Order 45. On the merits, moreover, *Arbitrade* is inapposite; the underlying decision in that case did "not attempt to apply the *Howey* test to the DIG scheme in the Complaint." 2024 WL 962372, at *3.

### III. REVERSAL ON THE QUESTION PRESENTED WOULD COMPEL DISMISSAL OF MOST OF THE SEC'S CASE AND DRAMATICALLY REDUCE THE SCOPE AND BURDEN OF THE LITIGATION.

A successful interlocutory appeal here would dispose of the main event: claims related to Coinbase's platform and Prime services. Far from "overstat[ing]" (Opp. 19) the resources needed to develop, litigate, and try these claims to a jury, Coinbase accurately predicted that the SEC would litigate them in a manner requiring such lopsided resource commitment. The vast majority of the SEC's recently-served discovery requests and third-party subpoenas relate to Coinbase's platform and Prime. Exs. A (SEC RFPs), B (SEC RFAs), C (SEC Rule 45 Notice Letter), D (SEC RFIs). Nor is it fair to suggest Coinbase has already "considered much of the relevant information" relating to these claims (Opp. 19); the SEC's "ecosystem-as-limiting-principle" framing of *Howey* was brand new at oral argument and has been tested nowhere. Litigating the bounds of that concept and developing an attendant factual record are accordingly new projects. Absent an interlocutory appeal, facts relating to the "ecosystems" of the 12 tokens the SEC has identified promise to consume the bulk of the Court's and the parties' attention all the way to and through trial.

The SEC is also wrong that its staking claims are "closely related" to the platform and Prime claims (Opp. 18). These claims involve different conduct, operational centers, and personnel: of the *140* individuals and entities identified by the SEC as "likely to have discoverable information that the Commission may use to support its claims," just 13 are alleged to have a title or subject-matter knowledge specific to staking. Ex. E (Initial Disclosures) at 2 & att. A.[8]

Finally, the SEC's surmise that "much" of the case will be litigated before a Second Circuit

---

[8] Regardless, certification on an issue is appropriate even where "there may be some overlap" between it and other claims, so long as dismissal on the issue will streamline the case. *United States ex rel. Quartararo* v. *Catholic Heath Sys. of Long Island, Inc.*, 521 F. Supp. 3d 265, 279 (E.D.N.Y. 2021); *accord Am. Geophysical*, 802 F. Supp. at 29; *cf. In re Facebook*, 986 F. Supp. 2d at 531 (denying certification because remaining claims were "all predicated on the same underlying factual events, and discovery w[ould] significantly overlap " (cited at Opp. 7, 11, 12, 18)).

-9-

decision (Opp. 19-20) assumes too much. Trial is not until 2025, and the Court could stay discovery were it to conclude that judicial economy so warranted. *Flo & Eddie*, 2015 WL 585641, at *4. Coinbase is prepared to act with all speed necessary, and will seek expedited review should this Court find it appropriate. Even were discovery not stayed and a Second Circuit ruling favoring Coinbase to issue close to trial, the ruling would dramatically reduce the burden of trial. That alone satisfies the third prong of Section 1292(b). *See, e.g.*, *Capitol Records*, 972 F. Supp. 2d at 551 ("the third factor . . . is met when an intermediate appeal promises to advance the time for trial or to shorten the time required for trial" (cleaned up)); *Am. Geophysical*, 802 F. Supp. at 29 (certifying order where appellate adjudication could confirm key defense without which "trial of the[] issues would consume vast amounts of expense and time for the parties").

\*   \*   \*

In the final passage of its opposition brief, the SEC suggests—contrary to its position in *Ripple*—that no appellate clarity is really needed. Opp. 21; *but see Ripple* Mot. 12 ("various cases applying *Howey*, including in the crypto asset context, show that reasonable jurists" may disagree on the proper application of *Howey*). It further suggests the Second Circuit might deem *Ripple* or *Terraform* a better "vehicle" for review (Opp. 21), even though the prospect and scope of appeal in those cases are uncertain. These musings only underscore that Section 1292(b) is satisfied, and that the SEC is stretching to prevent appellate review of a case that illustrates more starkly than others the extravagance of its claim to regulatory authority outside previously-accepted bounds. The statutory test having been satisfied, the Court "should not hesitate to certify [the] interlocutory appeal." *Balintulo* v. *Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (cleaned up).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Coinbase's motion and certify for interlocutory appeal the March 27 Order.

Dated: May 24, 2024  
New York, New York

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

/s/ *William Savitt*
William Savitt
Kevin S. Schwartz
Sarah K. Eddy
Adam M. Gogolak
David P.T. Webb
Emily R. Barreca
51 West 52nd Street
New York, New York 10019
(212) 403-1000
wdsavitt@wlrk.com

Steven R. Peikin
Kathleen S. McArthur
James M. McDonald
Julia A. Malkina
Olivia G. Chalos
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants*