

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

June 28, 2024

<u>Via ECF</u>
The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court, Southern District of New York

      Re:     <u>SEC v. Coinbase, Inc. and Coinbase Global, Inc.</u>, 23 Civ. 4738

Dear Judge Failla:

      Pursuant to Local Rule 37.2 and Your Honor's Individual Practices, the SEC respectfully requests an informal conference and leave to file a motion for a protective order and to quash an improper subpoena issued by Defendants Coinbase, Inc. and Coinbase Global, Inc. to the Chair of the SEC, purportedly in his personal capacity (the "Subpoena"). Ex. A. The Subpoena seeks nothing of relevance, imposes an undue burden on the SEC, and strongly disincentivizes public service. It should be quashed. The SEC met and conferred with Defendants on three occasions regarding the Subpoena but was unsuccessful in resolving the matter.

**I.**      **Factual and Procedural Background.**

      The SEC alleges that Defendants violated strict liability provisions of the federal securities laws through unregistered offerings and by operating as an unregistered broker, exchange, and clearing agency. *E.g.*, Compl. (D.E. 1) ¶ 3. Defendants raised affirmative defenses in their Answer (D.E. 22) ("Ans.") and Motion for Judgment on the Pleadings (D.E. 36) ("MJOP"). The Court denied the MJOP in part, rejecting three of those defenses as a basis for judgment on the pleadings and concluding that "the SEC has satisfied its [Due Process] obligations." D.E. 105 at 38-39.

      On April 23, 2024, Defendants served requests for production of documents on the SEC ("RFPs"). *See* Ex. B. On June 14, 2024, Defendants notified the SEC of their intent to serve the supposedly "individual capacity" Subpoena. Ex. A at 3. The RFPs, read together, seek essentially all SEC documents, from 2017 to the present, that in any way, shape, or form touch upon the crypto asset markets. The Subpoena seeks from the Chair largely the same thing—all documents about crypto—for the same period, including the four years *before* his being sworn in on April 17, 2021. The Subpoena contains three requests that the RFPs do not. But two mirror a subpoena Defendants sent to the Massachusetts Institute of Technology, where the Chair previously taught, for documents such as course syllabi and assignments. *See* Ex. C ("MIT Subpoena"). The third seeks information about holdings, if any, of crypto assets. *See* Ex. A, No. 26. *See also* Ex. D (comparing the requests).

      During the meet-and-confer process the SEC noted that though the Subpoena is styled as being in the Chair's *individual* capacity, it includes the period from 2021 through the present. Ex. A at 10 ¶ 1. Accordingly, many of the Subpoena's requests seek documents that relate solely to the Chair in his *official* capacity. *E.g., id.* at Nos. 3-5, 13, 19 (communications with government officials or regarding legislation); *id.* at Nos. 16, 21-22, 24-25 (internal SEC decision-making including as to past litigations); *id.* at 23 (draft of Chair statements while serving as Chair); *see also* Ex. D. These

documents belong to the SEC, 17 C.F.R. § 200.30-14(g), not any individual employee. Defendants can and have made Fed. R. Civ. P. 34 requests for them from the SEC. *See* Ex. B. To the extent these documents are appropriately subject to discovery at all—and the SEC believes that most of them are not—RFPs to the SEC are the way to seek them. *See N'Diaye v. Metro. Life Ins. Co.*, 2018 WL 2316335, at *9 (S.D.N.Y. May 8, 2018) (granting protective order when Rule 45 subpoena requested documents from a nonparty that could have been sought from a party); Fed. R. Civ. P. 26(b)(2)(C)(ii) (the court "must limit … discovery" where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.").

Defendants next stated an interest in documents predating the Chair's service. In response, the SEC—without conceding relevance—noted that the Chair's pre-SEC speeches or interviews are publicly available, as are his MIT courses and Senate questionnaires detailing his financial holdings. Defendants then indicated that at a minimum they sought a search of the Chair's personal emails to determine if he used them to communicate his views about the federal securities laws and crypto assets—and even offered to pay for his lawyer. Defendants also asserted that these materials are relevant to "fair notice" given the Chair's prominence in the field of crypto assets before he was Chair, coupled with his later service as Chair. The SEC rejected this position and proposal.

## II.     The Subpoena Must Be Quashed and A Protective Order Issued.

The Subpoena should be directed at the SEC. To the extent it is not, it is an improper intrusion into a public official's private life, based on his decision to serve. Given also the utter lack of relevance of the requested documents, and the potential chilling effect on public service, the Court should quash the Subpoena and issue a protective order under Fed. R. Civ. P. 26(b) and 45(d).

