

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

July 3, 2024

Via ECF
The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court, Southern District of New York

Re: *SEC v. Coinbase, Inc. and Coinbase Global, Inc.*, 23 Civ. 4738

Dear Judge Failla:

We write in response to Defendants Coinbase, Inc. and Coinbase Global, Inc.'s ("Coinbase") letter (ECF No. 134) concerning the recent decision in *SEC v. Binance Holdings Limited*, 1:23-cv-01599-ABJ, ECF No. 248 (D.D.C. June 28, 2024) ("Decision"). Rather than supporting certification of an interlocutory appeal under 28 U.S.C. § 1292(b) as Coinbase contends, the Decision confirms the correctness of this Court's central rulings in its March 27, 2024 Opinion and Order (ECF No. 105) ("Order") and provides an additional compelling basis to deny Coinbase's motion to certify interlocutory appeal ("Motion").

The Decision unambiguously concluded that "[t]here is no requirement that an investment contract involve a contractual arrangement." Decision at 15. The Decision reasoned that "the notion that a contractual relationship is required has been consistently rejected by other district courts faced with crypto currency cases in recent years." *Id.* at 17 (citing *Telegram*, *Kik Interactive*, and *Terraform I*). The Decision is therefore identical to this Court's conclusion as to the key claim that Coinbase advanced in support of judgment on the pleadings and as to which it now seeks early appellate review. *See* Order at 45. Far from supporting certification, the Decision's ruling on the "contractual arrangement" issue gives even more reason to deny Coinbase's pending Motion, as it makes plain that there is no "substantial ground for difference of opinion" as to any controlling question of law identified by Coinbase. Section 1292(b).

Unable to use the Decision to help it meet the standard required for obtaining certification on the need for ongoing contractual obligations under *Howey*, Coinbase pivots (again) to an alternative argument:[1] that the Decision departed from the Order's approach to applying *Howey* to secondary market crypto transactions given its "inclin[ation]" to follow *Ripple*, thereby creating an "urgent need for appellate review." ECF No. 134. But whatever may be said of the Decision's citation to *Ripple*, the main takeaway from the ruling's reasoning is the primacy of *Howey*. In this regard, the Decision addressed secondary sales of a crypto asset (BNB) that is not at issue here on a trading platform that is not at issue here. Indeed, having found that the SEC had sufficiently alleged that crypto assets and related programs were offered and sold as investment contracts, the Decision

---

[1] As noted, Coinbase has been elusive about the alleged controlling question for which it was seeking interlocutory appeal certification. *See* Plaintiff SEC's Opposition Brief, at 8-9 (ECF No. 125) (summarizing Coinbase's different iterations). In its reply brief, however, Coinbase purported to clarify that its proposed question for certification is "Whether a digital asset without post-sale obligations running to the purchaser can give rise to an 'investment contract.'" Coinbase Reply at 3 (ECF No. 128).

permits all of the SEC's claims under the Exchange Act— the same ones at issue here— to go forward. Decision at 56.

Moreover, in concluding that the SEC had not sufficiently pled that certain secondary sales of BNB were investment contracts, the Decision made clear that this ruling was based on the particular facts pled in the complaint then before it. *See* Decision at 43 (finding "that the complaint does not include sufficient facts to support a plausible inference that any particular secondary sales satisfy the *Howey* test for an investment contract"). Contrary to Coinbase's contention here, the Decision made no general pronouncement as to whether "secondary market crypto transactions were investment contracts under *Howey*" (ECF No. 134); indeed, the Decision stated that the question of whether a secondary market transaction could constitute an investment contract under *Howey* depends on the facts and circumstances of the particular transactions at issue. *See* Decision at 38-39 ("It may be that the SEC can establish that sales after the ICO or certain groups of secondary sales meet the criteria of an investment contract."). And the Decision further observed that "there is no holding in the *Ripple Labs* opinions with respect to secondary sales." *Id.* at 37 n.19.

Equally important, the Decision made no findings at all about any of the 12 crypto assets at issue in this case (Decision at 57),[2] let alone any that deviated from this Court's conclusion that the SEC has adequately alleged transactions that were investment contracts under *Howey* on the Coinbase Platform and through Prime. Order at 47.

Finally, it bears noting that the *Binance* court joined this Court in correctly finding no merit to defenses based on either the major questions doctrine or fair notice. The Decision flatly rejected the argument that the SEC was engaged in a so-called "power grab," observing that the SEC's claims called for "an application of enforcement powers that the agency has exercised since at least 1946." Decision at 83-84. It also noted that the lawsuit against Binance "is an unremarkable exercise of the agency's enforcement authority." *Id.*

In sum, on all the questions that the Order and the Decision have in common, there is agreement. The Decision provides no basis for granting Coinbase's Motion— it provides an additional reason to deny it.

Respectfully submitted,

David Mendel
*Counsel for Plaintiff*

CC: All counsel of record (via ECF)

---

[2] Of the 12 named crypto assets at issue in this case, the SEC also named six of them in its complaint in *Binance* – SOL, ADA, MATIC, FIL, SAND, and AXS.