WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET
NEW YORK, N.Y. 10019

July 3, 2024

<u>Via ECF</u>

The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court, Southern District of New York

Re:   <u>SEC v. Coinbase, Inc. and Coinbase Global, Inc.</u>, 23 Civ. 4738

Defendants Coinbase, Inc. and Coinbase Global, Inc. (together, "Coinbase") respectfully submit this response to Plaintiff SEC's June 28, 2024 letter seeking to quash Coinbase's subpoena for the production of documents to Gary Gensler in his personal capacity. Ex. A (subpoena).

***Background.*** Over the past 15 years, Mr. Gensler has been not only the most prominent regulator, but also the most vocal academic commentator, concerning the regulatory status of digital assets and exchanges. Because of his professional activities inside and outside of government since the launch of the digital asset industry, he has played a unique role in shaping how and whether the public understands the regulatory regime around digital assets.

From 2009 to 2014, Mr. Gensler served as Chair of the CFTC. He then became a professor at MIT and lectured extensively on blockchain technology, digital assets, and financial regulation. Ex. B.[1] In that role, he was at the center of discussions with market participants concerning the regulatory status of digital assets and testified before Congress multiple times on those issues.

In 2021, Mr. Gensler became Chair of the SEC, where he has continued his public commentary on the regulatory status of digital assets, sometimes in his official capacity as Chair and other times stating: "my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff." Ex. D at 1.

Against this backdrop, on June 14, 2024, Coinbase served Mr. Gensler with a subpoena for documents on core matters in this litigation. *See, e.g.*, Ex. A at Request Nos. 1 (named digital assets), 7 (communications with issuers of digital assets), 11 (registration of digital asset platforms), and 12 (DAO Report, Hinman Speech). The parties met and conferred three times concerning the subpoena; the SEC, while insisting it does not represent Mr. Gensler in his personal capacity, stated that he will produce no documents — citing relevance and burden for his noncompliance. The SEC will not, and cannot, even say whether Mr. Gensler has responsive communications in his personal capacity, as Mr. Gensler refuses to undertake any search to answer that threshold question.

***The Discovery Sought from Mr. Gensler is Relevant.*** "Rule 45 subpoenas are governed by the relevancy and proportionality guidelines of Rule 26." *Delta Air Lines, Inc.* v. *Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021). Relevancy "is an extremely broad concept" with a "low threshold." *Id.* (internal quotations and citations omitted). The communications Coinbase seeks to support its fair notice defense easily meet the relevancy bar.[2]

1.   Mr. Gensler's communications regarding the regulatory status of digital assets and exchanges during his tenure as Chair go to the heart of Coinbase's fair notice defense. To determine

---

[1]   *See, e.g.*, Ex. C (course syllabus covering "Blockchain and Use Case Economic[s]"; "Primary Markets [and] ICOs," and "Secondary Markets and Crypto-Exchanges").

[2]   The SEC asserts that "the Court has held the SEC had provided fair notice." Letter at 2. But Coinbase well pleaded the defense in its Answer, *see* ECF No. 22 at ¶¶ 6, 18, 76, 84, and p. 174, and the SEC chose not to move to strike it. Coinbase is entitled to discovery so the Court may consider that defense on a full record.

whether this action comports with fair notice, the Court must consider whether a "person of ordinary intelligence" in Coinbase's position had "a reasonable opportunity to know" what the securities laws and those charged with their enforcement prohibit with respect to secondary sales of digital assets — or, instead, whether "substantial uncertainty" deprived Coinbase of fair notice. *Upton* v. *SEC*, 75 F.3d 92, 98 (2d Cir. 1996); *see also Copeland* v. *Vance*, 893 F.3d 101, 110 (2d Cir. 2018).

What Mr. Gensler was saying in his private communications about the regulatory status of digital assets, and what market participants were saying to him about these matters, is probative of the objective understanding of the public and market participants regarding what conduct the securities laws prohibit. As the *Ripple* court confirmed, a document or communication need not be public to provide insight into the public's objective understanding as to what regulators require of them: agency personnel's communications with market participants and interagency correspondence are all "relevant to the fair notice defense." *SEC* v. *Ripple Labs, Inc.*, No. 20 Civ. 10832, ECF No. 112 at 51-52 (S.D.N.Y. Apr. 6, 2021), *clarified and aff'd*, ECF No. 163 at 6. The same is true of internal agency reports or position papers. *Ripple*, ECF No. 163 at 6. As the D.C. Circuit put it, "it is unlikely that regulations provided adequate notice when different divisions of the enforcing agency disagree about their meaning." *Gen. Elec. Co.* v. *EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995).

Accordingly, the subpoena properly requests communications concerning the regulatory status of digital assets and exchanges from Mr. Gensler. And his personal email is an appropriate source of discovery. Mr. Gensler has purported to share his views and communicate with market participants at times expressly in his personal capacity: "my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff." Ex. D at 1. The SEC — abandoning the position it took in *Ripple* — now contends all such communications are in Mr. Gensler's capacity as Chair. *See* SEC Letter at 1-2; *cf.* SEC Mot. to Quash Ltr., *SEC* v. *Ripple Labs, Inc.*, No. 20 Civ. 10832 (S.D.N.Y. June 24, 2021), ECF No. 255 at 3 (arguing similar statements showed that speech expressed "own views"). All the more reason, then, that Mr. Gensler's personal email should properly be subject to discovery.

