UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

         *Plaintiff,*

   v.

COINBASE, INC. AND COINBASE GLOBAL, INC.,

         *Defendants*.

23 Civ. 4738 (KPF)

---

**MEMORANDUM OF LAW IN SUPPORT OF COINBASE'S
<u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

        WACHTELL, LIPTON, ROSEN & KATZ
        51 West 52nd Street
        New York, New York 10019
        (212) 403-1000

        SULLIVAN & CROMWELL LLP
        125 Broad Street
        New York, New York 10004-2498
        (212) 558-4000

        *Attorneys for Defendants*

Dated: July 23, 2024

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .............................................................................................................................2

ARGUMENT ....................................................................................................................................4

    A.    The SEC refuses to search for, and produce or log, relevant information going to the core claims and defenses in this litigation. ...........................................5

        (i)    Documents concerning the named tokens and services and the application of the securities laws to digital assets (RFPs 2, 4-6, 8, 13, 15-17, 20-21) ...................................................................................................5

        (ii)    Documents concerning Coinbase's public offering (RFP 27) .....................9

        (iii)    Documents concerning Chair Gensler's speeches on the regulatory status of digital assets and digital asset exchanges (RFP 28 and Subpoena Request 23) ................................................................................................10

    B.    Neither the SEC nor Chair Gensler has demonstrated undue burden. ....................11

CONCLUSION................................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Am. Fed'n of Musicians* v. *Sony Music Entm't, Inc.*,
2021 WL 2117247 (S.D.N.Y. May 24, 2021) ................................................................................. 5

*Delta Air Lines, Inc.* v. *Lightstone Grp., LLC*,
2021 WL 2117247 (S.D.N.Y. May 24, 2021) ............................................................................ 4, 11

*Execu/Search Grp., Inc.* v. *Nichols*,
2008 WL 5050177 (S.D.N.Y. Nov. 25, 2008) ............................................................................ 5-6

*FCX Solar, LLC* v. *FTC Solar, Inc.*,
2022 WL 3584946 (S.D.N.Y. Aug. 22, 2022) ................................................................................ 5

*Gen. Elec. Co.* v. *EPA*,
53 F.3d 1324 (D.C. Cir. 1995) .................................................................................................. 8, 10

*Grayned* v. *City of Rockford*,
408 U.S. 104 (1972) .................................................................................................................... 7-8

*Hickman* v. *Taylor*,
329 U.S. 495 (1947) ....................................................................................................................... 6

*In re Terrorist Attacks on Sept. 11, 2001*,
2018 WL 4237470 (S.D.N.Y. Aug. 29, 2018) ........................................................................ 11-12

*John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) ................................................................................................. 12

*Kingdom of Morocco* v. *United States*,
2019 WL 6724436 (S.D.N.Y. Dec. 11, 2019) ............................................................................. 12

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*,
2018 WL 11585535 (S.D.N.Y. Feb. 2, 2018) ............................................................................. 12

*SEC* v. *Collins & Aikman Corp.*,
256 F.R.D. 403 (S.D.N.Y. 2009) .......................................................................................... 5, 6, 12

*SEC* v. *Kovzan*,
2012 WL 4819011 (D. Kan. Oct. 10, 2012) .................................................................................. 8

*SEC* v. *Ripple Labs, Inc.*,
No. 20 Civ. 10832 (AT) (SN) (S.D.N.Y. Apr. 6, 2021) ................................................................ 8

*Upton* v. *SEC*,
75 F.3d 92 (2d Cir. 1996) .............................................................................................................. 8

**Statutes and Rules**

15 U.S.C. § 77h ............................................................................................................................. 10

17 C.F.R. § 230.461 ..................................................................................................................... 10

Fed. R. Civ. P. 26 ........................................................................................................................... 5

Fed. R. Civ. P. 45 ........................................................................................................................... 5

**PRELIMINARY STATEMENT**

In the years before the SEC chose to commence this action against Coinbase, the SEC's commissioners and non-Enforcement staff met with crypto market participants, including Coinbase and entities affiliated with the tokens named in the complaint, and issued public statements and guidance about the regulatory status of digital assets and platforms. Documents related to these communications bear directly on the SEC's claims and on Coinbase's fair notice defense.

