# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                        *Plaintiff*,<br><br>                v.<br><br>COINBASE, INC. AND COINBASE GLOBAL, INC.,<br><br>                                        *Defendants*. | 23 Civ. 4738 (KPF) |

### DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and the definitions and instructions set forth below, Defendants Coinbase, Inc. and Coinbase Global, Inc. (together, "Coinbase" or "Defendants"), by and through their undersigned counsel, hereby request that Plaintiff the Securities and Exchange Commission (the "SEC," "Commission," or "Plaintiff") produce documents responsive to the following requests, within 30 days from the date of service, at the offices of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, or at such other time and place as may be agreed among counsel or ordered by the Court.

### DEFINITIONS

The following definitions shall apply to the Defendants' First Request for Production of Documents Directed to Plaintiff the Securities and Exchange Commission (the "Requests"):

1.      "Action" means the above-captioned civil action.

2.      "BlackRock, Inc." means BlackRock, Inc., as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on its behalf.

3.      "Coinbase" means Coinbase, Inc., Coinbase Global, Inc., and any of their affiliates, subsidiaries, divisions, predecessors and successors, and any of their respective officers, directors, employees, agents, or attorneys.

4.      "Coinbase Platform" means Coinbase's digital asset spot exchange.

5.      "Coinbase Prime" means the service described in the Coinbase Prime Product Guide. *See Coinbase Prime Product Guide*, Coinbase (2022), https://tinyurl.com/mu89cran.

6.      "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more Persons or entities including but not limited to spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, electronically transmitted messages (*e.g.*, email, text messages, instant messaging), postings on Internet bulletin boards, or other forms of written, verbal or electronic intercourse, however transmitted, ESI (as defined below), and documents, as defined herein.

7.      "Complaint" means the Complaint filed in the Action on June 6, 2023, and/or any subsequent amendments.

8.      "Contact List" has the meaning assigned to this term in Section 3.2.9.4 of the SEC Enforcement Manual.

9.      "Digital Asset" means any digital asset, including any cryptocurrency, virtual currency, or other blockchain-based coin or token.

10.     "Digital Asset Platform" means any exchange or other platform on which Digital Assets are offered and sold.

11. "Document" or "documents" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below), of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, email messages, faxes, guidelines, instructions, inter-office communications, invoices, letters, logs, manuals, memoranda, minutes, notes, opinions, payments, plans, purchase confirmations, receipts, records, regulations, reports, sound recordings, spreadsheets, statements, studies, surveys, tickets, timesheets, trade records, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

12. "Document Index" has the meaning assigned to this term in Section 3.2.9.4 of the SEC Enforcement Manual.

13. "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes but is not limited to metadata, system data, deleted data, and fragmented data.

14. "Government Entity" means any federal, state, or foreign agency or authority, or any current or former officer, employee, or agent thereof. For the avoidance of doubt, Government Entity includes, but is not limited to, the U.S. Commodity Futures Trading Commission ("CFTC"), the U.S. Department of Justice, the U.S. Department of the Treasury, the Financial Crimes

Enforcement Network ("FinCEN"), the U.S. Internal Revenue Service, and the New York Department of Financial Services ("DFS").

15.    "IEX Group, Inc." or "Investors' Exchange LLC" means IEX Group, Inc. or Investors' Exchange LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

16.    "Investigation" means the investigation(s) of individuals and entities that resulted in or contributed to the filing of the Complaint, including but not limited to the SEC investigation captioned *In the Matter of Coinbase, Inc.* (HO-14315).

17.    "Named Coinbase Services" means Coinbase Prime and Coinbase's Staking Services.

18.    "Named Digital Assets" means SOL, ADA, MATIC, FIL, SAND, AXS, CHZ, FLOW, ICP, NEAR, VGX, and DASH.

19.    "Oral Argument" means the parties' January 17, 2024 oral argument before the Honorable Katherine Polk Failla on Coinbase's Motion for Judgment on the Pleadings.

20.    "Person" means any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization, or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

21.     "Plaintiff," "SEC," "Commission," "you," or "your" means the U.S. Securities and Exchange Commission, including any Divisions, Commissioners, Commission Staff, employees, subsidiaries, or individuals or entities acting on its behalf.

22.     "Prometheum, Inc." means Prometheum, Inc., Prometheum Ember ATS Inc., or Prometheum Capital LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

23.     "Securitize, Inc.," "Securitize LLC," or "Securitize Markets, LLC" means Securitize, Inc., Securitize LLC, or Securitize Markets, LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

24.     "Staking as a Service" means services offered to individuals to facilitate the staking of their digital assets to a blockchain with a proof-of-stake consensus mechanism.

