# EXHIBIT F

WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000
FACSIMILE:  (212) 403-2000

MARTIN LIPTON
HERBERT M. WACHTELL
EDWARD D. HERLIHY
DANIEL A. NEFF
STEVEN A. ROSENBLUM
JOHN F. SAVARESE
SCOTT K. CHARLES
JODI J. SCHWARTZ
ADAM O. EMMERICH
RALPH M. LEVENE
RICHARD G. MASON
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
RACHELLE SILVERBERG
ANDREW J. NUSSBAUM
STEVEN A. COHEN
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER

MARK GORDON
JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
WILLIAM SAVITT
GREGORY E. OSTLING
DAVID B. ANDERS
ADAM J. SHAPIRO
NELSON O. FITTS
JOSHUA M. HOLMES
DAVID E. SHAPIRO
DAMIAN G. DIDDEN
IAN BOCZKO
MATTHEW M. GUEST
DAVID E. KAHAN
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)
LEONARD M. ROSEN (1965-2014)

OF COUNSEL

ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
KENNETH B. FORREST
BEN M. GERMANA
SELWYN B. GOLDBERG
PETER C. HEIN
JB KELLY
JOSEPH D. LARSON
LAWRENCE S. MAKOW
PHILIP MINDLIN
THEODORE N. MIRVIS
DAVID S. NEILL

ERIC S. ROBINSON
ERIC M. ROSOF
MICHAEL J. SEGAL
WON S. SHIN
DAVID M. SILK
ELLIOTT V. STEIN
LEO E. STRINE, JR.*
PAUL VIZCARRONDO, JR.
JEFFREY M. WINTNER
AMY R. WOLF
MARC WOLINSKY

* ADMITTED IN DELAWARE

COUNSEL

DAVID M. ADLERSTEIN
SUMITA AHUJA
FRANCO CASTELLI
ANDREW J.H. CHEUNG
PAMELA EHRENKRANZ
ALINE R. FLODR
KATHRYN GETTLES-ATWA
ADAM M. GOGOLAK
ANGELA K. HERRING

MICHAEL W. HOLT
MARK A. KOENIG
CARMEN X.W. LU
J. AUSTIN LYONS
ALICIA C. McCARTHY
JUSTIN R. ORR
NEIL M. SNYDER
JEFFREY A. WATIKER

ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN
RONALD C. CHEN
BRADLEY R. WILSON
GREGORY E. PESSIN
CARRIE M. REILLY
MARK F. VEBLEN
VICTOR GOLDFELD
RANDALL W. JACKSON
BRANDON C. PRICE
KEVIN S. SCHWARTZ
MICHAEL S. BENN
ALISON Z. PREISS
TIJANA J. DVORNIC
JENNA E. LEVINE
RYAN A. McLEOD
ANITHA REDDY
JOHN L. ROBINSON
JOHN R. SOBOLEWSKI

STEVEN WINTER
EMILY D. JOHNSON
JACOB A. KLING
RAAJ S. NARAYAN
VIKTOR SAPEZHNIKOV
MICHAEL J. SCHOBEL
ELINA TETELBAUM
ERICA E. AHO
LAUREN M. KOFKE
ZACHARY S. PODOLSKY
RACHEL B. REISBERG
MARK A. STAGLIANO
CYNTHIA FERNANDEZ LUMERMANN
CHRISTINA C. MA
NOAH B. YAVITZ
BENJAMIN S. ARFA
NATHANIEL D. CULLERTON
ERIC M. FEINSTEIN
ADAM L. GOODMAN
STEVEN R. GREEN
MENG LU

DIRECT DIAL: (212) 403-1329
DIRECT FAX: (212) 403-2329
E-MAIL: WDSavitt@wlrk.com

June 14, 2024

**By Personal Service**

Gary Gensler
███████████████████████
███████████████████████

Re:    *Securities and Exchange Commission* v. *Coinbase, Inc. et al.*
       Case No. 23 Civ. 4738 (KPF) (S.D.N.Y.)

