**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

                          **Plaintiff,**

        **-against-**

COINBASE, INC. AND COINBASE GLOBAL,
INC.,

                         **Defendants.**

23 Civ. 04738 (KPF)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL DISCOVERY**

Nicholas C. Margida
Rebecca R. Dunnan
Jorge G. Tenreiro
Peter A. Mancuso
Patrick R. Costello
David S. Mendel

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**.................................................................................................. iii

**PRELIMINARY STATEMENT** .............................................................................................1

**RELEVANT BACKGROUND** .................................................................................................2

    I.   Coinbase's Sweeping Discovery Demands and the Parties' Negotiations...................................2

    II.  Coinbase Cuts Short the Meet and Confer Process...........................................................4

    III. The Scope of the Current Dispute Between the Parties. ...................................................4

**ARGUMENT** .............................................................................................................................5

    I.   COINBASE SEEKS ENTIRELY IRRELVANT MATERIAL. ...........................................5

        A.  The Documents Coinbase Seeks are Not Relevant to the SEC's Claims. ...........................5

        B.  Fair Notice Also Cannot Justify the Additional Searches Coinbase Seeks.........................8

        C.  Coinbase's Request for a "Sample" of the Chair's Email Should be Denied....................10

    II.  THE BURDEN TO THE SEC OF COINBASE'S REQUESTS IS PLAINLY
        DISPROPORTIONAL TO THE NEEDS OF THIS CASE. ................................................11

**CONCLUSION**.......................................................................................................................**13**

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Auto. Club of New York, Inc. v. Port Auth. of N.Y. & N.J.*,
    297 F.R.D. 55 (S.D.N.Y. 2013) ................................................................12

*Averbach v. Cairo Amman Bank*,
    2022 WL 17730096 (S.D.N.Y. Dec. 16, 2022)...............................................5

*Citizens Union v. Att'y Gen.*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017)...........................................................9

*Deutsche Bank Sec. Inc. v. Kingate Glob. Fund Ltd.*,
    2022 WL 3644822 (S.D.N.Y. Aug. 24, 2022).............................................12

*FCC v. Fox Television Stations*,
    567 U.S. 239 (2012)..............................................................................8, 9

*Gen. Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995) ...............................................................8, 9

*Lederman v. N.Y.C. Dep't of Parks and Recreation*,
    731 F.3d 199 (2d Cir. 2013) ....................................................................12

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)..............................................................................9

*SEC v. Brigadoon Scotch Distrib. Co.*,
    480 F.2d 1047 (2d Cir. 1973) ....................................................................8

*SEC v. Culpepper*,
    270 F.2d 241 (2d Cir. 1959) ......................................................................9

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)...........................................................9

*SEC v. LBRY, Inc.*,
    639 F. Supp. 3d 211 (D.N.H. 2022) .............................................................9

*SEC v. Ripple Labs, Inc.*,
    2022 WL 123590 (S.D.N.Y. Jan. 13, 2022).......................................10, 11, 12

*SEC v. Ripple Labs, Inc.*,
    682 F. Supp. 3d 308 (S.D.N.Y. 2023)................................................... 7, 8, 9

*SEC v. Terraform Labs*,
    2023 WL 8944860 (S.D.N.Y. Dec. 28, 2023)..................................................7

*In re Terrorist Attacks,*
    2020 WL 8611024 (S.D.N.Y. Aug. 27, 2020) ................................................................. 12

*Upton v. SEC,*
    75 F.3d 92 (2d Cir. 1996) ............................................................................................... 8, 9

*Vaigasi v. Solow Mgmt. Corp.,*
    2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) .................................................................. 5, 6

*WHX Corp. v. SEC,*
    362 F.3d 854 (D.C. Cir. 2004) ......................................................................................... 10

## STATUTES

15 U.S.C. § 78d(a) ............................................................................................................. 10

15 U.S.C. § 78z .................................................................................................................... 9

