# Exhibit 4

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
        ----------------------------:
        SECURITIES AND EXCHANGE      : Case No.: 23-cv-4738
        COMMISSION,                  :
                         Plaintiff,  :
             v.                      :
        COINBASE, INC., et al.,      : New York, New York
                        Defendants.  : July 11, 2024
        ----------------------------:
```

            TRANSCRIPT AND STATUS CONFERENCE HEARING

        BEFORE THE HONORABLE KATHERINE POLK FAILLA

                UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:        U.S. SECURITIES and EXCHANGE
                      COMMISSION
                      BY: Jorge G. Tenreiro, Esq.
                          Patrick R. Costello, Esq.
                          Peter Mancuso, Esq.
                          Nicholas Margida, Esq.
                          David S. Mendel, Esq.
                          Rebecca Dunnan, Esq.
                      100 Pearl Street
                      Suite 20-100
                      New York, New York 10004

For Defendants:       WACHTELL, LIPTON, ROSEN & KATZ
Coinbase              BY:  Kevin S. Schwartz, Esq.
                           William D. Savitt, Esq.
                      51 West 52nd Street
                      New York, New York 10019

For Defendant:        SULLIVAN & CROMWELL, LLP
Coinbase              BY:  Steven R. Peiken, Esq.
                      125 Broad Street
                      New York, New York 10004



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

    AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1              THE DEPUTY CLERK:  Your Honor, this is in
2    the matter of SEC v. Coinbase, Inc., et al.
3              THE COURT:  Thank you very much.  And I
4    know that my deputy has taken basically an
5    attendance prior to my getting on this call, so I
6    understand that on behalf of the Commission, I have
7    Mr. Mancuso, Mr. Margida, Mr. Tenreiro,
8    Mr. Costello, Ms. Dunnan and Mr. Mendel.
9              For Coinbase, I have from the Wachtell
10   firm, Mr. Savitt and Mr. Schwartz.
11             And from Sullivan & Cromwell I have
12   Mr. Peikin.  And I thank you very much for
13   participating in this.
14             I wanted to just -- I'll ask for your
15   indulgence at the front end here.  I wanted to
16   explain why I was convening this conference.
17             I received on June 28th a letter from the
18   Commission asking for leave to file a motion for a
19   protective order and to quash a subpoena that was
20   issued by Coinbase to Chairman Gary Gensler in his
21   personal capacity.  And I read that document, and I
22   was actually quite surprised by the request.  Not
23   that you wouldn't try and speak with Mr. Gensler,
24   but that you'd seek this in his personal capacity.
25   And I was, sort of, surprised by the SEC's
```

1    submission, and I imagined that there was just

2    something that I was missing.

3        But on July 3rd, I received Coinbase's

4    response.  And let me note, because it's always

5    appropriate, that counsel on both sides are very

6    smart, very clever.  They're all very clever people,

7    but I was sort of surprised, and not in a good way,

8    by the July 3rd response.

9        I appreciate that defense counsel is doing

10    what they can with what they've got and trying their

11    best not to sound petty or vindictive in light of my

12    decision on the motion to dismiss, but I found the

13    arguments, at least as articulated in the July 3rd

14    response to be -- well, to border on the fatuous, I

15    think.

16        I'm not going to make any final decisions,

17    mind you, until I have all the briefings, but there

18    were some things that did concern me.  For example,

19    just -- I'm just looking at the letter as I speak

20    with you.  There's a statement on the last line of

21    the first page of the July 3rd response where it

22    indicates that Mr. Young's communications go to the

23    heart of the fair notice defense, but now, somehow,

24    I need his private communications as well.  There

25    was some discussion that his private thoughts and

1    communications were relevant.

2            On page two, there was a discussion about

3    his private communications somehow being probative

4    of the objective understanding of the public and

5    market participants regarding what conduct those

6    securities laws prohibit.  I don't think so.  Things

7    like that, I just -- I was not moved basically by

8    any of the arguments, and so let me go back to the

9    point.

10            I'm not making any final decisions today.

11    I would need to have all of the briefing.  There

12    might be some amazing argument that's being held in

13    reserve by defense counsel, but at the moment, I

14    didn't see it in the submission that was given to

15    me.  And more than that, I actually reacted to this

16    response by thinking that defense counsel was

17    spending an amount -- perhaps not an inconsiderable

18    amount of the reservoir of credibility that they had

19    built up with me throughout this litigation.

20            So I really wanted to have everybody on the

21    line to make sure that defense counsel wished to

22    persist with the subpoena to Mr. Gensler in his

23    personal capacity.  And so I figured I'd call

24    everybody and see what the thoughts were, and if,

25    indeed, counsel wishes to persist with this

1  subpoena, okay.  And I'll schedule a motion for a

2  protective order and to quash, and we'll see what

3  happens in that.

4          And if instead, either as a result of

5  considered thought on the issue or as a result of

6  listening to my initial reactions today, counsel

7  wishes to withdraw that subpoena, that's fine too.