### A.  The Discovery Sought From the Chair in His Individual Capacity is Irrelevant.

"[T]he Due Process Clause requires that agencies bringing an enforcement action 'provide … a person of ordinary intelligence fair notice' that the regulated conduct was 'prohibited.'" D.E. 105 at 35-36. The focus is on "'the statute itself and other [pertinent] law,' without reference to subjective perceptions or individual sensibilities." *Frese v. MacDonald*, 512 F. Supp. 3d 273, 292 (D.N.H. 2021). Defendants have asserted a litany of complaints about the SEC's actions and statements by SEC officials, arguing they deprived Defendants of fair notice. *E.g.*, Ans. ¶¶ 18, 71, 76; MJOP at 4-5. Surveying *Howey* and applicable law, and the SEC's public "written guidance, litigation, and other actions," the Court has held the SEC had provided fair notice. D.E. 105 at 35-39.

In reaching this conclusion, the Court looked not to individual conduct, but to the law and *the SEC's* official actions. So too did the other courts who considered and rejected some version of the "fair notice" defense from similarly-situated defendants, including in *Zaslavskiy*, *Kik*, *LBRY*, *Ripple*, and *Terraform*. None of these cases considered or mentioned, let alone relied on the interpretations of law by a private citizen, which "supports the conclusion that such discovery is not relevant." *E.g.*, *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 143 (S.D.N.Y. 2017). Were this not the law, the private emails of all professors or others with experience purportedly related to their public duties thereafter would be subject to endless, intrusive discovery.

To the contrary, courts have rejected the fair notice defense as well as *discovery requests* into SEC internal and external communications as entirely irrelevant in strict liability registration cases

because, as one court put it, "the deliberations within an agency shed[] no light on the application of the statute." *SEC v. Kik Interactive, Inc.*, No. 19 Civ. 5244 (AKH) (S.D.N.Y. Nov. 12, 2019) (D.E. 36). Another commented that in determining the applicability of the fair notice defense it "could care less" about what a prominent official "says when he speaks as a private citizen." Ex. E at 15-16 (Tr. of Hr'g in *SEC v. LBRY*, No. 21 Civ. 260 (PB) (D.N.H. Feb. 23, 2022) (D.E. 50)); *see also id.* at 29 (denying discovery). *Cf. SEC v. Terraform Labs, Inc.* No. 23 Civ. 1346 (JSR) (S.D.N.Y. July 7, 2023) (denying discovery as to documents about SEC Chair speeches based on privilege).

These principles apply more forcefully here. The SEC's Chair is not a fact witness. Nor can he be proffered as a legal expert—that job belongs to the Court. Any individual's view as to whether a law applies to a fact pattern, is clear, or has been consistently applied, is simply irrelevant.

### B. The Subpoena is Cumulative and Unduly Burdensome.

As noted, the Subpoena is "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), of the RFPs and the MIT Subpoena. *See also* Ex. D. But even whittling away at the requests, creating search protocols, or limiting the search to private emails reviewed by a Coinbase-hired lawyer does not eliminate the Subpoena's unjustifiable burden on a high-ranking member of the SEC, or in any way lessen the Subpoena's chilling effect on public service.

"High-ranking" government officials "have greater duties and time constraints than other witnesses" and, if the court did not limit discovery (a deposition in that case), "such officials would spend an inordinate amount of time tending to pending litigation." *Lederman v. New York City Dep't of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (cleaned up). Fed. R. Civ. P. 26 and 45 accommodate "'the government's serious and legitimate concern that its employees not be commandeered into service by private litigants.'" *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 478, 489 (S.D.N.Y. 2021). Without limits, subjecting *private* citizens to discovery based on their decision to serve would be a "'significant deterrent to qualified candidates for public service'." *In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020).

Defendants argue that the Chair's views in his individual capacity are relevant in part because he became Chair. This proves too much. Requiring an official to retain personal counsel and subject his private emails to search by private litigants because of his public role triggers all the concerns animating *Lederman* and cases like it. In this context, it is incalculably intrusive and harassing to search a citizen's communications with friends, colleagues, or even the press in his spare time. And what could possibly be the relevance of reading materials that Prof. Gensler may have assigned or emails he may have sent students? It is hardly surprising that Defendants can point to no enforcement action of a strict liability statute in which a court has endorsed such an unwarranted intrusion into an official's personal life. Respectfully, the Court should decline to be the first.

The Court should quash the Subpoena or schedule an informal conference and potentially further briefing.[1]

---

[1] The outcome would not change should Defendants broaden their relevancy argument, as none of their other defenses justify this intrusive discovery request on a private citizen. *E.g.*, D.E. 105 at 31-39 (rejecting APA and the Major Questions Doctrine as a basis for judgment on the pleadings); *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000) (rejecting "equitable estoppel" defense); *SEC v. Rayat*, 2021 WL 4868590 at *2-4 (S.D.N.Y. Oct. 18, 2021) (rejecting "laches" and "unclean hands" defenses).

Hon. Katherine Polk Failla
June 28, 2024
Page 4

                                    Respectfully submitted,

                                    Jorge G. Tenreiro
                                    *Counsel for Plaintiff*

CC: All counsel of record (via ECF)