The SEC does not, and cannot, argue that during his tenure as Chair Mr. Gensler never communicated about these matters with market participants by personal email. They offer no evidence or even a representation from Mr. Gensler to that effect.[3] Instead, they simply refuse to ask.

2. Mr. Gensler's communications prior to joining the SEC are equally relevant, both as context for his statements as Chair and as a reflection of the public's understanding of the regulatory status of digital assets during the period of time that the SEC chose to put at issue in this litigation.

First, the SEC has put in dispute the meaning of Mr. Gensler's May 2021 testimony to Congress, in his third week as Chair, that "there is not a market regulator around [] crypto exchanges." Ex. E at 11-12. "[O]nly Congress," he testified, could "bring greater investor protection to the crypto exchanges." *Id.* at 12. The SEC now contends that Mr. Gensler was referring only to trading in Bitcoin. *See* ECF Nos. 30 at 29, 69 at 4. But that statement was not made in a vacuum. It followed years of Mr. Gensler's earlier speeches, lectures, other testimony to Congress, and communications with market participants. Those public and private statements all provide critical context for and inform

---

[3] Citing 17 C.F.R. § 200.30-14(g), the SEC asserts that all documents and communications from Mr. Gensler's tenure as Chair "belong to the SEC." Letter at 2. But that provision applies only to "present or former *staff members*," *id.* (emphasis added), not the Chair or Commissioners, *see id.* § 200.10 (distinguishing between the five Commissioners and "staff"). In any event, the SEC's position that Mr. Gensler's documents should be the subject of discovery from the agency warrants no credit: in response to Coinbase's requests of the SEC, the SEC has refused to search *any* of Mr. Gensler's files.

Hon. Katherine Polk Failla
July 3, 2024
Page 3

market participants' understanding of Mr. Gensler's public proclamations as Chair — including the 2021 testimony to Congress at the center of Coinbase's fair notice defense. For example, before becoming Chair, then-Professor Gensler had stated that crypto exchanges were "not yet appropriately brought within public policy frameworks[,]" Ex. F, and he described the SEC's position on digital assets to be "a moving target . . . [and] a very unsettled area of public policy." Ex. G at 15. These statements, and others like it in his private correspondence, provide necessary context for his statements as Chair (and the credibility of the SEC's interpretation of them). Here again, the SEC does not, and cannot, argue Mr. Gensler never conducted such responsive communications by personal email; it refuses even to ask.

Second, even before becoming SEC Chair, Mr. Gensler — as a former CFTC Chair, prominent academic, and uniquely influential voice on the regulation of digital assets — both shaped and reflected the public's understanding, or lack thereof, of the regulatory landscape in light of, among other things, the SEC's pronouncements on the regulation of digital assets and the attributes of specific tokens at issue in this litigation. *See, e.g.*, Ex. G (MIT class transcripts) at 112-13, 150, 197-98, 532, 538-39, 561-62, 569-70. Mr. Gensler's pre-Chair communications, including what he said to market participants and what they communicated to him, are thus probative of the public's understanding (or lack thereof) of the regulatory status of digital assets and exchanges. And again, the SEC does not argue that Mr. Gensler never communicated about these relevant matters through his personal email.

None of the SEC's authority supports Mr. Gensler's blanket refusal even to search for, much less produce, documents in his personal possession. Its leading precedent, a district court case from another Circuit, involved an inapposite facial challenge to a statute as vague in all applications. *Frese* v. *MacDonald*, 512 F. Supp. 3d 273, 278 (D.N.H. 2021). Two other cases the SEC cites — *Kik* and *LBRY* — concerned motions to quash subpoenas for *depositions*, *see* Exs. H (*Kik* Position Ltrs.) at 1-4, I (*LBRY* Decision) at 2, and thus involved a different legal standard from that at issue here. Finally, the SEC's citation to a one-sentence minute order in *Terraform* offers no help: Judge Rakoff denied a motion to compel on the ground of *privilege*, not relevance.

***The SEC's Claim of Burden is Unfounded.*** The SEC's burden arguments likewise fail as, among other things, they have offered nothing to substantiate them. *Delta Air Lines*, 2021 WL 2117247, at *3 (granting motion to compel where recipient failed to specify "the nature or size" of the purported "undue burden"). The SEC refuses even to assess the purported burden of the subpoena, to engage with Mr. Gensler on its substance, or to work with Coinbase to address any purported burden.

Nor does the SEC offer a basis to speculate that enforcement of the subpoena will deter qualified candidates from joining the SEC. Mr. Gensler has had unique involvement in his personal capacity in matters relevant to this litigation — beginning long before he joined the SEC. It should hardly be surprising that he might be subject to discovery in an action brought by the SEC — especially where, as here, Mr. Gensler has been a key public voice on the regulatory status of the digital asset industry.

Mr. Gensler is not beyond the law and should be required to produce relevant documents. "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC* v. *Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Katherine Polk Failla
July 3, 2024
Page 4

Respectfully,

/s/ *William Savitt*

William Savitt

cc:     All counsel of record