The SEC will not search for these relevant documents. It refuses to search *any* documents outside of a self-selected group of Enforcement Division investigatory files. And it refuses a produce-or-log protocol for *any* custodian email searches. That extends to Chair Gensler's SEC emails, and even to asking Chair Gensler whether he used his personal email for communications about his public statements on these subjects that he said were made in his personal capacity.

The SEC justifies this conduct on the grounds of relevance, burden, and privilege. None holds water. As to relevance, the SEC's own productions in other litigations confirm that core, relevant documents exist at the SEC outside of Enforcement. *See infra* pp. 6-7 As to burden, the SEC concedes that it has not even looked for relevant documents outside of Enforcement, much less has it substantiated its burden claims. When Coinbase proposed that the SEC run a preliminary search and hit report — to assess the burden and allow Coinbase to attempt to address it — the SEC flatly refused. *See infra* pp. 11-12. And as to privilege, many of the documents at issue are communications with token issuers or market participants and therefore cannot be privileged; internal documents reflecting such communications may not be privileged either. *See infra* p.12. In any event, if the SEC has a valid claim of privilege as to relevant documents outside of Enforcement, it should log those documents in accordance with the Court's Rule 502(d) order so that Coinbase can test any such assertion.

The SEC should be ordered to run the preliminary search that Coinbase proposed, to be supplemented to address the categories in this motion, and to produce or log relevant documents.

## BACKGROUND

The SEC alleges that Coinbase has operated an unregistered securities exchange, broker, and clearing agency, because 12 of the tokens listed on its platform allegedly are offered and sold as securities (the "named tokens"), and that its staking services constitute unregistered securities offerings. ECF No. 1 (Complaint). Coinbase disputes these allegations and that the SEC has been given authority by Congress to regulate digital asset transactions and platforms or that Coinbase was provided with fair notice that its conduct violated any law. ECF No. 22 (Answer).

On April 23, 2024, Coinbase served the SEC with document requests concerning its claims and Coinbase's defenses. Ex. A. On May 23, the SEC served responses and objections. Ex. B.

The SEC objected to all but one of Coinbase's 34 requests as "oppressive." *Id.* It refused to produce or log any documents in response to 16 requests, including documents concerning Coinbase's public offering; the Hinman and 2019 Frameworks, *see* ECF No. 22 (Answer) at ¶¶ 48-49; and other public statements by SEC staff and commissioners, including Chair Gensler, about the regulatory status of digital assets and platforms — citing lack of relevance as the basis for noncompliance. *E.g.*, *id.* at RFPs 13-14, 27-28. Even as to requests which the SEC conceded seek relevant information, the SEC refused to look at *any* documents outside of its "Coinbase investigatory file" — that is, it refused to search for, much less produce, documents from other investigations, other SEC divisions, or any SEC Commissioner, claiming undue burden. *See, e.g.*, *id.* at RFPs 2-6, 8, 15-17, 20-21.

On June 13, 17, and 20, the parties met and conferred regarding the SEC's responses and objections. *See* Ex. C at 1. The SEC confirmed its refusal to produce any documents targeted at Coinbase's defenses, declaring them "effectively dead" in light of the Court's opinion on Coinbase's motion for judgment on the pleadings. *Id.* at 2; Ex. D at 4 ("[T]he Court has already rejected Coinbase's fair notice defense . . . meaning that discovery into th[at] failed defense[] is improper."). The SEC also confirmed that it would not produce any documents or

communications, whether internal or with third parties, outside of Enforcement investigatory files, asserting that its relevance "is nonexistent." *Id.* It agreed to produce non-privileged documents from three other crypto platform investigations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ but outside the Coinbase investigative file the SEC refused to log any documents withheld on a claim of privilege. *Id.* at 2, 3. When Coinbase asked the SEC to substantiate its claims of burden, the SEC could not. It acknowledged that it had not even looked. *See* Ex. C at 3.