25.     "Staking Services" means the services offered to individual Coinbase users through the "Coinbase Earn" program.

26.     "Valkyrie Investments Inc.," "Valkyrie Digital Assets LLC," or "Valkyrie Funds LLC" means Valkyrie Investments Inc., Valkyrie Digital Assets LLC, or Valkyrie Funds LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

27.     The terms "concerning," "regarding," "with regard to," "relating to," and "referring to" shall be read and applied as interchangeable and shall be construed in the broadest sense permitted, including by Local Civil Rule 26.3, to mean discussing, supporting, describing, concerning, regarding, with regard to, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in connection or in conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

28.     The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular:  (i) the use of the singular shall be deemed to include the plural and vice versa, and the use of one gender shall include the other; (ii) the  terms  "and" as well  as "or" shall  be  construed  disjunctively  or conjunctively as necessary to bring within the scope of a Request all documents that might otherwise be construed as outside its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "any and all," "each and every," and "anyone and everyone"; and (v) "include," "includes," and "including" shall  mean  "including  but  not  limited to."

## **INSTRUCTIONS**

The following instructions shall apply to the Requests contained herein.  The Requests call for the production of all responsive documents that are in your possession, custody, or control, wherever located, regardless of whether they are possessed directly by you or any of your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on your behalf.

1.     Unless otherwise specified, the time period for these Requests is January 1, 2017 through June 6, 2023.

2.      A Request for a document shall be deemed to include a request for any non-identical copies or drafts of the document, as well as all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document, in addition to the document itself.  Any document not produced in electronic format is to be produced in its original file folder, with all labels or similar markings intact and included, and with the name of the Person from whose file it was produced.

3.      If it is not possible to produce any document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the documents or the objection should be stated specifically as to all grounds.

4.      If any portion of any document or communication is responsive to any Request, the entire document must be produced.

5.      You must respond to each Request separately and fully, unless it is objected to, in which event the reasons for the objection should be specifically and separately stated.  If you object to part of a Request, you must produce all documents and communications responsive to the part of the Request to which you did not object.

6.      If you claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested documents, you shall furnish a privilege log identifying each document or communication for which the privilege or protection is claimed in compliance with Federal Rule of Civil Procedure 26(b)(5), and/or such other parameters as may be agreed between the parties.

7.      Requests are not intended to limit or modify other Requests and should not be interpreted as limiting or modifying other Requests.

8.      If you contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the documents and communications that are not subject to this contention.

9.      If there are no documents or communications responsive to any particular Request or subpart thereof, you shall state so in writing.

10.     If any document or communication responsive to any Request has been destroyed or lost, you shall notify Defendants of that fact and shall thereafter meet and confer with Defendants regarding the information to be provided with respect to such documents and communications.

11.     Any responsive documents or communications shall be produced in accordance with any confidentiality or protective order and any order concerning forms and format for document productions entered by the Court in this Action.

12.     These Requests are continuing and require further and supplemental production by you whenever you locate, acquire, or create additional responsive documents or communications between the time of the initial production hereunder and the time of the trial in this Action.

13.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are instructed to promptly amend your responses to the Requests if you obtain information on the basis of which: (i) you know that the response was incorrect when made; or (ii) you know that the response, though correct when made, is no longer true, and failure to amend the response would be, in substance, a knowing concealment.

14.     Defendants serve these Requests without prejudice to their right to serve additional requests for the production of documents.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

### **REQUEST NO. 1.**

Your complete investigative file in connection with the Investigation, including but not limited to the following:

a. All subpoenas, voluntary document requests, and other requests to provide documents, testimony, or an interview, including Documents concerning the terms of any testimony or interview (including proffer agreements) of any Person or entity from whom you gathered information in connection with the Investigation;

b. All Documents received in response to any such requests, or otherwise obtained by you from third parties or third-party sources;

c. All transcripts, transcript exhibits, recorded testimony, verbatim notes, declarations, affidavits, witness interview notes, and memos and witness statements;

d. All Documents concerning any internal or external Communications concerning the Investigation. As examples, but without limitation, this category includes all correspondence (including email), cover letters, subpoenas, witness statements, declarations, affidavits, memoranda, summaries, or notes, and any drafts and versions of the foregoing, sent to, or received from, any witness, potential witness, entities, or their counsel. For the avoidance of doubt, this Request includes the formal order memorandum, the action memorandum, and emails and other communications between the staff of the Enforcement Division and SEC Commissioners or other SEC Divisions and their respective staff;

e. All Documents memorializing, evidencing, or concerning any Communications

you had with any Government Entity and/or any other third party relating to the Investigation, including but not limited to any written submissions or presentations made by third parties;

    f.  All Documents or Communications concerning a cooperation agreement between you and any Person or entity from whom you gathered information in connection with the Investigation; and

    g.  Your Contact List and Document Index for the Investigation, as contemplated in Section 3.2.9.4 of the SEC Enforcement Manual.