To Mr. Gary Gensler:

Please find enclosed a subpoena calling for the production of certain documents and electronically stored information in connection with the above-referenced proceeding.

If you have any questions or wish to discuss this matter, please contact me or my colleagues Kevin Schwartz (KSchwartz@wlrk.com) and David Webb (DPTWebb@wlrk.com).

Sincerely,

William Savitt

Wᴀᴄʜᴛᴇʟʟ, Lɪᴘᴛᴏɴ, Rᴏꜱᴇɴ & Kᴀᴛᴢ

Mr. Gary Gensler
June 14, 2024
Page 2

Enclosures:

      U.S. District Court Subpoena to Produce Documents
      Schedule A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of New York

| | |
|---|---|
| Securities and Exchange Commission | ) |
| *Plaintiff* | ) |
| v. | ) |
| Coinbase, Inc. and Coinbase Global, Inc. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   23 Civ. 4738 (KPF)

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Mr. Gary Gensler (individual capacity), ███████████████████████████████████

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached.

| Place: At a location mutually agreed upon by the parties or at Torri's Legal Services, 18403 Woodfield Rd., Suite A, Gaithersburg, MD 20879 | Date and Time:   July 18, 2024 5:00 p.m. EST |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   June 14, 2024

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Coinbase, Inc. and Coinbase Global, Inc.                                          , who issues or requests this subpoena, are:

William Savitt, Wachtell Lipton Rosen & Katz, 51 W. 52nd St., New York, NY 10019, WDSavitt@wlrk.com (212) 403-1000

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 23 Civ. 4738 (KPF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

This subpoena requires the production of Documents described herein.  The Requests are to be responded to in accordance with the following Definitions and Instructions.

## DEFINITIONS

1.      "Action" means the above-captioned civil action.

2.      "Coinbase" means Coinbase, Inc., Coinbase Global, Inc., and any of their affiliates, subsidiaries, divisions, predecessors and successors, and any of their respective officers, directors, employees, agents, or attorneys.

3.      "Coinbase Platform" means Coinbase's digital asset spot exchange.

4.      "Coinbase Prime" means the service described in the Coinbase Prime Product Guide.  *See Coinbase Prime Product Guide*, Coinbase (2022), https://tinyurl.com/mu89cran.

5.      "Coinbase Staking Services" means the services offered to individual Coinbase users through the "Coinbase Earn" program.

6.      "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more Persons or entities including but not limited to spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, electronically transmitted messages (*e.g.*, email, text messages, instant messaging), postings on Internet bulletin boards, or other forms of written, verbal or electronic intercourse, however transmitted, ESI (as defined below), and documents, as defined herein.

7.      "Complaint" means the Complaint filed in the Action on June 6, 2023.

8.      "Defendants" means Coinbase, Inc. and Coinbase Global, Inc.

9.     "Digital Asset" means any digital asset, including any cryptocurrency, virtual currency, or other blockchain-based coin or token.

10.    "Digital Asset Platform" means any exchange or other platform on which Digital Assets are offered and sold.

11.    "Document" or "documents" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below), of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, email messages, faxes, guidelines, instructions, inter-office communications, invoices, letters, logs, manuals, memoranda, minutes, notes, opinions, payments, plans, purchase confirmations, receipts, records, regulations, reports, sound recordings, spreadsheets, statements, studies, surveys, tickets, timesheets, trade records, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

12.    "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes but is not limited to metadata, system data, deleted data, and fragmented data.

13.    "Government Entity" means any federal, state, or foreign agency or authority, or any current or former officer, employee, or agent thereof.  For the avoidance of doubt, Government Entity includes, but is not limited to, the U.S. Securities and Exchange Commission ("SEC"), U.S.

Commodity Futures Trading Commission ("CFTC"), the U.S. Department of Justice, the U.S. Department of the Treasury, the Financial Crimes Enforcement Network ("FinCEN"), the U.S. Internal Revenue Service, and the New York Department of Financial Services ("DFS").