## RULES

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 5

Fed. R. Civ. P. 45(d) ............................................................................................................ 4

## PRELIMINARY STATEMENT

The SEC charges Coinbase with violating strict liability provisions of the federal securities statutes. The facts needed to determine whether Coinbase did so—its failure to register, how its services operate, what the promoters of the assets at issue said—are unlikely to be seriously disputed. To the extent the SEC has the materials relevant to these facts, it has provided them. The SEC has produced 240,000 documents and is searching another 117,000 documents for responsive material, including emails of non-enforcement staff Coinbase claims are relevant to fair notice. D.E. 146 ("Motion" or "Mot.") at 7-9. The SEC has likewise provided a 648-page log of the privileged documents it is validly withholding. Coinbase has produced 2,162 documents and no privilege log.

Despite this, Coinbase makes an additional, sweeping demand—that the SEC produce or log every document, including all SEC internal and external emails, about the "application of the securities laws to digital assets," as supposedly relevant to the *Howey* analysis and fair notice defense. *Id.* at 3. But it is the Court's analysis of the facts and the law, not the SEC's internal discussions or discussions with market participants that will decide this case, and Coinbase fails to cite a single case to the contrary. The burden of searching and producing or logging, one by one, an *additional* three million irrelevant external or assuredly privileged internal SEC documents that Coinbase's limitless request entails is thus entirely disproportional to the needs of the case.

Still, the parties were in the middle of the meet and confer process, with the SEC having offered to search more files and emails. However, by then Coinbase had tried to ensnare the SEC Chair and his personal email in its far-reaching discovery campaign—which has included subpoenas to an institution of higher learning and to another federal agency. Unable to defend this indefensible move to the Court, Coinbase pivoted to accusing the SEC of stonewalling and vowed to file this Motion, which led it to summarily reject the then-pending offer. Coinbase's blame-shifting fails. The SEC has more than satisfied its discovery obligations and the Motion should be denied.

**RELEVANT BACKGROUND**

**I.     Coinbase's Sweeping Discovery Demands and the Parties' Negotiations.**

Coinbase has made publicly clear from the outset of this case that its litigation strategy is to shift the focus from its own conduct by attempting to put the SEC on trial. *See* Ex. 1.[1]

To that end, Coinbase served on the SEC breathtakingly broad requests for production seeking essentially all documents that in any way relate to crypto assets. *See* D.E. 149-1 ("RFP"); *see also* Ex. 2 (similar subpoena to the CFTC). The SEC produced all the non-privileged documents it gathered in the investigation leading to this case (the "Investigative File")—over 240,000 documents concerning the crypto assets at issue here (the "Named Tokens") and the relevant Coinbase services. *See* attached Decl. of N. Margida ("Decl.") ¶¶ 4-8. The SEC also spent over 400 hours reviewing 64,000 documents to prepare a 648-page, 14,000-entry privilege log. *Id.* ¶ 17.

The parties met and conferred on multiple occasions as to what additional documents the SEC needed to produce. On June 13, the SEC asked Coinbase to identify the RFPs that pertain to its defenses, including fair notice, and to explain the relevance of these documents thereto, Ex. 3, a request the SEC repeated at subsequent negotiations to no avail.

The SEC also agreed to search and produce documents from 10 other non-Coinbase investigative files—consisting of matters the SEC reasonably determined could contain documents relating to the *Howey* issues that this case presents, Decl. ¶¶ 9-10, and matters Coinbase had specifically requested, presumably because they involved charges similar to those asserted here. *Id.* ¶ 10. The SEC has already produced 1,379 more documents from these files. *Id.* ¶ 11(f).