8          And then, of course, there's a third

9  option.  If counsel wants to talk amongst themselves

10  or with their client to see what it is they wish to

11  do, that's also great.

12          So that was it.  This is really just me

13  telling you my thoughts, recognizing that they are

14  inchoate and not final, and perhaps possibly could

15  change with additional briefing, but I figured you

16  ought to hear it.

17          So, Mr. Schwartz, I understand, sir, that

18  you are lead today.  Would you like to take the

19  opportunity to think about this further; would you

20  like to tell me that you wish to go forward with the

21  subpoena, or something else?

22          MR. SCHWARTZ:  Thank you, Judge.  And good

23  afternoon to you.  Of course, we really appreciate

24  your time and convening us so that we could both

25  hear the views you just shared and also, you know,

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    have a moment to try to, I think, clarify the shape

2    of the table that's before us and why we find

3    ourselves before you.

4            You know, to be sure, we did not serve a

5    subpoena on Mr. Gensler lightly.  And the reason I

6    think we find ourselves before you on the letter

7    motion from the SEC, frankly, doesn't really turn on

8    the character of Mr. Gensler's statements to the

9    public and their relevance to the core issues in our

10   fair notice defense.  It is, as you said,

11   specifically the question of Mr. Gensler's personal

12   device, and I hear loud and clear your focus on that

13   as well.

14           The reason I say that, just for

15   introduction, is there's nothing new about a

16   litigation party seeking and getting discovery as

17   relevant from a government official, even the chair

18   of the SEC that was ordered in the *Ripple*

19   litigation, where the Chair was found to be a proper

20   custodian to produce documents relevant to the

21   defendant's fair notice defense.  And here, too, we

22   think there are very good reasons why Mr. Gensler's

23   communication as Chair bears relevance to our

24   defense.  And so, focusing in on the limited

25   discovery we seek into Mr. Gensler's personal device

1    for such relevant communications.

2          The reason we've served this subpoena,

3    Your Honor, is because Mr. Gensler is uniquely

4    situated.  In three meet and confers with the SEC,

5    we've tried to work together to discuss and agree

6    upon what would be very targeted discovery, a

7    tailored search protocol responsive to burden

8    concerns.  And the problem is, we've been blocked

9    right out of the gate from having that constructive

10   discussion for two reasons, two things we heard.

11         One, that the SEC does not and cannot say

12   that Mr. Gensler didn't use his personal e-mail to

13   communicate with market participants about the

14   regulatory status of digital assets and platforms;

15   core issues for Coinbase's defense for the period of

16   time the SEC has put at issue.  They simply refuse

17   to ask.  That refusal to engage has been a gate that

18   went down right at the start.

19         And secondly, they protested the burden of

20   the subpoena, but studiously refused to substantiate

21   it in any way, as they are obliged to do, so that it

22   could inform our discussions so that we could try to

23   respond to it, to calibrate a protocol, to zero in

24   on only what's necessary, and, as I said to my

25   friend, Mr. Tenreiro, to have as light a footprint

1    as possible in identifying the specific target of

2    responsive communications that he happened to have

3    apparently carried out on his personal device.

4         That refusal to engage on both fronts is

5    what, you know, brings us before you; not any more,

6    any broader proposition about personal devices of

7    others or otherwise.  And their silence on both

8    counts, you know, just leaves no basis for the

9    wholesale inoculation of Mr. Gensler's personal

10   device from limited Rule 45 discovery of information

11   relevant to Coinbase's defenses in the litigation

12   that the SEC has chosen to bring.

13        That's what brings us before you.  And I --

14   you know, let me pause there, Your Honor, because

15   I'd be happy to focus in on any particular aspect of

16   it.  But really, you know, it's, sort of, just

17   getting off the block in the ability to have a

18   constructive discussion to identify as least

19   burdensome and respectful a process to identify what

20   responsive communications exist because he hasn't

21   said he didn't use his personal device to have them.

22        We know he had public statements and

23   communications with the market, with media, with

24   audiences of investors, all in the capacity that he

25   described as his own views, his personal capacity.

1    And it's in that respect that we asked, and we

2    haven't been told that he didn't use his personal

3    device to have similar relevant communications.

4         THE COURT:  Mr. Schwartz, I'm going to ask

5    you to pause for a moment.  I thank you very much.

6         I understood from the Commission's opening

7    submission of June 28th that the requests that were

8    contained in the subpoena existed for a period that

9    preceded Mr. Gensler's chairmanship; is that

10   correct?

11        MR. SCHWARTZ:  That's correct, Your Honor.

12        THE COURT:  Okay.  So I guess I --

13        MR. SCHWARTZ:  And I'd be happy to

14   address -- yeah.

15        THE COURT:  Yes, I do think you're going to

16   have a very tough row to hoe in that regard, sir, so

17   I'll hear from you.  There's a difference between

18   telling me that the Commission cannot exclude the

19   possibility that Mr. Gensler communicated in his

20   official capacity on his personal devices.  That I

21   understand.  But asking for his statements prior to

22   becoming Chair, that's where I find your arguments

23   to be much more speculative and much less helpful.