Coinbase next asked the SEC to run a preliminary search on non-Enforcement files and provide a hit report so it could try to address the SEC's unsubstantiated burden claims. *Id.* at 5-6 & App'x. The proposed search included custodians from the Divisions of Enforcement, Corporation Finance ("Corp Fin"), and Trading and Markets; the Office of Strategic Hub for Innovation and Financial Technology ("FinHub");[1] and current and former SEC commissioners (for the period of time the SEC put at issue) — nearly all of whom were also either custodians, or in the same positions as custodians, in the *Ripple* action. Compare *id.* at App'x, with Ex. E at 10 (identifying 19 *Ripple* custodians later ordered). The preliminary search terms targeted documents relating to the named tokens, Coinbase's fair notice defense, and the application of the securities laws to digital assets. Ex. C, App'x.

The SEC refused to conduct this preliminary search and provide a hit report. Instead, it countered with a take-it-or-leave-it proposal: to resolve all outstanding disputes as to RFPs 2, 4-6, 8, 15-17, 20-21, and 26, the SEC would search two additional investigatory files and five non-Enforcement custodians. The proposed search custodians did not include any staff from Trading and Markets or any SEC Commissioner. Nor did it include any search terms for Coinbase's defenses. The SEC also again asserted that it would not log any documents withheld as privileged — contrary to the Rule 502(d) order entered by the Court, ECF No. 132. Ex. D at 2-3, 6, Att. A. If Coinbase did not agree, the SEC said the proposal

---

[1] "FinHub coordinates the agency's oversight and response regarding emerging technologies in financial, regulatory, and supervisory systems, including . . . crypto asset markets." SEC, *About FinHub*, https://tinyurl.com/44ue73zd.

would be withdrawn and the parties would be at an impasse on the foregoing RFPs. *Id.* at 6.

Given these limitations, Coinbase did not agree, leaving the parties at an impasse over the SEC's refusal to produce or log relevant documents outside of Enforcement investigatory files.

On June 14, as the parties were meeting and conferring regarding the SEC's responses and objections to Coinbase's document requests — and given that during his time as Chair, Mr. Gensler had made numerous relevant public statements assertedly in his personal capacity[2] — Coinbase served Chair Gensler personally with a subpoena for documents mirroring its requests to the SEC, Ex. F. The parties met and conferred three times; the SEC stated that Chair Gensler would produce no documents — citing relevance and burden. When pressed as to whether Chair Gensler even had relevant communications through personal email, let alone the scale of any burden, the SEC refused to say. And Chair Gensler refused to undertake any search to answer that threshold question. In an attempt to resolve this impasse, and in accord with well-established practice to avoid imposing undue burden or expense on the recipient of a subpoena, Coinbase offered to reimburse Chair Gensler for expenses incurred in (i) performing an initial search for relevant documents and (ii) responding to the subpoena. Invoking SEC ethics guidelines, the SEC declined that offer and moved to quash the subpoena.

Following a preliminary conference with the Court, Coinbase withdrew its requests concerning pre-Chair communications. It now moves to compel only documents and communications responsive to (i) Subpoena Request No. 23 and (ii) SEC Request Nos. 2, 4-6, 8, 13, 15-17, 20-21, and 27-28.

## ARGUMENT

Motions to compel compliance with Rule 45 subpoenas and Rule 34 document requests are subject to the same "relevancy and proportionality guidelines of Rule 26," *Delta Air Lines, Inc.* v. *Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. May 24, 2021): a party may seek discovery

---

[2] *See, e.g.*, Ex. G (Aug. 3, 2021 Aspen Security Forum Speech) ("my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff").

-4-

on any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). "The party seeking discovery has the burden to establish relevancy, but that burden is not heavy." *FCX Solar, LLC* v. *FTC Solar, Inc.*, 2022 WL 3584946, at *2 (S.D.N.Y. Aug. 22, 2022) (internal quotations omitted). Once "any possibility of relevance sufficient to warrant discovery" is shown, "the party resisting discovery bears the burden of demonstrating that . . . the requests are irrelevant, or are overly broad, burdensome, or oppressive." *Am. Fed'n of Musicians* v. *Sony Music Entm't, Inc.*, 2016 WL 2609307, at *3 (S.D.N.Y. Apr. 29, 2016).