**REQUEST NO. 2.**

All Documents and Communications concerning the Coinbase Platform, the Named Digital Assets, the Named Coinbase Services, or the subject matter of the Investigation or the Action, including all Communications with any Person or entity not party to this Action concerning the foregoing and any formal, informal, or voluntary requests by you for documents or information from any Person concerning the Coinbase Platform, the Named Digital Assets, the Named Coinbase Services, all Documents or Communications you received in response to such formal, informal, or voluntary requests, and all analyses (including but not limited to any regression and correlation, or event study analysis) whether done by you or on your behalf relating to the Coinbase Platform, any of the Named Digital Assets or Named Coinbase Services, the market performance of any of the Named Digital Assets relative to other Digital Assets or to public statements by Coinbase and/or the alleged issuers or promoters of such Named Digital Assets, and the size and value of sales of any of the Named Digital Assets over time.

**REQUEST NO. 3.**

Documents and/or Communications sufficient to establish when the SEC first learned of the Coinbase Platform, the Named Digital Assets, and the Named Coinbase Services, and when

the SEC first learned that each of the Named Digital Assets had been listed or was planned to be listed on the Coinbase Platform, without limitation as to the applicable time period.

**REQUEST NO. 4.**

All Communications with, and Documents concerning Communications with, third parties (including any Government Entity) concerning the application of federal laws, regulations, or rules (including, but not limited to, the Securities Act of 1933 and the Securities Exchange Act of 1934) to the Coinbase Platform, the Named Digital Assets, or the Named Coinbase Services.

**REQUEST NO. 5.**

All Communications with, and Documents concerning Communications with, third parties (including any Government Entity) concerning any investigation by a Government Entity concerning Coinbase, the Coinbase Platform, any of the Named Digital Assets, or any of the Named Coinbase Services.

**REQUEST NO. 6.**

All Communications with, and Documents concerning Communications with, any Government Entity, including the CFTC, or with the Financial Industry Regulatory Authority (FINRA), relating to the allegations in the Complaint, the Investigation, Staking as a Service, Digital Assets, or Digital Asset Platforms, including but not limited to:

    a.    Any factual Documents prepared for or by the Commission, any Commissioner, and/or any Commission Staff or otherwise in the Commission Staff's custody or control, relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity, including the scope of regulatory and/or enforcement authorities as between the SEC and another Government Entity or potential or proposed legislation relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity; and

b. Any external Communications by the Commission, any Commissioner, and/or any Commission Staff, whether formal or informal, relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity, including the scope of regulatory and/or enforcement authorities as between the SEC and another Government Entity or potential or proposed legislation relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity.

**REQUEST NO. 7.**

All Communications with, and Documents concerning Communications with, journalists or other employees or affiliates of news or media organizations concerning Coinbase, this Action, the Investigation, the Coinbase Platform, Digital Asset Platforms, any of the Named Digital Assets, or any of the Named Coinbase Services.

**REQUEST NO. 8.**

All Communications with, and Documents concerning Communications with, any alleged developers of, alleged issuers of, or Persons otherwise affiliated with any of the Named Digital Assets or their associated blockchain networks, including any Documents or information provided to you by any alleged developers of, alleged issuers of, or Persons otherwise affiliated with any of the Named Digital Assets, their affiliated blockchain networks, or their counsel.

**REQUEST NO. 9.**

All Documents and Communications concerning any discussions, instructions, advice, inquiries, or other Communications between the SEC and any Person concerning that Person's actual, planned, or potential business or other relationship with Coinbase.

**REQUEST NO. 10.**

Without limitation as to time period, all Communications with, and Documents

concerning Communications with: Prometheum, Inc., Martin Kaplan, Aaron Kaplan, or Benjamin Kaplan; Securitize, Inc.; Securitize LLC; or Securitize Markets, LLC.

**REQUEST NO. 11.**

All Communications with, and Documents concerning Communications with, IEX Group, Inc. or Investors' Exchange LLC concerning Coinbase, Digital Assets, or Digital Asset Platforms.