14.    "IEX Group, Inc." or "Investors' Exchange LLC" means IEX Group, Inc. or Investors' Exchange LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

15.    "Investigation" means the investigation(s) of individuals and entities that resulted in or contributed to the filing of the Complaint, including, but not limited to, the SEC investigation captioned *In the Matter of Coinbase, Inc.* (HO-14315).

16.    "Named Digital Assets" means SOL, ADA, MATIC, FIL, SAND, AXS, CHZ, FLOW, ICP, NEAR, VGX, and DASH.

17.    "Named Coinbase Services" means Coinbase Prime and Coinbase's Staking Services.

18.    "Person" means any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or Governmental Entity, organization, or body of any type whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

19.    "Prometheum, Inc." means Prometheum, Inc., Prometheum Ember ATS Inc., Prometheum Capital LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers,

employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

20.    "Securitize, Inc.," "Securitize LLC," or "Securitize Markets, LLC" means Securitize, Inc., Securitize LLC, or Securitize Markets, LLC, as well as any parents, subsidiaries, affiliates, predecessors, successors, assigns, members, principals, partners, directors, boards, committees, subcommittees, officers, employees, agents, representatives, consultants, attorneys, or anyone else purporting to act on their behalf.

21.    "SEC" means the U.S. Securities and Exchange Commission, including any Divisions, Commissioners, Commission Staff, employees, subsidiaries, or individuals or entities acting on their behalf.

22.    "Staking" means the proof of stake consensus mechanism used by certain blockchain protocols to validate, verify, and secure transactions on a blockchain.

23.    "Staking as a Service" means services offered to individuals to facilitate the staking of their digital assets to a blockchain with a proof-of-stake consensus mechanism.

24.    The terms "concerning," "regarding," "with regard to," "relating to," and "referring to" shall be read and applied as interchangeable and shall be construed in the broadest sense permitted to mean discussing, supporting, describing, concerning, regarding, with regard to, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in connection or in conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

25.    The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular:  (i) the use of the singular shall be deemed to include the plural

and vice versa, and the use of one gender shall include the other; (ii) the terms "and" as well as "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of a Request all documents that might otherwise be construed as outside its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "any and all," "each and every," and "anyone and everyone"; and (v) "include," "includes," and "including" shall mean "including but not limited to."

## <u>INSTRUCTIONS</u>

Defendants request that you produce, wherever located, all documents described below that are in your possession, custody, or control, wherever located, regardless of whether they are possessed directly by you or any of your agents, representatives, employees, accountants, attorneys, or other persons acting or purporting to act on Your behalf.

1.      Unless otherwise specified, the time period for these Requests is January 1, 2017 through the present.

2.      Responsive Documents shall be produced in image format, with searchable text load files that are compatible with standard litigation support software, including Relativity, Concordance, and IPRO. The images shall be black and white, single-page, 300 DPI, Group IV .tiff images. Images for documents created with office or personal productivity software (e.g., wordprocessing documents, spreadsheets, presentations, databases, charts, and graphs) shall include tracked changes, comments, hidden rows, columns or worksheets, speakers notes, and any other similar content that can be made visible within the application. The load file shall include for each Document, the metadata fields listed below. For any Documents that have been globally de-duplicated, the custodian field shall reflect all custodians who had a copy of the Document during processing and before de-duplication. For each individual Document based on an electronic