Unsatisfied, Coinbase continued to press the SEC to conduct a sprawling search of all agency records—including all internal files and all communications with government agencies and market participants—for "documents relating to … the application of the securities laws to digital

---

[1] Citations to "Ex. __" are to the attached declaration of Rebecca R. Dunnan.

assets." Mot. at 3 (citing D.E. 149-3). Coinbase failed to cite, in support of this extraordinary search, any case or legal principle to establish the relevance of internal files, inter-agency communications, or one-on-one communications, to *Howey* or fair notice. *E.g.*, D.E. 149-3 at 1-7 (citing nothing).

Then, on June 25, for the first time, Coinbase proposed that the SEC produce a "hit" count by running an "illustrative" and "preliminary search" through the files of 22 custodians, including all current and recent Commissioners, using 48 search terms, over a nearly seven-year period. *Id.* at 5-6, n.2. On July 2, the SEC countered that rather than run a time-consuming search to get a hit count, it would run 47 search terms (substantially identical to all but 3 of Coinbase's 48) through the files of 5 of the 22 custodians, selected because of their roles in the two SEC groups most likely to have communicated with crypto asset market participants, *see* Mot. at 6 (singling out these two groups), and produce the documents—if this resolved the parties' then-pending disputes as to certain RFPs. D.E. 149-4 at 2, 4, 13-16. The SEC specifically noted that "Coinbase" and the other rejected terms were too broad because they yielded over 2 million hits across a discrete set of files. *See id.* at 6 & n.4. The SEC also stated that requiring it to individually log the internal emails resulting from these additional searches would present an unjustified burden, given that the documents are irrelevant and "likely privileged." *Id.* at 4. The SEC also invited Coinbase to meet and confer. *Id.* at 10.

Coinbase also served a subpoena on the current SEC Chair. D.E. 133-1 (the "Subpoena"). The Subpoena is broader than the RFP—it seeks all documents relating to crypto assets (including from before the Chair's term began), plus information about his personal finances and courses he taught at MIT—and mirrors a request Coinbase served on MIT. D.E. 133-3. The parties met and conferred but, given the Subpoena's blatant impropriety and Coinbase's failure to show the relevance of personal communications to fair notice, the SEC sought leave to move to quash it.[2]

---

[2] The foregoing background dispels Coinbase's many mischaracterizations of the SEC's positions. The SEC has not refused to produce documents on the basis that fair notice is "dead," Mot. at 2, 9; has not refused to search custodians outside enforcement, *id.* at 6; has not taken the position that it will produce only documents

## II.      Coinbase Cuts Short the Meet and Confer Process.

At the July 11 hearing, Coinbase was wholly unable to justify the Subpoena, raising serious questions about whether Coinbase has kept with its obligation to minimize the burden on subpoenaed non-parties. Fed. R. Civ. P. 45(d). Coinbase thus pivoted to mischaracterizing the foregoing RFP negotiations as a "wall of refusal," and announced for the first time its intention to move to compel. *See* Ex. 4 at 34-35. The next day, having committed itself to this Motion, Coinbase summarily rejected the SEC's July 2 proposal with no counter and rejected the SEC's offer to meet and confer. Ex. 5. As to the Subpoena, Coinbase stated that it would seek only documents starting when the Chair took office. *See* D.E. 139 at 2. The SEC then asked Coinbase to also withdraw its pursuit of a search of the Chair's personal communication devices, pointing to his sworn testimony to Congress that he does not use personal devices for SEC business and that SEC-related communications inadvertently sent to his personal email are forwarded to an SEC email. *See* Ex. 6 at 2 (citing *Hearing Before the Comm. on Fin. Services* at 157-58, *available at*

https://www.govinfo.gov/content/pkg/CHRG-118hhrg52391/pdf/CHRG-118hhrg52391.pdf

("Chair Testimony")). Coinbase refused. *See id.* at 1.