24   But go ahead.  You can try.

25        MR. SCHWARTZ:  Oh, quite understand.  And

1  thank you, Your Honor.

2          So just one word before I dive in on the

3  period of time before Mr. Gensler joined as Chair

4  because it's relevant to that answer.

5          Even for the period where Mr. Gensler

6  served as Chair -- you know, the period as to which,

7  as you said, they have not excluded that he

8  conducted these relevant communications on his

9  personal device -- the SEC has refused even to

10 engage on the subpoena on that front, saying that's

11 properly directed to the SEC itself.  And, in turn,

12 for requests directed to the SEC, as you'll hear in

13 a forthcoming motion we intend to bring to

14 Your Honor's attention, the SEC is broadly refusing

15 to respond to, to search for, or produce and log

16 relevant communications from Mr. Gensler within its

17 possession as the SEC.

18         And I say that all just to set the table,

19 that, you know, again, we're unable to get

20 information from the SEC where we've been unable

21 even to have a constructive discussion about

22 ascertaining what information exists and to get from

23 Mr. Gensler and his personal capacity on these same

24 issues.  And that has been the starting point of,

25 again, the refusal to engage in the several meet and

```
 1    confers.
 2            As to the period before, there are two
 3    reasons why we included the time period before.  We
 4    have sought again to engage the SEC, engage
 5    Mr. Gensler directly, as to the need to search for
 6    that period, and we've faced the same response,
 7    which is, even for the period before joining,
 8    they've refused to say that he didn't use his
 9    personal device to engage in communications with
10    market participants and the public more generally as
11    one of the -- as a uniquely situated, prominent
12    voice on crypto -- on the regulatory status of
13    crypto assets and crypto platforms.
14            And two, they --
15            THE COURT:  Mr. Schwartz, please pause.
16            MR. SCHWARTZ:  Yes.
17            THE COURT:  Please pause.  I just want the
18    record to be clear.
19            MR. SCHWARTZ:  Yes.
20            THE COURT:  I do not find that argument
21    persuasive.  Just keep that in mind.  Keep going,
22    sir.
23            MR. SCHWARTZ:  Understood.
24            And I want to just say, Your Honor, a word
25    about why we've sought to ascertain whether and what
```

1   communications exist from that period.

2           We have put at issue in our fair notice

3   defense Mr. Gensler's testimony to Congress as

4   Chair, during his time as Chair -- I should say with

5   disclaimers and so on that we've referenced to

6   you -- that the SEC lacked authority over digital

7   asset exchanges, a key comment that affected the

8   regulatory uncertainty, the lack of fair notice that

9   Coinbase and other market participants had at that

10  time.  And in response, the SEC has argued, he

11  didn't mean anything of the sort, and there's no

12  reason to think the market understood it that way.

13  It was just about Bitcoin trading, a very narrow

14  subject.

15          That statement, Your Honor, was not made in

16  a vacuum, as we've written to Your Honor.  It

17  followed years of earlier speeches and lectures and

18  testimony to Congress and communications with market

19  participants in similar public communications, and

20  in private communications that leave no doubt about

21  how the public would have understood and what

22  Mr. Gensler communicated in that key testimony to

23  Congress.

24          That's a critical reason why Mr. Gensler's

25  pre-Chair communications, to the extent they

1    exist -- and, again, that has not been taken off,
2    that they do exist -- would inform and are relevant
3    to our ability to make a complete record about the
4    fair notice defense, particularly in the face of --
5            THE COURT:  And I --
6            MR. SCHWARTZ:  Okay.
7            THE COURT:  Yes, Mr. Schwartz.  I'll just
8    say this is, in fact, what you articulated in your
9    opposition, and I still don't find it persuasive.
10           MR. SCHWARTZ:  Yes.
11           THE COURT:  So you can keep telling me
12   this, sir, and keep pretending like I didn't read
13   what you sent to me, but that's fine.  I think you
14   should cut your losses and go to your second point.
15   But go ahead.
16           MR. SCHWARTZ:  No.  Certainly not trying to
17   reiterate what you've already heard in any new way,
18   Your Honor.  And, you know, I hear you if you don't
19   find that persuasive, you know, just to explain why
20   it is we felt it was necessary to take that step,
21   you know, for Mr. Gensler specifically.
22           More generally, as we've said -- and you're
23   familiar with it, so I'll keep it brief -- even
24   before becoming Chair, Mr. Gensler occupied a
25   uniquely prominent role, shaping and reflecting the

1    market's understanding of the regulatory status of
2    the digital asset platforms and assets during this
3    period.
4         And that, again, is what -- that unique
5    role in shaping and reflecting the public
6    understanding, we think, bears on our ability to set
7    forth a complete record on whether fair notice
8    existed for the whole period at issue.  And it's
9    worth remembering the SEC has sued Coinbase, not
10   just for the period where Mr. Gensler was Chair, but
11   for the period before as well.  And so let me pause
12   there for the pre-Chair period.
13        Any other -- I understand if that doesn't
14   persuade Your Honor.  And happy to move on to
15   another subject, but I want to make sure you have
16   our full argument on that point.
17        THE COURT:  I imagine since you've not
18   suggested to me that you're going to withdraw the
19   subpoena, there's going to be an even more full
20   argument, even fuller argument in connection with
21   the briefing on the motion to quash.
22        So I appreciate understanding that this is
23   a little bit more than what's in -- or at least
24   expands slightly on what is in your submission of
25   July 3rd.  I hear you.  I don't agree with you,

1    necessarily, but I do hear you, sir.