The documents that Coinbase requests from the SEC and Chair Gensler, both external and internal communications, are relevant to the application of *Howey* and to Coinbase's fair notice defense. Neither the SEC nor Chair Gensler has made any effort to substantiate their claims of "burden." And their blanket claims of privilege are improper. The SEC should be ordered to run the preliminary search proposed by Coinbase, to be supplemented to address the categories in this motion, and to produce or log relevant documents in accordance with the Court's Rule 502(d) Order, ECF No. 132. "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC* v. *Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009).

**A.    The SEC refuses to search for, and produce or log, relevant information going to the core claims and defenses in this litigation.**

(i)   *Documents concerning the named tokens and services and the application of the securities laws to digital assets (RFPs 2, 4-6, 8, 13, 15-17, 20-21)*

Requests 2, 4-6, 8, 13, 15-17, and 20-21 seek documents and communications concerning the Coinbase platform; the named tokens and their respective "ecosystems"; the staking services that the SEC alleges constitute securities offerings; and the application of the securities laws to digital assets, Ex. A — core subjects of the SEC's claims. *See* ECF No. 105 (Order) at 47-60, 61-78. These materials are "facially relevant to the issues in this litigation." *Execu/Search Grp., Inc.* v. *Nichols*,

2008 WL 5050177, at *2 (S.D.N.Y. Nov. 25, 2008).

The SEC advances an untenable position. It concedes that the majority of the requests seek relevant information as they pertain to files *within* the Enforcement Division. *See, e.g.*, Ex. B (R&Os) at Req. Nos. 2, 4-5, 8, 15-17, 20-21.[3] But it nevertheless asserts that, "to the extent Coinbase's RFPs seek documents outside of the Investigative File, including documents outside the SEC Enforcement Division, the RFPs are not relevant." Ex. D at 3; *see also id.* (arguing that the relevance "of documents outside of the Enforcement Division" is "nonexistent"). Because the Investigative File contains "all the documents . . . *upon which the SEC may rest its claims against Coinbase*," the SEC contends, those "obtained or created by SEC divisions, offices, or employees other than those who conducted the Investigation" are not relevant and needn't be searched. *Id.* at 2 & n.1 (emphasis added). Contrary to that position, "[d]iscovery . . . is not a one-way proposition." *Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947).

(1)     The SEC's limitation is artificial and "unreasonable" — the *SEC* is the plaintiff, and there is no question that information relevant to defending against the SEC's claims exists outside of Enforcement. *Collins*, 256 F.R.D. at 414. During the relevant period, FinHub and Corp Fin staff actively solicited "meetings and other assistance relating to FinTech issues arising under the federal securities laws," including "digital assets" and "digital asset trading platforms." Ex. H (FinHub Meeting Request Form). Issuers — including entities affiliated with tokens named in the complaint — communicated with the SEC on these very issues, including as to the "[d]etermination of instrument[s] as a 'Security.'" *Id.* No ordinary civil plaintiff could claim immunity from discovery of such plainly relevant evidence. And as courts have made plain, the SEC is to be treated like any other civil plaintiff.

Documents produced from the 19 SEC custodians in the *Ripple* litigation confirm, for

---

[3] Only as to Requests 6 (communications with the CFTC and other agencies, including "factual Documents prepared for or by" the SEC) and 13 (information concerning the DAO Report, Hinman Speech, and 2019 Framework) does the SEC lodge a wholesale relevance objection. *Id.* The objections fail for the same reasons as do the SEC's arguments with respect to Requests 2, 4-5, 8, 15-17, 20-21: the requests are relevant to the affirmative claims and Coinbase's fair notice defense. *See infra* pp. 6-9.

example, that staff in FinHub, Corp Fin, and Trading and Markets held multiple meetings with the "Dash Core Group" regarding potential no-action relief. *See* Ex. I; *cf.* Compl. ¶¶ 283-91 (DASH pleadings). Following those meetings, "Staff requested" a "supplemental memorandum analyzing DASH within the [Hinman] rubric." Ex. I (DASH Memo) at 1. The factual information and analysis contained in that seven-page document go to the heart of the SEC's allegations in this litigation:

- the "DASH network . . . is decentralized and has been since inception," *id.* at 1;
- none of "the initial developers continu[e] to play a significant role in further development or maintenance of the [DASH] Network," *id.*;
- the network "did not conduct an ICO or any other form of token sale," *id.* at 3; and
- the "price of DASH is solely determined by buyers and sellers in the secondary market," *id.* at 5.