**REQUEST NO. 12.**

Without limitation as to time period, all Communications with, and Documents concerning Communications with, any Person concerning: (i) any actual, planned, or potential registration by that Person as an exchange, broker, dealer, clearing agency, alternative trading system, or custodian that would or could facilitate the offer, sale, or custody of Digital Assets or any product or service relating to Digital Assets, including but not limited to the requirements and process for or viability of such registration; or (ii) the registration with the SEC of any exchange-traded product that holds or references Digital Assets. For the purposes of this Request, "Person" includes but is not limited to BlackRock, Inc., Valkyrie Investments Inc., Valkyrie Digital Assets LLC, and Valkyrie Funds LLC.

**REQUEST NO. 13.**

All Documents and Communications concerning (i) the June 14, 2018 speech by former SEC Director of the Division of Corporation Finance William Hinman titled "Digital Asset Transactions: When Howey Met Gary (Plastic)" ("Hinman Speech"), (ii) FinHub's April 2019 "Framework for 'Investment Contract' Analysis of Digital Assets," and (iii) *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Exchange Act Release No. 81207 (July 25, 2017), including but not limited to all Communications with any blockchain network or representative thereof and all Documents and Communications, including internal Communications, analyses, and other materials, that were prepared, reviewed, or relied upon by

any current or former SEC Commissioner, Division Director, or Staff member in reaching the conclusions and observations reflected in these statements, including drafts of the statements and analyses prepared or commented upon by SEC Staff.

**REQUEST NO. 14.**

All Documents and Communications concerning any public statements by the Commission or any SEC Division, Commissioner, or Staff member concerning the Named Digital Assets or Digital Asset Platforms, including but not limited to any internal or external Communications concerning such public statements and any analyses or other materials that were prepared or relied upon in reaching the conclusions and observations reflected in such public statements, including all Documents and Communications reflecting the Persons involved in such Communications or analyses.

**REQUEST NO. 15.**

All Documents and Communications concerning whether Digital Assets or transactions in Digital Assets are "investment contract[s]" within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934, including Documents and Communications concerning the application of *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946), to Digital Assets or transactions in Digital Assets.

**REQUEST NO. 16.**

All Documents and Communications concerning (i) the role of a Digital Asset's ecosystem in the application of the federal securities laws to that asset, including but not limited to determining whether transactions in an asset constitute transactions in investment contracts or other securities; or (ii) the ecosystems of the Named Digital Assets, including but not limited to the components of such ecosystems, the identities of the alleged developers, issuers, and

promoters affiliated with such ecosystems, and any decentralized applications or business platforms related to such ecosystems.

**REQUEST NO. 17.**

All Documents and Communications relating to your assertion during Oral Argument that when someone "purchases tokens like [the Named Digital Assets], like these 13 examples . . . they are investing into the network behind it"—that is, "the ecosystem." *See* Jan. 17, 2024 Hr'g Tr. at 21:20-22:5; *see also id.* at 57:17-21.

**REQUEST NO. 18.**

All Documents and Communications relating to (i) Bitcoin's ecosystem; or (ii) your assertion during Oral Argument that "there's no ecosystem behind" Bitcoin. *See* Jan. 17, 2024 Hr'g Tr. at 30:7-15.

**REQUEST NO. 19.**

All Documents and Communications concerning the size, value, growth, or importance of the Digital Asset industry or Digital Asset Platforms.

**REQUEST NO. 20.**

All Documents and Communications relating to all risks of loss that you contend are relevant to whether Coinbase's Staking Services involves the offer and sale of investment contracts.

**REQUEST NO. 21.**

All Documents and Communications relating to all managerial efforts that you contend Coinbase undertakes in providing the Staking Services.

**REQUEST NO. 22.**

All Documents and Communications concerning potential or proposed legislation relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity with respect to Digital Assets or Digital Asset Platforms.

**REQUEST NO. 23.**

All Documents and Communications concerning any meeting or call involving one or more Commissioner concerning Coinbase, the Coinbase Platform, or any of the Named Digital Assets or Named Coinbase Services, including a list of the attendees of any such meeting or call.

**REQUEST NO. 24.**

All Documents and Communications from the SEC to Coinbase concerning (i) Coinbase listing any Digital Assets or the sale of any of the Named Coinbase Services; or (ii) Coinbase's operations.