file, the load file shall, unless such Document contains redactions, contain the path to the corresponding text that is extracted from the electronic file. Documents produced in redacted form shall contain text generated by optical character recognition ("OCR") of the redacted image(s). In addition to the foregoing, for all email, the load file shall also include, to the extent practicable, header information including: (1) the individual(s) to whom the communication was directed ("To"); (2) the author of the e-mail communication ("From"); (3) all individuals who were copied ("cc") and/or blind copied ("bcc") on the communication; (4) the subject line of the communication ("Re" or "Subject"); and (5) the date and time sent. For each Document, the load file shall also contain: (1) the beginning Bates number (referring to the first page of the Document); (2) the ending Bates number (referring to the last page of the Document); and in the case of Documents with attachments; (3) the beginning attachment range number(s); and (4) the ending attachment range number(s), where the "attachment range" records the relationship of Documents to their attachments. The attachment range should be recorded from the first page of the first Document in the attachment range, to the last page of the last Document in the attachment range. In addition, all spreadsheet, presentation, audio, and audiovisual Documents that do not require redaction shall be produced in native format with a single-page placeholder (Group IV .tiff image) indicating that the file is being produced in native format. The right to demand production of any other responsive Documents in their native format (including all metadata) is expressly reserved.

3.      A Request for a document shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, attachments, or other matters affixed to the document, in addition to the document itself.

4.      Each Request seeks production of each document in its entirety without abbreviations, redaction, or expurgation.

5.      Responsive documents and communications are to be designated clearly so as to reflect their owner and/or custodian. Any document not produced in electronic format is to be produced in its original file folder, with all labels or similar markings intact and included, and with the name of the Person from whose file it was produced.

6.      Electronically stored information, or "ESI," shall be produced in the form or forms in which it is ordinarily maintained or in a form that is reasonably usable. Specifically, where the documents responsive to a Request are stored electronically, any responsive e-mails, Word documents, and other unstructured data are to be produced in TIFF plus metadata plus extracted text format.  Any responsive Excel charts, PowerPoints, databases, and other structured data are to be produced in native format. The right to demand production of any other responsive documents in their native format (including all available metadata) is expressly reserved.

7.      Each Request herein requires that You produce files from all reasonably accessible sources of information in or on which You  store or maintain potentially responsive documents.

8.      Draft or non-identical copies are to be considered separate documents for purposes of these Requests. Any and all drafts and copies of each document that are responsive to any Request for documents shall be produced, as shall all copies of such documents that are not identical in any respect, including, but not limited to, copies containing handwritten notes, markings, stamps, or interlineations, whether or not the original of such document is within Your possession, custody, or control. The author(s) of all handwritten notes should be identified.

9.      You shall construe each Request independently and not with reference to any other Request for purposes of limitation.

10.     The use of the term "the" shall not be construed as limiting the scope of any Request.

11.     If it is not possible to produce any document called for by a Request, or if any part of a Request is objected to, the reasons for the failure to produce the documents or the objection should be stated specifically as to all grounds. If there are no documents or communications responsive to any particular Request or subpart thereof, You shall state so in writing.

12.     If You claim any form of privilege or protection or other reason as a ground for withholding from production requested documents, You shall furnish a privilege log in compliance with Federal Rule of Civil Procedure 45(e)(2) and any other parameters agreed between You and Defendants.

13.     If You contend that any Request is overly broad and/or unduly burdensome, identify all aspects of the Request that are overly broad or unduly burdensome and produce the documents and communications that are not subject to this contention.

14.     These Requests are continuing in nature, and any document obtained or located after the production pursuant hereto, which would have been produced had it been available or its existence known at the time, is to be supplied promptly by way of a supplemental production.

15.     Defendants serve these Requests without prejudice to their right to serve additional Requests for the production of documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1.

All Documents and Communications concerning Coinbase, the Coinbase Platform, the Named Digital Assets, the Named Coinbase Services, or the subject matter of the Investigation or the Action, including all Communications with any Person or entity not party to this Action concerning the foregoing.

### REQUEST NO. 2.

Documents and/or Communications sufficient to establish when you first learned of the Coinbase Platform, the Named Digital Assets, and the Named Coinbase Services, and when you first learned that each of the Named Digital Assets had been listed or was planned to be listed on the Coinbase Platform, without limitation as to the applicable time period.