## III.     The Scope of the Current Dispute Between the Parties.

Because Coinbase improperly cut short the meet and confer process, the disputes at issue have remained a moving target. Before filing the Motion, Coinbase stated that the parties were at an impasse as to 16 RFPs, Ex. 5 at 2, but it has now abandoned three of them—Nos. 3, 14, and 26.[3] Coinbase also further abandoned most of what was left of the Subpoena, but nevertheless still seeks

---

it intends to use, *id.*; has not refused to substantiate the burden of proposed searches, *id.* at 11; did not "self-select[]"investigative files, *id.* at 1; and has not "withdr[awn]" the offer to search more custodians. *Id.* at 4.

[3] Tellingly, Coinbase has abandoned its indefensible request that the SEC prepare and produce what would be an enormous document-by-document privilege log with respect to the additional, non-Coinbase investigations the SEC has agreed to search. *See* Decl. ¶¶ 9-10. Although Coinbase had previously insisted that preparing such a log "does not present a substantial, additional burden," D.E. 149-3 at 4-5, the extraordinary burden of creating that log just for the Investigative File, Decl. ¶ 17, demonstrates otherwise.

an improperly intrusive search of the Chair's personal email. Mot. at 10-12.

Coinbase now seeks to compel the SEC to: (1) "run the preliminary *search*" it proposed, (2) supplement the search to capture drafts of speeches and internal documents of the SEC staff's review of Coinbase's S-1, and (3) "*produce* and log" on a document-by-document basis withheld documents. Mot. at 5 (emphases added). The first request is moot as the SEC has run the "preliminary search" involving all 48 search terms and all 22 custodians and is providing the "hit" counts, which results in over 3 million documents before removing duplicates, a process the SEC is still undertaking. *See* Decl. ¶¶ 13-14, 16. Coinbase's third request is moot in part, because the SEC has agreed to search through over 54,000 documents, applying nearly all the 48 search terms to 5 of 22 custodians. *See id.* ¶ 15. The remaining requests—that the SEC search through and produce documents from the rest of the 3 million documents (resulting from the expanded list of custodians and search terms, *id.* ¶ 16), draft Chair speeches, and internal SEC documents concerning Coinbase's S-1, and that it prepare a document-by-document log of documents withheld—should be denied.

## ARGUMENT

Discovery is proper as to "relevant" material that is "proportional to the needs of the case," including the burden on the producing party. Fed. R. Civ. P. 26(b)(1). These are "conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be … disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016). It is Coinbase's burden to show that what it seeks is "relevant and within the bounds of discovery permitted." *Averbach v. Cairo Amman Bank*, 2022 WL 17730096, at *2 (S.D.N.Y. Dec. 16, 2022).

## I.    COINBASE SEEKS ENTIRELY IRRELEVANT MATERIAL.

### A.    The Documents Coinbase Seeks are Not Relevant to the SEC's Claims.

Coinbase requests that the SEC review and produce the documents of 17 additional custodians using additional search terms, because they could supposedly yield documents that relate

to Coinbase's platform and services, the Named Tokens, or the "application of the securities laws to digital assets," and thus be relevant to "the application of *Howey*." Mot. at 5.

Coinbase fails to satisfy Rule 26(b)'s relevance and proportionality requirements. As an example, Coinbase points to an SEC meeting with FTX and a "slide deck" provided at the meeting and from this categorically exclaims that documents referencing crypto assets or trading platforms go to the "core" of the SEC's claims and are "plainly relevant." Mot. at 5-7. This sweeps far too broadly. If a document references "municipal bonds," it does not follow that it is relevant to and discoverable in all cases about any municipal bonds. This case involves how Coinbase's platform operates, not how FTX's did. *See, e.g.*, Ex. 7 (Minute Order in *SEC v. Kik Interactive Inc.*, No. 19 Civ. 5244 (S.D.N.Y.) (D.E. 36)) ("[p]roper discovery should be focused on what defendant did").