2           MR. SCHWARTZ:  Thank you.

3           And, Your Honor, just, I mean, in terms of

4    as you turn to next steps and what might be

5    constructive, you know, I mentioned this at the

6    outset.  We really do understand the significance of

7    serving the limited discovery that we've sought in

8    the Rule 45 subpoena.  And our goal is to have a

9    constructive engagement with Mr. Gensler to

10   identify, you know, whatever is a tailored search

11   protocol that could reveal relevant communications

12   that bear on our fair notice defense.

13          As to the Chair period, the SEC's refusal

14   to engage on both points that I mentioned at the

15   outset and I know you've acknowledged, that has

16   made -- that has just blocked, at the outset, the

17   ability to constructively discuss this with each

18   other.  And so, you know, I'd very much like to take

19   back to our client and also take to heart the

20   guidance you've given us on the period before

21   Mr. Gensler became Chair.  We'd also, though, like

22   the opportunity to be able to engage meaningfully,

23   actually talk about a tailored search program,

24   respond to purported concerns about burden for the

25   period when Mr. Gensler is chair, a period in which

1    there's been a refusal to engage as to the personal
2    device and there's been a refusal to search and
3    produce or log as to Mr. Gensler's official, you
4    know, files and documents.

5           And so, you know, with Your Honor's
6    guidance on that front as well, I think that might
7    set us on a path that could be constructive, bearing
8    in mind the considerations you've set out today.

9           THE COURT:  All right.  No, and I
10   appreciate that.

11          Again, it does trouble me to hear, first of
12   all, that you've had difficulty in meet and confer
13   proceedings, and that you've been, as you suggest to
14   me, somewhat stonewalled in not getting any movement
15   at all from the Commission.  Yes, that is a concern
16   of mine.  I'm also a little bit saddened to learn
17   that there's another motion forthcoming -- this one
18   from you -- because of your belief that the SEC is
19   not doing what it should be doing under the rules.

20          So, sure, it would be great if the parties
21   could work together more constructively and bother
22   me less.  I don't sense that that's happening.  So
23   I'm just going to be here for these motions as they
24   come in.

25          But perhaps we can -- Mr. Schwartz, I

1    certainly don't want to cut you off, and I do

2    appreciate your efforts to provide additional detail

3    for your arguments and explanation for those

4    arguments.  I will hear from you, but then perhaps I

5    ought to hear from Mr. Tenreiro about why it is the

6    Commission believes they've appropriately conducted

7    themselves in the meet and confers.

8            MR. SCHWARTZ:  I appreciate that.

9            Your Honor, if I could say two words, you

10   know, to wrap up as you turn to Mr. Tenreiro -- and

11   I will say just, you know, on our meet and confers,

12   Mr. Tenreiro and I have known each other a long

13   time, and they were perfectly collegial and, I

14   think, well-intentioned discussions.  So, certainly,

15   don't take anything of the sort otherwise from it.

16   Just the positions have been, unfortunately,

17   irreconcilable when in each meet and confer we've

18   been told to withdraw and there will be, as I said,

19   no engagement on the two issues we discussed.

20           And I think to that end, the second point I

21   wanted to mention -- you mentioned that, the

22   forthcoming motion that we referred to.  In common

23   in that -- and we'll tee it up properly, of course,

24   before Your Honor with papers.  But in common has

25   been the SEC's position that none of this is

1   relevant because, as they put it, the fair notice
2   defense was "effectively dead." And that has
3   animated on broader issues.
4        But in this motion, as to Mr. Gensler as
5   well, the SEC's refusal to consider anything might
6   be relevant to our discovery in support of our
7   affirmative defense. We think that's just plain
8   wrong. It's never been presented to Your Honor in
9   briefing for resolution. We raised the defense in
10  our answer. The SEC never moved to strike or
11  otherwise seek a determination of that defense on
12  the merits, nor did we raise it in our motion for
13  judgment on the pleadings. And so, you know, while
14  it had been discussed as part of your pleadings
15  resolution, of course, in finding that, at this
16  stage in the litigation, the case should go forward,
17  you know, it's our strong view that this remains a
18  proper subject of discovery so that Coinbase may
19  assert its defense to the Court based on a complete
20  record.
21        And I just -- the reason, I add that,
22  Your Honor, is it informs, I think, this refusal to
23  engage with respect to Mr. Gensler's subpoena, and
24  it forms a key basis -- there are others -- but a
25  key basis of the wall we have hit on broader

```
 1    attempts to serve discovery, accomplish discovery
 2    with the SEC on the other matters we'll bring before
 3    you.  And so it may be that identifying the path to
 4    clarity and constructive discussions on the Gensler
 5    subpoena, if Your Honor is willing to offer that,
 6    will also change the landscape with respect to the
 7    broader issues.  And I would love it if it made
 8    unnecessary the need to bother you with this.
 9              THE COURT:  Okay.  All right.  Thank you so
10    much.
11              Mr. Tenreiro, I'll hear from you now, sir.
12    Mr. Tenreiro, I didn't think fair notice was dead,
13    but perhaps you hold a different view.
14              MR. TENREIRO:  No, Your Honor.  Thank you.
15              May I start, though, because this is
16    important -- and if I misheard my friend,
17    Mr. Schwartz, I apologize.  But I think in one of
18    the things he said, he said that apparently
19    Mr. Gensler used his personal device for
20    communications.  There's no basis for that
21    statement, Your Honor.
22              THE COURT:  No, no, no, no, no.  Please
23    pause.  Please pause, sir.
24              I don't think -- that wasn't the note that
25    I took.
```