This document is clearly relevant to the case; it and others like it at the SEC should be produced.

The same divisions and personnel met with, and received presentation materials on these issues from, digital asset exchanges — including with Coinbase, over a dozen times. *See, e.g.*, Ex. J, App'x A (chart of discussions) (meetings with FinHub and Trading and Markets concerning legal analyses of "assets listed" and "new assets for listing"). Digital asset exchanges likewise met with commissioners, *see, e.g.*, *id.* App'x at 1-2, 4-6 (Comm'rs Pierce, Jackson, Crenshaw, Lee, and Lizárraga), including the Chair, *see id.* at 5 (Chair Gensler); Ex. K (Chair Gensler interview with N.Y. Magazine discussing meeting with FTX exchange and "slide deck" concerning regulation of secondary trading platforms). The SEC's refusal to search its emails for these materials cannot be reconciled with the parallel requests it has made of Coinbase. *See, e.g.*, Ex. L (SEC First RFPs) at Req. Nos. 34 & 35 (communications with, and documents received from, issuers). SEC communications with third parties, and internal correspondence reflecting such communications, are highly relevant to the SEC's affirmative claims.

(2) Documents outside of Enforcement also bear directly on Coinbase's fair notice defense. That defense concerns whether a "person of ordinary intelligence" in Coinbase's position had "a reasonable opportunity to know what is prohibited," *Grayned* v. *City of Rockford*, 408 U.S. 104,

108 (1972), or whether instead "substantial uncertainty" deprived it of constitutionally required notice, *Upton* v. *SEC*, 75 F.3d 92, 98 (2d Cir. 1996). Here, in contrast to its current enforcement posture, the SEC's historical public statements reflect a circumscribed view of its authority to regulate digital assets, including the recognition that digital assets themselves are not securities, that digital assets once sold as securities are not presumed to be securities when transacted at a later time (including when the token's underlying network is operational and decentralized), and that there is no regulatory framework covering crypto exchanges. Answer ¶¶ 46-50 (collecting statements).

SEC communications — both internal and external (with the CFTC, other agencies, and market participants) — about its public statements and the regulatory status of digital assets, including what the SEC meant to convey and its "aware[ness]" of what the public understood from the statements, *Upton*, 75 F.3d at 98, are probative of the market's understanding or lack thereof regarding what conduct the securities laws prohibit, and are thus "relevant to the fair notice defense." *SEC* v. *Ripple Labs, Inc.*, No. 20 Civ. 10832, ECF No. 112 at 51-52 (S.D.N.Y. Apr. 6, 2021) (ordering 19 custodians searched), *clarified and aff'd*, ECF No. 163 at 6; *accord SEC* v. *Kovzan*, 2012 WL 4819011, at *2, *5 (D. Kan. Oct. 10, 2012) (ordering SEC to "undertake a search of . . . internal SEC documents" concerning "constitutional fair notice defense"). For example, intra- or inter-agency communications — whether emails, memoranda, or presentations — addressing whether and to what extent transactions in the named tokens were viewed as securities transactions under the Hinman or 2019 Frameworks, or documents acknowledging market confusion on that issue, would clearly be relevant to fair notice.

Documents reflecting inter- or intra-agency disagreements concerning the scope of the SEC's authority to regulate digital assets are also relevant to fair notice. *See Gen. Elec. Co.* v. *EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) ("it is unlikely that regulations provided adequate notice when different divisions of the enforcing agency disagree about their meaning"). Coinbase is entitled to discovery

into any such disagreements.[4]

And the SEC's proposal for a limited search outside of non-Enforcement Division files, and with no log for documents withheld on a claim of privilege, was plainly insufficient. The take-it-or-leave-it, five-custodian offer included no staff from Trading and Markets, nor any SEC commissioner. The offer likewise did not include any terms addressing Coinbase's defenses, which the SEC steadfastly, across three meet and confers, declared to be "effectively dead" — a position it abandoned under the Court's pointed questioning at the July 11 hearing. *See* ECF No. 142 at 19:11-14. And the offer was coupled with the SEC's assertion that it would not log any documents withheld as privileged, impeding Coinbase's ability to test any such assertions and contrary to the Court's 502(d) Order.