**REQUEST NO. 25.**

All Documents and Communications concerning any policy, guidance, clearance, or other permission or restriction given to current or former SEC Commissioners or employees concerning the purchase, use, ownership, or trading of Digital Assets or use of Digital Asset Platforms, including the purchase, use, ownership, or trading of any of the Named Digital Assets or Named Coinbase Services by such Person or their family members, including but not limited to general SEC policies and Communications with any Person.

**REQUEST NO. 26.**

To the extent such Documents and Communications concern any Communications, analyses, or other materials regarding Coinbase, any of the Named Digital Assets, or any of the Named Coinbase Services, your investigative files in connection with any investigations by the Commission or Commission Staff relating to the following litigation matters and all Documents and Communications produced to or by the Commission in discovery in the following litigation matters:

      a.  *SEC* v. *Kik Interactive Inc.*, Case No. 19-cv-5244 (S.D.N.Y.);

      b.  *SEC* v. *Telegram Grp. Inc. and TON Issuer Inc.*, Case No. 19-cv-9439 (S.D.N.Y.);

      c.  *SEC* v. *Ripple Labs, Inc. et al.*, Case No. 20-cv-10832 (S.D.N.Y.);

      d.  *SEC* v. *LBRY, Inc.*, Case No. 21-cv-260 (D.N.H.);

      e.  *SEC* v. *Wahi et al.*, Case No. 2:22-cv-1009 (W.D. Wash.);

      f.  *SEC* v. *Binance Holdings Ltd. et al.*, Case No. 23-cv-1599 (D.D.C.);

      g.  *SEC* v. *Bittrex, Inc. et al.*, Case No. 23-cv-580 (W.D. Wash.);

      h.  *SEC* v. *Genesis Global Capital, LLC and Gemini Tr. Co., LLC*, Case No. 23-cv-287 (S.D.N.Y.);

      i.  *SEC* v. *Terraform Labs PTE Ltd. and Kwon*, Case No. 23-cv-1346 (S.D.N.Y.);

      j.  *SEC* v. *Payward, Inc. and Payward Ventures, Inc.*, Case No. 23-cv-6003 (N.D. Cal.); and

      k.  *SEC* v. *Payward Ventures, Inc. (D/B/A Kraken) and Payward Trading, Ltd. (D/B/A Kraken)*, Case No. 23-cv-588 (N.D. Cal.).

**REQUEST NO. 27.**

All Documents and Communications concerning Coinbase's direct public offering or registration statement on Form S-1 (including any drafts of such registration statement), including but not limited to Documents and Communications concerning the application or potential application of the federal securities laws to Coinbase's business or operations.

**REQUEST NO. 28.**

All Documents and Communications concerning SEC Chair Gary Gensler's public remarks about Digital Assets, Digital Asset Platforms, and Staking as a Service, without limitation as to the applicable time period, including but not limited to:

a. Chair Gensler's May 6, 2021 testimony before the United States House Committee on Financial Services;

b. Chair Gensler's May 7, 2021 appearance on CNBC;

c. Chair Gensler's May 26, 2021 testimony before the United States House Subcommittee on Financial Services and General Government;

d. Chair Gensler's August 3, 2021 remarks before the Aspen Security Forum;

e. Chair Gensler's September 21, 2021 interview with the *Washington Post*;

f. Chair Gensler's October 5, 2021 testimony before the United States House Committee on Financial Services;

g. Chair Gensler's August 19, 2022 opinion piece published by the *Wall Street Journal*, titled "The SEC Treats Crypto Like the Rest of the Capital Markets";

h. Chair Gensler's December 7, 2022 interview with Yahoo! Finance;

i. Chair Gensler's interview with Ankush Khardori, as reported in *Intelligencer's* February 23, 2023 article, "Can Gary Gensler Survive Crypto Winter? D.C.'s Top Financial Cop on Bankman-Fried Blowback";

j. Chair Gensler's interview with CNBC's *Squawk Box*, as reported in CNBC's February 10, 2023 article, "SEC's Gary Gensler on Kraken Staking Settlement: Other Crypto Platforms Should take Note of This";

k. Chair Gensler's March 29, 2023 testimony before the United States House Appropriations Subcommittee on Financial Services and General Government;

l.   Chair Gensler's statements regarding Digital Assets during "Office Hours with Gary Gensler" including but not limited to the episodes from August 16, 2021, July 28, 2022, August 4, 2022, October 3, 2022, February 9, 2023, and April 27, 2023;

m.   Chair Gensler's April 18, 2023 testimony before the United States House Committee on Financial Services;