### REQUEST NO. 3.

All Communications with, and Documents concerning Communications with, third parties (including any Government Entity) concerning the application of federal laws, regulations, or rules (including, but not limited to, the Securities Act of 1933 and the Securities Exchange Act of 1934) to Digital Assets, Digital Asset Platforms, or Staking as a Service.

### REQUEST NO. 4.

All Communications and Documents concerning any investigation by a Government Entity concerning Digital Assets, Digital Asset Platforms, or Staking as a Service.

### REQUEST NO. 5.

All Communications with, and Documents concerning Communications with, the Financial Industry Regulatory Authority (FINRA) or any Government Entity, including the SEC, or the CFTC, relating to the allegations in the Complaint, the Investigation, Digital Assets, Digital Asset Platforms, or Staking as a Service.

**REQUEST NO. 6.**

All Communications with, and Documents concerning Communications with, journalists or other employees or affiliates of news or media organizations concerning Coinbase, this Action, the Investigation, Digital Assets, Digital Asset Platforms, or Staking as a Service.

**REQUEST NO. 7.**

All Communications with, and Documents concerning Communications with, any alleged developers of, alleged issuers of, or Persons otherwise affiliated with any Digital Assets or their associated blockchain networks, including any Documents or information provided to you by any alleged developers of, alleged issuers of, or Persons otherwise affiliated with any Digital Assets, their affiliated blockchain networks, or their counsel.

**REQUEST NO. 8.**

All Documents and Communications concerning any discussions, instructions, advice, inquiries or other Communications between you and any Person concerning that Person's actual, planned, or potential business or other relationship with Coinbase or with a developer of or Person otherwise affiliated with Digital Assets, Digital Asset Platforms, or Staking as a Service.

**REQUEST NO. 9.**

All Communications with, and Documents concerning Communications with, Prometheum, Inc., Martin Kaplan, Aaron Kaplan, or Benjamin Kaplan; Securitize, Inc.; Securitize LLC; or Securitize Markets, LLC.

**REQUEST NO. 10.**

All Communications with, and Documents concerning Communications with, IEX Group, Inc. or Investors' Exchange LLC concerning Coinbase, Digital Assets, or Digital Asset Platforms.

**REQUEST NO. 11.**

All Communications with, and Documents concerning Communications with, any Person

concerning (i) any actual, planned, or potential registration by that Person as an exchange, broker, dealer, clearing agency, alternative trading system, or custodian that would or could facilitate the offer, sale, or custody of Digital Assets or any product or service relating to Digital Assets, including but not limited to the means or viability of such registration; or (ii) the registration with the SEC of any exchange-traded product that holds or references Digital Assets.

### REQUEST NO. 12.

All Documents and Communications concerning (i) *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Exchange Act Release No. 81207 (July 25, 2017), (ii) the June 14, 2018 speech by former SEC Director of the Division of Corporation Finance William Hinman titled "Digital Asset Transactions: When Howey Met Gary (Plastic)" ("Hinman Speech"), or (iii) FinHub's April 2019 "Framework for 'Investment Contract' Analysis of Digital Assets."

### REQUEST NO. 13.

All Documents and Communications concerning any public statements by FINRA or any Government Agency, including but not limited to the SEC and CFTC, concerning Digital Assets, Digital Asset Platforms, Staking, or Staking as a Service.

### REQUEST NO. 14.

All Documents and Communications concerning whether Digital Assets or transactions in Digital Assets are "investment contract[s]" within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934, including Documents and Communications concerning the application of *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946), to Digital Assets or transactions in Digital Assets.

### REQUEST NO. 15.

All Documents and Communications concerning (i) the role of a Digital Asset's

ecosystem in the application of the federal securities laws, including but not limited to determining whether transactions in an asset constitute transactions in investment contracts or other securities or (ii) the ecosystems of the Named Digital Assets, including, but not limited to, the components of such ecosystems, the identities of the alleged developers, issuers, and promoters affiliated with such ecosystems.