Similarly, whether the issuance of a particular crypto asset meets *Howey* is fact-specific and presents an objective inquiry focused on economic reality and the issuer's representations. The facts Coinbase needs to argue that a Named Token does not meet *Howey* are public or available to Coinbase, including from its own listing analysis or from all the documents the SEC has gathered about these topics and is producing to Coinbase. Searching additional custodians in case someone provided some otherwise unknown fact about a Named Token is a classic fishing expedition of "marginal utility," *Vaigasi*, 2016 WL 616386, at *14, whose tremendous burden cannot be justified.

For the same reasons, the impossibly broad category of documents "about the application of securities laws to crypto assets" cannot be tethered to the SEC's strict liability claims. Imagine a lawyer wrote a memo to the SEC, perhaps to persuade the agency to take a particular course of action, arguing that the law does or does not apply to her client's conduct, or that there is "internal correspondence reflecting such communications." Mot. at 7. What is the possible relevance of that document to this case, which presents legal questions, such as *Howey*'s objective test? There is none. The Court will decide these legal questions without the help of any exchange the SEC may have had

internally or with market participants (or their lawyers) about these legal issues, as courts deciding these issues consistently do. *E.g.*, *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 324-28 (S.D.N.Y. 2023); *SEC v. Terraform Labs*, 2023 WL 8944860, at \*13-14 (S.D.N.Y. Dec. 28, 2023).

Coinbase's reliance on a discovery ruling in *Ripple*, Mot. at 3, 6-7, is unavailing. The court there held that conversations with market participants were discoverable based in part on aiding and abetting claims that required inquiry into defendants' state of mind. *See* Ex. 8 at 51-52 (Tr. in *SEC v. Ripple Labs, Inc.*, 20 Civ. 10832 (S.D.N.Y.) (D.E. 112) ("*Ripple* Tr.")). This case involves only strict liability claims. *See also* Ex. 9 at 20-21 (Tr. in *SEC v. LBRY, Inc.*, 21 Civ. 260 (D.N.H.) (D.E. 50) ("*LBRY* Tr.")) (recognizing this distinction). The burden was also different—the ordered search involved documents relating to *three* crypto assets across 19 custodians. *Ripple* Tr. at 51-52. Here, the SEC has already agreed to search for documents about the *Howey* issues this case presents across 10 non-Coinbase investigative files, as well as the emails of 5 additional non-enforcement custodians from a list Coinbase provided. And even the *Ripple* decision Coinbase cites refused to compel the SEC to search for or log internal documents other than formal position papers, *Ripple* Tr. at 51-52; *see also* Ex. 10 at 6 (Order in *SEC v. Ripple Labs, Inc.*, 20 Civ. 10832 (S.D.N.Y.) (D.E. 163)), a far narrower search than the blanket and unduly burdensome searches Coinbase seeks.

The SEC's extensive efforts, which include reviewing or producing nearly 357,000 documents relating to these topics, Decl. ¶¶ 4-11, 15, are reasonable and satisfy the SEC's discovery obligations. The SEC's proposed searches, in particular, capture what Coinbase wants—such as the memo from DASH's counsel Coinbase cites (D.E. 149-9), as it was sent to one of the custodians the SEC is searching. *See* Ex. 11. Moreover, the custodians the SEC agreed to include attended most of the Coinbase meetings Coinbase cites in support of more discovery. *See* Ex. 12.

The burden of fishing through and logging over 3 million *more* documents cannot be justified. The documents belong mostly to SEC commissioners or directors of SEC divisions. By

their nature they are highly likely to be privileged, as are the countless internal documents Coinbase proposes to "supplement" its searches with. Mot. at 1, 5. Coinbase cannot articulate why the heavy burden of reviewing and logging these irrelevant documents is proportional to the needs of the case.

### B.    Fair Notice Also Cannot Justify the Additional Searches Coinbase Seeks.

Coinbase also seeks four categories of documents it argues are probative of its "fair notice" defense—communications between SEC employees and market participants about the application of the securities laws to digital assets; internal SEC communications about that same topic and about Coinbase's S-1; communications between the SEC and other regulators about these topics; and, including from the Chair personally, drafts of SEC speeches, including the Chair's. Mot. at 8, 10.