1           MR. TENREIRO:  Okay.

2           THE COURT:  The note that I took was that

3    the Commission has not excluded the possibility,

4    that it has not foresworn that he may have used his

5    personal device to communicate with market

6    participants or the public.  That's the note I took

7    down.

8           But let me hear your response to that if

9    there is a response that you wish to make to that.

10          MR. TENREIRO:  Right.  So that goes back to

11   the point of, you know, the engagement.  I think

12   we've engaged.  We've had three meet and confers in

13   which we discussed what the relevance of this was.

14   And I don't think that Coinbase has been able to

15   articulate any relevance to personal communications

16   in official or individual capacities, you know, for

17   the fair notice defense.

18          To the Court -- to Your Honor's question at

19   the beginning, to me, you know, the fair notice

20   defense, Your Honor, I think dealt with it properly

21   in the motion for judgment on the pleadings, like

22   all the other courts that have dealt with this

23   defense in the crypto context and in another context

24   by looking at, you know, what the SEC has done in

25   the actions we filed and the guidance that we've

1    issued.  And to the extent that, you know, they want

2    to -- you know, I can't imagine they missed anything

3    in their pleading, in their extensive pleading, that

4    would support their fair notice defense.  But to the

5    extent there's some other guidance or some other

6    case where, you know, we did something inconsistent

7    with this case, I'm sure they'll bring it to the

8    Court's attention.

9           In litigating the fair notice defense, I

10   think our position has been, both with respect to

11   this subpoena, but also the broader subpoena --

12   well, the subpoena to us, which is almost

13   identical -- is that this sort of notion that, like,

14   our conversations in the building are relevant to

15   the fair notice defense is just wrong.  And they --

16   you know, the letter has no case where a court has

17   ordered discovery of internal communications in this

18   fashion based on the fair notice defense.  You know,

19   the closest they can get, I think, is in *Ripple*.

20   The judge asked for a privilege log.  But even in

21   dealing with, you know, the sort of merits of the

22   defense, obviously, the *Ripple* court, just like all

23   the other courts, you know, did what this court did,

24   which is look at what the SEC has done in its

25   enforcement actions.  And, of course, look at what

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    the law itself says to determine whether there's

2    been, you know, a fair notice or not.

3          So, I think --

4          THE COURT:  But, Mr. Tenreiro, I'm going to

5    ask you, sir, to pause for a second.  Thank you.

6          And, of course, you cannot see me holding

7    up my hand because this is telephonic.  But let me

8    explain a concern that I have of what you've just

9    said.  And that is, you began this section by saying

10   that you did not believe that Coinbase could

11   identify any relevance to personal communications.

12   And I feel as though you and Mr. Schwartz may be

13   talking past each other, and I just would like this

14   clarification.

15        I can conceive of the possibility that

16   Mr. Gensler or other SEC representatives could be

17   using personal devices to have communications in

18   their official capacity.  So I certainly don't think

19   you would argue to me that, if perchance Mr. Gensler

20   were to, you know, find himself without his

21   SEC-issued phone and to use his personal phone to

22   communicate about something, you wouldn't be

23   withholding it on that basis.

24        I'm hearing your adversary speak about

25   devices, and I'm hearing you speak about

1  communications, and maybe you could help reconcile

2  that for me.

3          MR. TENREIRO:  Well, I think on the point

4  of devices, Your Honor, I think, you know, what

5  they're asking for is something incredibly intrusive

6  on a public official.  And I think the Second

7  Circuit, in the context of a deposition in the

8  *Letterman* case, has recognized that courts should be

9  very mindful before doing something of that sort,

10  for a variety of reasons, including they have better

11  things to do and, you know, they'll be mired in

12  endless litigation if they become, sort of, the

13  subject matters.