Now the SEC has reverted to its pre-proposal position. The Court should reject the SEC's refusal to search outside of Enforcement investigatory files and order a reasonable production and log.

(ii) *Documents concerning Coinbase's public offering (RFP 27)*

In April 2021 — one month before Chair Gensler told Congress that the SEC lacked regulatory authority over crypto exchanges — Coinbase became a publicly traded company. That followed a six-month, in-depth SEC review of Coinbase's business by Corp Fin, including asking Coinbase for legal analyses as to why "crypto assets traded on [its] platform are not securities." Ex. M (Dec. 7, 2020 Cmt. Ltr.) at 2; *see also* Answer ¶¶ 63-67. At no point did the SEC conclude that Coinbase was an unregistered exchange, broker, or clearing agency; nor did it identify any tokens listed on Coinbase's platform — several of which are named tokens in this matter — that it believed were securities. After that review and considering "the public interest and the protection of investors," 17 C.F.R. § 230.461(b), the SEC declared Coinbase's registration statement effective.

---

[4] *Cf.* SEC Comm'r Hester M. Peirce, *Outdated: Remarks Before the Digital Assets at Duke Conference* (Jan. 20, 2023) ("if we seriously grappled with the legal analysis and our statutory authority . . . we would have to admit that we likely need more . . . statutory authority to regulate certain crypto tokens and to require crypto trading platforms to register with us").

The SEC contends that RFP 27, requesting documents concerning Coinbase's public listing, seeks "only documents that are not relevant" to the claims and defenses at issue. Ex. B at Req. No. 27. That is wrong. As set out above, facts compiled by the SEC about the digital assets on Coinbase's exchange are facially relevant to the SEC's claims. And documents reflecting the SEC's belief at the time of the public listing that Coinbase did not need to be registered, that the tokens listed on its platform were not securities, or that there was disagreement or market uncertainty on those issues, would also bear on whether Coinbase had fair notice that its conduct violated the securities laws. *Cf. Gen. Elec.*, 53 F.3d at 1332. Materials responsive to Request 27 should be produced or logged.[5]

    (iii) *Documents concerning Chair Gensler's speeches on the regulatory status of digital assets and digital asset exchanges (RFP 28 and Subpoena Request 23)*

Throughout his tenure at the SEC, Chair Gensler has made numerous public statements — in speeches, interviews, and news articles — addressing the regulation of digital assets and platforms, topics directly relevant to the issues in this case. *See, e.g.*, Ex. G. Mr. Gensler has sometimes caveated: "my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff." *E.g.*, *id.* at 1. Coinbase thus served requests on the SEC and on Mr. Gensler, seeking documents and communications concerning these public statements. *See* Ex. A, RFP 28; Ex. F, RFP 23. For the reasons set out above, what Mr. Gensler intended to convey through these statements, what market participants understood from them, and whether and to what extent such statements were consistent with prior statements by the SEC on the same issues, are probative of Coinbase's fair notice defense.

For example, as Coinbase previously noted, in his third week as Chair, Mr. Gensler stated that "there is not a market regulator around [] crypto exchanges." Ex. N at 11-12. "[O]nly Congress," he

---

[5] The SEC's blinkered approach to discovery extends beyond documents. In response to requests for admissions concerning the *Corp Fin review* of Coinbase's S-1, the SEC has refused to answer based on information "in the possession of Commission divisions, offices, or employees . . . other than those who conducted the [Coinbase Enforcement] Investigation and litigation." Ex. P at 3; *see, e.g.*, *id.* Request Nos. 15-16, 22-39.

testified, could "bring greater investor protection to the crypto exchanges." *Id.* at 12. This statement bears directly on fair notice. But the SEC implausibly contends that Mr. Gensler was referring to then-nonexistent Bitcoin-only exchanges. *See* ECF Nos. 30 at 29, 69 at 4. Mr. Gensler's communications about this statement would shed light on, and thus be relevant to, the parties' positions.