n.   Chair Gensler's interview with CNBC's *Squawk Box*, as reported in CNBC's June 6, 2023 article, "SEC Chair Gensler doubts the need for more digital currency";

o.   Chair Gensler's interview with the *Wall Street Journal*, as reported in the June 8, 2023 article, "SEC's Gary Gensler Had Crypto in His Sights for Years. Now He's Suing Binance and Coinbase.";

p.   Chair Gensler's June 8, 2023 remarks before the Piper Sandler Global Exchange & Fintech Conference;

q.   Chair Gensler's interview with the *Wall Street Journal*, as broadcast in the June 14, 2023 podcast episode, "SEC Chair Gary Gensler on His Crypto Crackdown";

r.   Chair Gensler's September 12, 2023 testimony before the United States Senate Committee on Banking, Housing, and Urban Affairs;

s.   Chair Gensler's September 27, 2023 testimony before the United States House Committee on Financial Services; and

t.   Chair Gensler's statements concerning Digital Assets or Digital Asset Platforms made prior to his tenure as SEC Chair.

**REQUEST NO. 29.**

Without limitation as to time period, all Documents and Communications concerning the Petition for Rulemaking submitted by Coinbase on July 21, 2022, any comment letters submitted by Coinbase concerning its Petition for Rulemaking, or the Commission's Order denying Coinbase's Petition for Rulemaking issued on December 15, 2023, including any Communications with any third parties (including any Government Entity) concerning Coinbase's Petition for Rulemaking or the Commission's Order.

**REQUEST NO. 30.**

Without limitation as to time period, all Documents and Communications concerning the comment letters sent to Coinbase Global, Inc. by the Commission dated September 22, 2023 and

April 17, 2024 regarding Coinbase Global, Inc.'s Form 10-K for the year ended December 31, 2023, Form 10-K for the year ended December 31, 2022, Form 10-Q for the period ended June 30, 2023, Form 8-K filed January 10, 2023, and Form 8-K filed May 4, 2023 (File No. 001-40289), and any subsequent correspondence relating thereto.

**REQUEST NO. 31.**

All Documents and Communications that you intend to use or otherwise rely upon for any purpose in this Action, including: (i) all Documents and Communications identified, quoted, or referenced in the Complaint, indicating the paragraph(s) of the Complaint to which each Document and Communication relates; and (ii) all Documents and Communications that were created, reviewed, considered, or relied upon by you in preparing the Complaint, including, without limitation, any computations or analyses prepared by you underlying any assertions in the Complaint.

**REQUEST NO. 32.**

All Documents and Communications relating to any Person that you have retained or intend to retain as an expert witness to testify or provide an affidavit or report in this Action, including: (i) a curriculum vitae for the expert; (ii) any Documents or Communications relied on, referred to, or consulted by the expert in formulating any opinions the expert intends to offer in any affidavit, report, or testimony in this Action; (iii) any Documents or Communications created by the expert related to this Action; (iv) all engagement letters or agreements concerning the expert's retention or employment in connection with this Action; (v) all articles, books, book chapters, speeches, and other presentations created by the expert during the past ten years that relate in any way to the opinions or conclusions reached by the expert in connection with the Action; (vi) all testimony given by and reports submitted by the expert as an expert witness during the past five years; and

(vii) all Documents and Communications provided, prepared, received, reviewed, or made available to the expert or a representative of the expert.

## REQUEST NO. 33.

All Documents and Communications produced by any third parties in connection with this Action (through subpoena, agreement, or otherwise).

## REQUEST NO. 34.

(a) All Documents referenced in Plaintiff's initial disclosures, and (b) all Documents and Communications relating to any Person listed as an individual or an entity likely to have discoverable information in Plaintiff's initial disclosures and that also relate to any issue in this Action.

Dated:  April 23, 2024
New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

/s/ *William Savitt*
William Savitt
Kevin S. Schwartz
Sarah K. Eddy
Adam M. Gogolak
David P.T. Webb
Emily R. Barreca
51 West 52nd Street
New York, New York  10019
(212) 403-1000
WDSavitt@wlrk.com
KSSchwartz@wlrk.com
SKEddy@wlrk.com
AMGogolak@wlrk.com
DPTWebb@wlrk.com
ERBarreca@wlrk.com


Steven R. Peikin
Kathleen S. McArthur
James M. McDonald
Julia A. Malkina
Olivia G. Chalos
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, William Savitt, hereby certify that on April 23, 2024, I caused the foregoing to be served via electronic mail upon counsel of record in the above-captioned action.

/s/ *William Savitt*

William Savitt