**REQUEST NO. 16.**

All Documents and Communications relating to the SEC's assertion during Oral Argument that when someone "purchases tokens like [the Named Digital Assets], like these 13 examples . . . they are investing into the network behind it"—that is, "the ecosystem." *See* Jan. 17, 2024 Hr'g Tr. at 21:20-22:5; *see also id.* at 57:17-21.

**REQUEST NO. 17.**

All Documents and Communications relating to Bitcoin's ecosystem or lack thereof.

**REQUEST NO. 18.**

All Documents and Communications concerning the size, value, growth, or importance of the Digital Asset industry or Digital Asset Platforms.

**REQUEST NO. 19.**

All Documents and Communications concerning potential or proposed legislation relating to the regulatory and/or enforcement authorities of the SEC and/or another Government Entity with respect to Digital Assets or Digital Asset Platforms.

**REQUEST NO. 20.**

All Documents and Communications concerning any meeting or call involving one or more Commissioner concerning Coinbase, the Coinbase Platform or any of the Named Digital Assets or Named Coinbase Services, including a list of the attendees of any such meeting or call.

**REQUEST NO. 21.**

All Documents and Communications concerning the following litigation matters:

    a.   *SEC* v. *Kik Interactive Inc.*, Case No. 19-cv-5244 (S.D.N.Y.);

    b.   *SEC* v. *Telegram Grp. Inc. and TON Issuer Inc.*, Case No. 19-cv-9439 (S.D.N.Y.);

    c.   *SEC* v. *Ripple Labs, Inc. et al.*, Case No. 20-cv-10832 (S.D.N.Y.);

    d.   *SEC* v. *LBRY, Inc.*, Case No. 21-cv-260 (D.N.H.);

    e.   *SEC* v. *Wahi et al.*, Case No. 2:22-cv-1009 (W.D. Wash.);

    f.   *SEC* v. *Binance Holdings Ltd. et al.*, Case No. 23-cv-1599 (D.D.C.);

    g.   *SEC* v. *Bittrex, Inc. et al.*, Case No. 23-cv-580 (W.D. Wash.);

    h.   *SEC* v. *Genesis Global Capital, LLC and Gemini Tr. Co., LLC*, Case No. 23-cv-287 (S.D.N.Y.);

    i.   *SEC* v. *Terraform Labs PTE Ltd. and Kwon*, Case No. 23-cv-1346 (S.D.N.Y.);

    j.   *SEC* v. *Payward, Inc. and Payward Ventures, Inc.*, Case No. 23-cv-6003 (N.D. Cal.); and

    k.   *SEC* v. *Payward Ventures, Inc. (D/B/A Kraken) and Payward Trading, Ltd. (D/B/A Kraken)*, Case No. 23-cv-588 (N.D. Cal.).

**REQUEST NO. 22.**

All Documents and Communications concerning Coinbase's direct public offering or registration statement on Form S-1 (including any drafts of such registration statement), including but not limited to Documents and Communications concerning the application or potential application of the federal securities laws to Coinbase's business or operations.

**REQUEST NO. 23.**

All Documents and Communications concerning your public remarks about Digital Assets, Digital Asset Platforms, and Staking as a Service, without limitation as to the applicable time period, including but not limited to:

a. Your May 6, 2021 testimony before the United States House Committee on Financial Services;

b. Your May 7, 2021 appearance on CNBC;

c. Your May 26, 2021 testimony before the United States House Subcommittee on Financial Services and General Government;

d. Your August 3, 2021 remarks before the Aspen Security Forum;

e. Your September 21, 2021 interview with the *Washington Post*;

f. Your October 5, 2021 testimony before the United States House Committee on Financial Services;

g. Your August 19, 2022 opinion piece published by the *Wall Street Journal*, titled "The SEC Treats Crypto Like the Rest of the Capital Markets";

h. Your December 7, 2022 interview with Yahoo! Finance;