But fair notice has never justified this sort of sweeping discovery. Fair notice requires that statutes and rules provide persons "sufficient notice" of what conduct is required or proscribed. *Ripple*, 682 F. Supp. 3d at 332. Sometimes referred to as void for vagueness, courts consider whether a law provided fair notice by looking at the language of the law and cases applying it. *Id.*[4] In cases involving an agency's regulations or rules, courts also look to pronouncements by the agency. *FCC v. Fox Television Stations*, 567 U.S. 239, 246, 253-54 (2012) (analyzing FCC application of its guidelines); *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996) (SEC interpretation of "customer protection rule"); *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) (EPA's construction of its regulations). In any event, the test "is objective—it does not require inquiry into whether a particular [party] actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Ripple*, 682 F. Supp. 3d at 332 (citations and quotations omitted).

The documents Coinbase seeks are not at all like the formal agency pronouncements considered in those cases, even assuming they provide the proper rubric of analysis.[5] *Fox* relied on

---

[4] Fifty years ago, the Second Circuit held that any argument that the term "investment contract" is void for vagueness is "untenable." *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973).

[5] In *Upton* and *General Electric* courts were bound to defer to agencies' views as to the reach of the regulations.

the "regulatory history" of the provision as set forth in FCC orders. 567 U.S. at 254. *Upton* held that one settled enforcement action was insufficient to "communicate[] to the public" a "substantial change" in the SEC's interpretation "of its rules." 75 F.3d at 98. And *General Electric* analyzed the agency's "position" in orders and briefs, and what it had "told" respondents in two *official* letters. 53 F.3d at 1332. None involved nonpublic "emails, memoranda, or presentations" (internal or between agencies), Mot. at 8, about the scope of a statute or a defendant's activities. They also did not involve drafts. Nor did they analyze informal staff communications with, or fact-gathering from, the public. "[T]hat courts have routinely adjudicated" the fair notice defense "without the type of expansive evidence … request[ed] … supports the conclusion that such discovery is not relevant." *Citizens Union v. Att'y Gen.*, 269 F. Supp. 3d 124, 143 (S.D.N.Y. 2017).

Accordingly, courts that have confronted the fair notice defense in strict liability cases have rejected the sweeping discovery Coinbase seeks. The *Kik* defendant sought communications "concerning the application of federal securities laws … [to a] Digital Asset." Ex. 13 at 13, 16. Judge Hellerstein twice rejected the request as "the deliberations within an agency shed[] no light on the application of the statute or regulation in issue." Ex. 7. *LBRY* similarly refused discovery into what an SEC official "think[s] the law is," because that view is not entitled to any deference, and thus there was no "potential relevance" to "what drove [the official] to make [a] speech … [or] what his internal thought process was." *LBRY* Tr. at 16, 28-29.[6]

---

See *Upton*, 75 F.3d at 97-98; *Gen. Elec.*, 53 F.3d at 1327 (giving *Chevron* deference). This case involves no such regulations and no such deference. It involves a court applying a *statute* to Coinbase's conduct—"no matter the context, based on the traditional tools of statutory construction." *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2268 (2024). Thus, the premise of Coinbase's defense—that the SEC by its own conduct can alter the reach of the statute or render lawful unlawful behavior—is fundamentally incorrect. *E.g.*, *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959) (SEC cannot "waive the requirements of an act of Congress"); *see also* 15 U.S.C. § 78z (SEC failure to act cannot be construed to imply approval of a transaction).

[6] Thus, *Kik* and *LBRY*, like *Fox*, *Upton*, and *General Electric*, also analyzed fair notice without referring to any of the types of documents Coinbase seeks. *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 183 (S.D.N.Y. 2020) (rejecting application of *Upton* because every *Howey* analysis is fact-specific); *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211, 221-22 (D.N.H. 2022); *see also Ripple*, 682 F. Supp. 3d at 332.