14          And, you know, where I'm struggling with

15  this -- I mean, you know, of course, the case law

16  makes no distinction between where the communication

17  occurs, if it's on a public device or the SEC's

18  phone or anything like that.  That's true as far as

19  that goes.  But the point is that the cases also

20  look at the SEC's actions, not at the actions of one

21  particular person that might -- you know, that has

22  no authority to bind the entity.  And so I think

23  before they, sort of, ask us to go into this fishing

24  expedition to, like, pick up his personal phone, you

25  know, they have to -- what's the basis for any

```
 1    notion that he's done that?  And what's the basis

 2    for the relevance, even if he had, right?

 3              That's, sort of, where we're struggling.

 4              THE COURT:  Okay.  I understand that.

 5              I derailed you, sir.  Please continue with

 6    your argument.

 7              MR. TENREIRO:  Your Honor, you know, beyond

 8    that, as I mentioned, you know, the core of our

 9    position here is -- you know, Mr. Schwartz is

10    talking about, well, let's talk about a search

11    protocol.  Let's talk about, you know, what terms

12    you could look at.  And again, that, sort of, misses

13    the threshold issue for the Commission, which is,

14    you know, we're going to start searching the phones

15    of prominent academics because they were -- you

16    know, they might be heard on the application of law.

17              I'm not sure that Coinbase has fully

18    thought through the implications of that argument.

19    There's some pretty prominent lawyers that work at

20    Coinbase.  And maybe before they worked at Coinbase,

21    they thought the law was clear, so maybe we should

22    search their devices.  There's just no basis for

23    that, Your Honor.  We think that's just not what the

24    law requires in the context of fair notice.

25              And, again, if one looks at the cases, the
```

 1    analysis in those cases is identical to this Court's
 2    in the motion for judgment on the pleadings.  You
 3    know, the Court looks at the official agency
 4    guidance and position, and that's how the Court
 5    deals with the fair notice defense, and presumably
 6    that's how the Court would deal with the fair notice
 7    defense at the summary judgment stage.
 8         So I think we think on this basis alone,
 9    the subpoena is entirely improper, and it's sort
10    of -- you know, for them to say, well, we've been
11    stonewalled because we're not agreeing to a search
12    protocol -- again, we are not going to agree to a
13    search protocol simply because they want to do
14    something that there's no basis in law for them to
15    receive.
16         If I could just address -- you know, I
17    think the other point is that, you know, this is not
18    really an individual-capacity subpoena, but I'm not
19    sure they're even disputing that.  I mean, they're
20    asking for his communications, really, in his
21    personal capacity.  It's a matter of where he might
22    have had them.  So, you know, it really is a burden
23    on the SEC that's at issue here.
24         And then this notion about the
25    communications before he was Chair -- I hear the

1    Court not finding their argument persuasive, so I

2    will be brief on this point.  But their letter talks

3    about how, you know, Mr. Gensler might reflect the

4    public's understanding, or he might have shaped the

5    public's understanding.  There's just no basis in

6    any case on the fair notice defense for the notion

7    that a citizen could do something like that, no

8    matter how prominent they may be.  And, as I said

9    earlier, I think the implication of that would be

10   that all of my law professors, and the ones that

11   Mr. Schwartz and I shared, would be subjecting

12   themselves to, well, let's come up with some search

13   protocol for their phones, and if nothing turns up,

14   well, then, that's okay, right?  And maybe even

15   Coinbase's own lawyers, who might have given them

16   some thoughts about how the law applied.

17           The problem is, the fair notice defense is

18   an objective defense, and it's not about what one

19   individual person might have thought.  And I

20   certainly don't know of any case where one

21   individual who did not work at the SEC might have

22   "shaped the public's understanding," which is what

23   they say in their letter.

24           So, in summary, Your Honor, we think the

25   subpoena, you know, should be quashed for a variety

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    of reasons.  Coinbase has what it needs to advance

2    its objective defense.  It has the SEC Guidance and

3    Actions.  The Chair is not a fact witness.  He's

4    certainly not an expert witness on the law.  And I

5    don't think they can possibly articulate any

6    relevance to these materials, you know, which

7    include things like his court syllabi to students at

8    MIT, like they subpoenaed MIT for.  And for that

9    reason, you know, we don't think it's a productive

10   use of our time to talk about search protocols to

11   intrude into an individual's phone in that way.  And

12   for that reason also, we believe that the subpoena

13   should be quashed.

14            THE COURT:  Okay.  Thank you very much.

15            Mr. Schwartz, anything to be said in reply?

16            MR. SCHWARTZ:  Very briefly, Your Honor.

17            There was just one thing my friend

18   mentioned about a precedent that's quite relevant,

19   that I think didn't quite capture everything exactly

20   right; namely, the *Ripple* court.  There was the

21   discussion with Your Honor about whether discovery

22   had been awarded on fair notice involving internal

23   communications.  And Mr. Tenreiro said the *Ripple*

24   court ordered just a privilege log on discovery, and

25   that's not accurate.

        AMM TRANSCRIPTION SERVICE - 631.334.1445

1          The *Ripple* court ordered discovery of 19

2    custodians at the SEC, including then-Chair Clayton.