The SEC, however, has refused to search for such communications, either from the SEC's or Mr. Gensler's files. As to Mr. Gensler, Coinbase asked the SEC to confirm whether Chair Gensler had any such relevant communications on his personal email in light of his public statements on these same matters that were assertedly made in his personal capacity, not on behalf of the SEC. The SEC, however, refuses even to ask the question, much less to ask Chair Gensler to undertake a preliminary search in response to it.[6] Both the SEC and Mr. Gensler should be ordered to produce relevant documents about Mr. Gensler's public statements; and as to Mr. Gensler, if there are no relevant documents and communications in his personal email, he should say so.

### B. Neither the SEC nor Chair Gensler has demonstrated undue burden.

In addition to its relevance objections, the SEC contends that any search outside of select Enforcement investigatory files would constitute an undue burden and that any responsive documents would be privileged. *See* Ex. D at 2-3 & n.1. Both arguments fail.

The SEC's burden arguments fail at the threshold, because the SEC has offered nothing to substantiate them. *Delta Air Lines*, 2021 WL 2117247, at *3 (granting motion to compel where recipient failed to specify "the nature or size" of the "undue burden"). When Coinbase pressed the SEC, the SEC acknowledged it had not even collected relevant materials, much less run a hit report or provided other data or information to quantify the alleged burden. That is improper. *See In re Terrorist Attacks on Sept.*

---

[6] The SEC has represented that Mr. Gensler only uses his SEC email for official SEC business, but the SEC will not say whether that practice of using only his SEC email extends to documents and communications concerning speeches that he assertedly made in his personal capacity reflecting his personal views.

*11, 2001*, 2018 WL 4237470, at *7 (S.D.N.Y. Aug. 29, 2018) (citation omitted) ("general and conclusory objections as to relevance, overbreadth, or burden are insufficient"). And when Coinbase provided the SEC with a targeted list of custodians against whom it could run a preliminary set of terms to create a hit report, the SEC refused — thus impeding any ability for Coinbase to address the SEC's burden concerns. *See Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2018 WL 11585535, at *1 (S.D.N.Y. Feb. 2, 2018) (discussing order "to provide a hit report for certain search terms" as the basis for identifying "overbreadth concerns"). The SEC likewise refused even to ask Chair Gensler whether he received relevant communications at his personal email account, much less to sample the account. It has therefore failed to satisfy its burden to show "specifically how, despite the broad and liberal construction afforded the federal discovery rules, . . . each question is overly broad, burdensome or oppressive." *John Wiley & Sons, Inc.* v. *Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014).

The SEC's blanket assertions of privilege are likewise improper. *See, e.g.*, *Kingdom of Morocco* v. *United States*, 2019 WL 6724436, at *7 (S.D.N.Y. Dec. 11, 2019) ("The proponent of the privilege may not assert blanket or categorical claims of privilege[.]" (internal quotations omitted)). Communications with token issuers and other third parties would not be privileged, nor would documents compiling factual information from such communications. As to internal SEC communications, during the parties' meet and confers the SEC substantially relied on invocations of the deliberative process privilege. But that is a *qualified* privilege, and "must be construed narrowly, as sustaining any privilege prevents a party from obtaining access to otherwise relevant information." *Collins*, 256 F.R.D. at 416-17. It provides no basis to avoid searches entirely, nor to escape this Court's 502(d) order requiring documents withheld based on a claim of privilege to be logged.

## CONCLUSION

For the foregoing reasons, Coinbase asks the Court to grant its motion to compel.

| | |
|---|---|
| Dated: July 23, 2024<br>New York, New York | Respectfully submitted,<br><br>WACHTELL, LIPTON, ROSEN & KATZ<br><br>/s/  *William Savitt*<br>William Savitt<br>Kevin S. Schwartz<br>Sarah K. Eddy<br>Adam M. Gogolak<br>David P.T. Webb<br>Emily R. Barreca<br>51 West 52nd Street<br>New York, New York 10019<br>(212) 403-1000<br>wdsavitt@wlrk.com<br><br>Steven R. Peikin<br>Kathleen S. McArthur<br>James M. McDonald<br>Julia A. Malkina<br>Olivia G. Chalos<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004-2498<br>(212) 558-4000<br><br>*Attorneys for Defendants* |