i. Your interview with Ankush Khardori, as reported in Intelligencer's February 23, 2023 article, "Can Gary Gensler Survive Crypto Winter? D.C.'s Top Financial Cop on Bankman-Fried Blowback";

j. Your interview with CNBC's *Squawk Box*, as reported in CNBC's February 10, 2023 article, "SEC's Gary Gensler on Kraken Staking Settlement:  Other Crypto Platforms Should take Note of This";

k. Your March 29, 2023 testimony before the United States House Appropriations Subcommittee on Financial Services and General Government;

l. Your statements regarding Digital Assets during "Office Hours with Gary Gensler" including but not limited to the episodes from August 16, 2021, July 28, 2022, August 4, 2022, October 3, 2022, February 9, 2023, and April 27, 2023;

m. Your April 18, 2023 testimony before the United States House Committee on Financial Services;

n. Your interview with CNBC's *Squawk Box*, as reported in CNBC's June 6, 2023 article, "SEC Chair Gensler doubts the need for more digital currency";

o. Your interview with the *Wall Street Journal*, as reported in the June 8, 2023 article, "SEC's Gary Gensler Had Crypto in His Sights for Years. Now He's Suing Binance and Coinbase.";

p. Your June 8, 2023 remarks before the Piper Sandler Global Exchange & Fintech Conference;

q.  Your interview with the *Wall Street Journal*, as broadcast in the June 14, 2023 podcast episode, "SEC Chair Gary Gensler on His Crypto Crackdown";

r.  Your September 12, 2023 testimony before the United States Senate Committee on Banking, Housing, and Urban Affairs;

s.  Your September 27, 2023 testimony before the United States House Committee on Financial Services; and

t.  Your statements concerning Digital Assets or Digital Asset Platforms made prior to your tenure as SEC Chair.

**REQUEST NO. 24.**

All Documents and Communications concerning the Petition for Rulemaking submitted by Coinbase on July 21, 2022, any comment letters submitted by Coinbase concerning its Petition for Rulemaking, or the Commission's Order denying Coinbase's Petition for Rulemaking issued on December 15, 2023, including any Communications with any third parties (including any Government Entity) concerning Coinbase's Petition for Rulemaking or the Commission's Order.

**REQUEST NO. 25.**

All Documents and Communications concerning the comment letter sent to Coinbase Global, Inc. by the Commission dated September 22, 2023 regarding Coinbase Global, Inc.'s Form 10-K for the year ended December 31, 2022, Form 10-Q for the period ended June 30, 2023, Form 8-K filed January 10, 2023, and Form 8-K filed May 4, 2023 (File No. 001-40289) and any subsequent correspondence relating thereto.

**REQUEST NO. 26.**

All Documents and Communications concerning your purchase, use, ownership, or trading of Digital Assets or use of Digital Asset Platforms.

**REQUEST NO. 27.**

All Documents and Communications concerning your courses "FinTech: Shaping the Financial World" and "Blockchain and Money," including but not limited to syllabi, speaking

notes, presentations, distributed materials, assignments, and any classroom recordings.

**REQUEST NO. 28.**

All Documents and Communications concerning your work with the Massachusetts Institute of Technology's Digital Currency Initiative, including any speeches, publications, or reports concerning Digital Assets, Digital Asset Platforms, Staking, or Staking as a Service.

Dated:  June 14, 2024
New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

*/s/ William Savitt*
William Savitt
Kevin S. Schwartz
Sarah K. Eddy
Adam M. Gogolak
David P.T. Webb
Emily R. Barreca
51 West 52nd Street
New York, New York  10019
(212) 403-1000
WDSavitt@wlrk.com
KSSchwartz@wlrk.com
SKEddy@wlrk.com
AMGogolak@wlrk.com
DPTWebb@wlrk.com
ERBarreca@wlrk.com


Steven R. Peikin
Kathleen S. McArthur
James M. McDonald
Julia A. Malkina
Olivia G. Chalos
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Coinbase, Inc. and Coinbase Global, Inc.*