All of this applies equally to the internal information or thought processes by staff reviewing Coinbase's Form S-1. Whatever the "SEC's belief[s] at the time of the public listing" were (Mot. at 10) are utterly irrelevant to whether Coinbase has received fair notice under the law.

Similarly, Coinbase cannot point to supposed disagreement as to what the Chair meant in his speeches (even assuming the speeches are relevant to fair notice), in support of its claimed need for drafts or emails to figure out what was "intended." *Id.* Were it otherwise, the parties' quarrel over, for example, the meaning of Supreme Court briefs, *e.g.*, D.E. 36 at 9, 18, 21; D.E. 69 at 11 n.7, would require producing drafts. Coinbase's untenable position that "impressions," drafts, and emails are probative also implies that Coinbase's own internal impressions are discoverable. And if it turned out that SEC officials insisted internally that the application of the law to Coinbase's conduct was crystal clear, would that mean the SEC wins on the merits? That seemed "really weird" to the *LBRY* court, *LBRY* Tr. at 18, and should ring equally peculiar here.[7]

### C.    Coinbase's Request for a "Sample" of the Chair's Email Should be Denied.

Coinbase requests a search of the Chair's personal email based on him giving the disclaimer that the SEC required all its employees to give when speaking publicly as SEC employees—that the views expressed are the speaker's "own, and [he is] not speaking on behalf of the Commission or the SEC staff." D.E. 149-7 at 2; *see also* D.E. 149-14 at 10 (same disclaimer). The Chair's statement reflects the uncontroversial principle that in a five-member commission, 15 U.S.C. § 78d(a), one alone cannot bind the five. *See also WHX Corp. v. SEC*, 362 F.3d 854, 860 (D.C. Cir. 2004). Coinbase's attempt to pervert the disclaimer's meaning to argue that the Chair was speaking in his "personal" capacity, *e.g.*, Mot. at 11-12, is disingenuous. That a speech is not given on behalf of all Commissioners does not mean it is the speech of a private citizen. Indeed, the House of

---

[7] Coinbase's citation to *Ripple*, *e.g.*, Mot. at 8, undermines its position, as it ordered the SEC to log only *formal* position papers, not all emails as Coinbase seeks, and still held that internal documents and drafts did not "implicate the fair notice defense." *SEC v. Ripple Labs, Inc.*, 2022 WL 123590, at *9 (S.D.N.Y. Jan. 13, 2022).

Representatives sought testimony from the **"CHAIRMAN, U.S. SECURITIES AND EXCHANGE COMMISSION."** D.E. 149-14 at 10.[8]

Of course, even if the Chair delivers a speech in his private life—say at a dinner party or to his students—this still would not come remotely close to justifying the intrusive "sample" Coinbase proposes. There is simply no relevance whatsoever to any such speech or conversation. *See also supra* § I.B. Coinbase has utterly failed to cite any case or legal principle to the contrary.

## II.    THE BURDEN TO THE SEC OF COINBASE'S REQUESTS IS PLAINLY DISPROPORTIONAL TO THE NEEDS OF THIS CASE.

Coinbase claims the SEC has not proven the requisite burden, but this assumes Coinbase can establish relevance, which it cannot. In any event, the SEC has amply established burden. *See* Decl. ¶¶ 12-17. Expanding the search to additional custodians and search terms would require the SEC to review through and potentially produce 3 million more documents that have little bearing on the facts of this case. This is greatly burdensome and entirely disproportional to the needs of the case, particularly given the hundreds of thousands of documents the SEC is producing.