3    And it included not just, ultimately, the disclosure

4    of a log, but also the production of nonprivileged

5    documents; namely, external communications involving

6    those custodians with, among others, token issuers,

7    members of the market, and so on, analogous in our

8    case.

9          And so I think it's important just to

10    correct that the -- there is quite clear precedent

11    for the relevance of the information that we're

12    seeking attendant to our fair notice defense.  And

13    that makes sense, of course, because the Second

14    Circuit in *Upton* made very clear the Commission's

15    own awareness of the public's substantial

16    uncertainty was relevant.  It was, indeed, the basis

17    for the finding of a lack of fair notice in that

18    case.  In *General Electric*, the D.C. Circuit also

19    made clear, agency disagreement is probative of a

20    lack of market fair notice.

21          And so I just wanted Your Honor to have the

22    complete case-law record before you.  Otherwise, you

23    know, I think we've heard, obviously, both sides'

24    views.  And in particular, as I say, your guidance

25    has been helpful.  And I think further guidance with

```
 1    respect to the period of time of Mr. Gensler's
 2    tenure as Chair, where these communications were
 3    happening in the way that it appears he was
 4    conducting them, would help to advance the ball on
 5    this subpoena and on the broader issues, as I said,
 6    that Coinbase would be very pleased not to have to
 7    bring before Your Honor, if we can break through the
 8    gate and have constructive discussions about how to
 9    accomplish, you know, a targeted discovery in a
10    meaningful way.
11          MR. TENREIRO:  Your Honor, I'm sorry.  Just
12    briefly -- I know you --
13          THE COURT:  This is who?  Is this
14    Mr. Tenreiro again or someone else?
15          MR. TENREIRO:  Yes, Your Honor.  If I can
16    just -- yes, it's Jorge Tenreiro.
17          THE COURT:  Go ahead, sir.
18          Okay.  Go ahead, please, sir.
19          MR. TENREIRO:  Your Honor, actually, the
20    issue of the personal devices did come up in *Ripple*.
21    I mean, I think they've put in the record, Document
22    163 of that docket, and the defendants there asked
23    for search of personal devices, which was not
24    granted.  The Court will be able to see it in that
25    endorsement in 163, to the extent we're still
```

```
 1    talking past each other on the devices versus
 2    communications point.
 3              THE COURT:  Okay.  Thank you.
 4              Mr. Schwartz, I love the idea that you
 5    think I can provide clarity in this instance, and it
 6    doesn't appear that I can.  I do have quite strong
 7    views about the utility or the probativeness or the
 8    disproportionate burden of statements made by
 9    Mr. Gensler before he became Chair of the
10    Commission.  I haven't yet decided whether his
11    statements as Chair, or, more particularly as you
12    suggest, his personal statements actually would be
13    illuminative of the issue.  I'm just not sure that
14    it is.  But when I was considering the fair notice
15    defense in the motion for judgment on the pleadings,
16    I was hemmed in by 12(c) and the attendant
17    restrictions on the materials I could consider.  So
18    you don't appear to be withdrawing the subpoena, so
19    we have to go forward with it.
20              It would be my preference, Mr. Schwartz --
21    but I will listen to you if you disagree with this,
22    and I mean that very sincerely.  Sometimes I won't,
23    but this time I will -- where I think, given the
24    manner in which the Commission has responded in
25    the -- or identified the issues in the June 28
```

1    letter, and given what I've just said to you today,

2    I'd actually prefer that you and your team begin

3    with a motion to compel rather than a motion to

4    quash.

5          Now, if you think that that's procedurally

6    improper -- but I actually would welcome the first

7    words coming from you.  And I'll listen if you think

8    that, again, that's inappropriate for any reason.

9          MR. SCHWARTZ:  Perfectly sensible,

10   Your Honor.  We hear you and understand and are glad

11   to proceed accordingly.

12         THE COURT:  Okay.

13         Mr. Schwartz, can I ask you to work with

14   Mr. Tenreiro for a schedule for this motion?

15         MR. SCHWARTZ:  Of course.

16         THE COURT:  Thank you.

17         And, Mr. Tenreiro, if you want to -- I

18   mean, to me, I don't know that there needs to be a

19   formal cross-motion to quash because if I'm not

20   granting the motion to compel, then I think you,

21   sort of, won.  And if I am, then your motion to

22   quash has been overruled to that degree.  But I'll

23   let you think about that offline.

24         So perhaps, Mr. Schwartz, could I have

25   something, a letter with a schedule on Monday?  Is

1    that acceptable?

2            MR. SCHWARTZ:  Certainly, Your Honor.

3            THE COURT:  Okay.  And, you know, again,

4    I'm here if there's another motion that you want to

5    bring.  Perhaps, Mr. Schwartz, if you want to begin

6    the process of pre-motion submissions on this other

7    issue you were stating, I'll listen to you.  If you

8    and Mr. Tenreiro think somehow it can be folded into

9    the motion that we're now scheduling, I'll listen to

10   you on that as well.  Or it may be that after

11   resolving that motion, you'll both have a better

12   sense of how to approach meet and confers in this

13   area.