Similarly, logging, one by one, millions of documents (in addition to those the SEC has already logged) would be disproportionately burdensome. For the withheld Investigative File documents alone, the SEC expended approximately 400 hours in preparing a 648-page log. *Id.* ¶ 16. If granted, Coinbase's demand for internal SEC communications and materials beyond that file and its demand that those millions of documents be logged, one by one, if withheld, will grind this litigation to a halt. The SEC is not now making "blanket assertions of privilege." Mot. at 12. It is

---

[8] In *Ripple* the court held that drafts of a speech given by a former SEC director were *not* privileged, based in part on its view that because the official had submitted a declaration stating that the speech "intended to express [his] own *personal* views," the speech was not part of the agency's deliberative process and was therefore not privileged. *Ripple*, 2022 WL 123590, at *7 (emphasis added). Even if this ruling were correct, the Chair's testimony to Congress as head of the SEC cannot reasonably be construed as a "personal" statement, Coinbase's attempts to misconstrue the disclaimer notwithstanding. *See also* Ex. 14 (Minute Order, *SEC v. Terraform Labs, Inc.*, No. 23 Civ. 1346 (S.D.N.Y.)) (holding that the drafts of the same speech and of the Chair's speeches *are* privileged).

simply stating that it is *likely to assert privilege* as to most of these documents, so that requiring a document-by-document log for no discernible purpose is not required. "Courts have … held that the requesting party must articulate the need for *why* it requires a document-by-document log in lieu of a categorical log." *Deutsche Bank Sec. Inc. v. Kingate Glob. Fund Ltd.*, 2022 WL 3644822, at *7 (S.D.N.Y. Aug. 24, 2022). Coinbase asserts that a document-by-document log was already ordered, Mot. at 5, but the burden of this as applied to its particularly broad RFPs was not specifically briefed by the parties. D.E. 126. The SEC respectfully requests that the Court examine it in the context of Coinbase's current request for millions of irrelevant and likely privileged documents. *E.g.*, *Auto. Club of New York, Inc. v. Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 60 (S.D.N.Y. 2013) ("there is a strong justification for a categorical log when thousands of documents have been withheld").[9]

Finally, Coinbase faults the SEC for "refus[ing] even to ask Chair Gensler whether he received relevant communications at his personal email account, much less to sample the account." Mot. at 12. But Congress asked him, and he responded—under oath. *See* Chair Testimony at 51-52, 157-58. In any event, civil discovery does not require a party who receives a highly improper subpoena to conduct an intrusive and onerous search to "sample" the requested documents to prove burden or satisfy the defendant's curiosity. The burden here speaks for itself. Requiring the Chair to expend time on searches or submit a "sampl[ing]" of personal emails is inherently time consuming and thus prejudicial to the SEC. *See Lederman v. N.Y.C. Dep't of Parks and Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). And it will also create an *in terrorem* effect on current and prospective SEC employees, who will fear that their personal lives will be searched if they give a particular disclaimer when speaking publicly as SEC employees. *In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020) (discovery should not discourage public service).

---

[9] As noted, *Terraform* held that drafts of the Chair's speeches are privileged. *See supra* n.8; *see also Ripple*, 2022 WL 123590, at *4-8 (SEC internal communications and notes of intra-government communications are privileged).

## **CONCLUSION**

For the foregoing reasons, Coinbase's Motion should be denied.

Dated: August 5, 2024                                    Respectfully submitted,

                                                  /s/ *Nicholas C. Margida*
                                                  Nicholas C. Margida
                                                  Rebecca R. Dunnan
                                                  Jorge G. Tenreiro
                                                  Peter A. Mancuso
                                                  Patrick R. Costello
                                                  David S. Mendel

                                                  SECURITIES AND EXCHANGE
                                                  COMMISSION
                                                  100 F. Street NE
                                                  Washington, DC 20549
                                                  Tel: (212) 336-9145 (Tenreiro)
                                                  TenreiroJ@sec.gov

                                                  *Counsel for Plaintiff*
                                                  *Securities and Exchange Commission*

13