14           MR. SCHWARTZ:  Your Honor, could I ask two

15   procedural questions about what you just said?  I

16   want to make sure I get it right.

17           THE COURT:  Of course.

18           MR. SCHWARTZ:  One question about the

19   motion to compel coming from us -- this reflects a

20   bit the oddity that Your Honor identified at the top

21   of the call.  We've served a Rule 45 subpoena on

22   Mr. Gensler.  The natural course would be to move to

23   compel a response from Mr. Gensler, but I understand

24   the guidance to work with our friends at the SEC on

25   a schedule and briefing, which would put the SEC in

1    the position of responding to a motion to compel

2    against Mr. Gensler.

3            And I just wanted to -- that was question

4    one to think through.  Is that the, sort of,

5    procedural cast that seems appropriate to you?  Or

6    is there a different target of the motion to compel,

7    namely Mr. Gensler.

8            THE COURT:  No.  I mean, I -- no, I

9    understand what you're saying.  I really wasn't --

10   because I've been so focused on his statements, even

11   his personal statements in his capacity as Chair, I

12   did think the Commission could be heard on these

13   issues.  But, you know, if over the weekend, you and

14   your colleagues think that's completely

15   inappropriate, I'll hear from you on that, and I'll

16   consider whether he needs to have someone else speak

17   for him.

18           MR. SCHWARTZ:  Good.  Thank you.

19           And just the second procedural question.

20   You mentioned agreeing on a schedule and our

21   considering whether to move forward with a

22   pre-motion -- whether to fold into our motion to

23   compel these broader set of issues as to which we've

24   reached an impasse.  And, to be sure, there are

25   others where we're still either reserving or trying

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  to work with the SEC to resolve if we can avoid it.

2        Would Your Honor -- would the idea be to

3  skip over what would be the pre-motion letter

4  procedure that Your Honor's rules typically provide

5  for if we were to fold these other issues into a

6  motion to compel?

7        We're happy to do that.  It's obviously

8  more efficient, but we don't want to circumvent your

9  rules if you feel otherwise.

10       THE COURT:  No.  I do appreciate you asking

11 for that clarification.

12       I am here to receive your pre-motion

13 submissions, but part of the reason for having

14 pre-motion submissions is with the hope that the

15 parties between themselves can clarify issues or

16 that I can decide them very quickly.

17       It's not clear to me that the issue that

18 you're now describing -- this, sort of, latent issue

19 about the Commission's view as to what is worthy of

20 production or relevant and what is not -- is

21 something that's going to get resolved in pre-motion

22 submissions.  As a result of that, it may be the

23 case that it makes more sense just to fold it into,

24 because it is part of the dispute you're now

25 describing to me.

```
 1              MR. SCHWARTZ:  Your Honor, we feel very
 2    much the same way.  I think you're exactly right.
 3    We've had many, many meet and confers and, I think,
 4    in good faith, have tried to work it out with each
 5    other.  And here again, you know, we've just met a
 6    wall of a refusal to log almost everything where
 7    we've sought discovery or even search for almost all
 8    of it.  And so that leaves us, we think, at an
 9    impasse that warrants Your Honor's attention that a
10    pre-motion conference, you know, unfortunately,
11    likely won't persuade the parties to stand down
12    from.  So we'll give very serious consideration to
13    that in the name of efficiency and coordinate with
14    our friends about a schedule to bring to Your Honor
15    on Monday.
16              THE COURT:  Okay.  And, again, I will take
17    no offense if that issue first is articulated in the
18    formal motion and not in a pre-motion submission,
19    given that we've had these discussions today.
20              MR. SCHWARTZ:  Very good.  Thank you,
21    Your Honor.
22              THE COURT:  Okay.  No.  Thank you very much
23    for the opportunity to clarify those issues.
24              Mr. Tenreiro, is there anything else I
25    should be addressing with you?
```

 1              MR. TENREIRO:  No.  Thank you, Your Honor.

 2     That's it.

 3              THE COURT:  Okay.  Thank you.

 4              All right.  Well, then I will let you guys

 5     go forth and do more important things than talking

 6     to me this afternoon.  I thank you very much again

 7     for being willing to participate in a conference on

 8     short notice.  And I do thank you for the clarity

 9     and precision with which you're articulating your

10     arguments to me, so I know that will continue.

11              I'll let you go.  I thank you very much.

12     We are adjourned.

13              MR. SCHWARTZ:  Thank you, Your Honor.

14              MR. TENREIRO:  Thank you.

15

16

17                          0o0

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5   foregoing transcript of proceedings in the case of

6   SEC v. Coinbase, Inc. and Coinbase Global Inc.,

7   Docket #23CV4738 was prepared using digital

8   transcription software and is a true and accurate

9   record of the proceedings.

10

11

12   Signature  _____
                     *Adrienne M. Mignano*

13                ADRIENNE M. MIGNANO, RPR

14

15   Date:        July 15, 2024

16

17

18

19

20

21

22

23

24

25