UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                        *Plaintiff*,

              v.

COINBASE, INC. AND COINBASE GLOBAL, INC.,

                        *Defendants*.

23 Civ. 4738 (KPF)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF COINBASE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants*

Dated: August 12, 2024

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

    A.    The SEC should be ordered to search Coinbase's proposed custodians, who are likely to have information highly relevant to the adjudication of the SEC's claims. ....2

    B.    The SEC should be ordered to run searches relating to Coinbase's fair notice defense. ....4

    C.    The SEC's inadequate search of, and ongoing refusal to log, documents from outside its Enforcement Division warrant relief from the Court. .................................5

CONCLUSION................................................................................................................................6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Citizens Union of N.Y.* v. *Att'y Gen. of N.Y.*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017) ................................................................................4

*Deutsche Bank Secs. Inc.* v. *Kingate Global Fund Ltd.*,
    2022 WL 3644822 (S.D.N.Y. Aug. 24, 2022) .....................................................................6

*During* v. *City Univ. of N.Y.*,
    2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006) ......................................................................2

*Gen. Elec. Co.* v. *U.S. Env'l Prot. Agency*,
    53 F.3d 1324 (D.C. Cir. 1995) .........................................................................................4, 5

*In re UBS AG Secs. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................................................4

*SEC* v. *Kik Interactive Inc.*,
    1:19-cv-05244 (S.D.N.Y.) ..............................................................................................5 n.3

*SEC* v. *LBRY, Inc.*,
    1:21-cv-260 (D.N.H.) .....................................................................................................5 n.3

*SEC* v. *Ripple Labs Inc.*,
    1:20-cv-10832 (S.D.N.Y.) ............................................................................................ *passim*

*Upton* v. *SEC*,
    75 F.3d 92 (2d Cir. 1996) ................................................................................................4, 5

*Vaigasi* v. *Solow Mgmt. Corp.*,
    2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ..................................................................3 n.2

**PRELIMINARY STATEMENT**

In opposing Coinbase's motion, the SEC does not attempt to defend a number of its positions that led to the instant dispute. After refusing for weeks to prepare a preliminary 'hit report' as the basis for constructive discussion, the SEC has now acceded to this threshold request—seeking to use those hit-report results to cut off, rather than facilitate, an informed discovery protocol. But the burden the SEC reported to the Court was concededly overstated by over four times the actual numbers. And after rejecting Coinbase's request for a produce-or-log search of non-Enforcement files, the SEC now heralds that it *is* searching non-Enforcement files—by a self-crafted protocol that it had previously refused to run unless Coinbase waived all of its discovery positions.

These reversals the SEC now touts do not obviate the need for relief from this Court. The SEC still argues that discovery from non-Enforcement personnel—from SEC Commissioners and from staff in key Divisions and Offices, including FinHub, Corp Fin, and Trading and Markets—is "not relevant to the SEC's [affirmative] claims." Opp. 5-8. On that basis, it refuses to search more than a fraction of the custodians searched in *Ripple*—and not a single Commissioner or staff member from Trading and Markets (the SEC division that regulates major securities market participants). Coinbase provided the SEC with exemplar communications between those specific personnel and the entities affiliated with named tokens that bear directly on whether transactions in the tokens were transactions in "a security." Opp., Ex. 11 at 10. The SEC offers no substantive response, stating only that its curated search now catches *that* exemplar document, never mind others like it. *See infra* pp. 2-4.

The SEC also still refuses to search for documents related to Coinbase's fair notice defense. After proclaiming this defense "effectively dead" and forswearing any such search "unless and until" the Court confirmed it was "still in the case," the SEC now has that confirmation but persists in asserting the documents' categorical irrelevance. *See infra* pp. 4-5.

The SEC also still refuses to log any non-Enforcement documents reviewed and withheld

for privilege—in direct contravention of the Court's 502(d) Order. Coinbase is entitled to test the SEC's privilege assertions and will only be in a position to do so if the SEC provides the log this Court has already ordered, despite the SEC's attempt to relitigate that Order. *See infra* pp. 5-6.

Finally, with respect to Chair Gensler, the SEC refuses even to ask whether he receives or sends relevant communications on his personal e-mail. The opposition offers no basis for this refusal.

For these reasons, Coinbase seeks an order requiring the SEC to: (i) search Coinbase's proposed custodians; (ii) run searches addressing its fair notice defense; and (iii) log withheld documents in accordance with the Rule 502(d) Order. The parties thereafter can confer to address any burden concerns and agree on an appropriate search protocol, as Coinbase has sought to do for months.

## ARGUMENT

**A. The SEC should be ordered to search Coinbase's proposed custodians, who are likely to have information highly relevant to the adjudication of the SEC's claims.**

RFPs 2, 4-6, 8, 13, 15-17, 20-21: In its opening brief, Coinbase showed that, during the relevant period, SEC Commissioners and non-Enforcement Division staff communicated with issuers—including entities affiliated with tokens named in the complaint—about facts related to those tokens and services and the application of the securities laws thereto. Mot. 5-7. The SEC does not seriously contest that such communications are relevant. Instead, it says that Coinbase's requests "sweep[] far too broadly," are a "classic fishing expedition," and involve more than the three assets searched across 19 custodians in *Ripple*. Opp. at 6-7. These are undue-burden arguments masquerading as relevance objections. "The relevance and undue-burden inquiries . . . are two distinct steps." *During* v. *City Univ. of N.Y.*, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006). Regardless, the arguments ring hollow.

Far from a fishing expedition, Coinbase demonstrated that relevant documents outside of Enforcement exist: it provided the SEC with an exemplar document sent by the "DASH Core Group" to the staff in FinHub, Corp Fin, and Trading and Markets. *See* Dkt. 147.09. That memorandum

aggregated facts that the SEC itself has argued bear directly on the *Howey* analysis, including the contemporaneous available uses for DASH, the number of transacting users and masternodes, and the voting behavior and decentralization of DASH token holders. *Id.* at 4, 6, 7, 9. The SEC's only response—that its eleventh-hour "searches . . . capture" that one document—misses the point. Opp. 7. As the SEC's own exhibit makes clear, "staff from several of the Commission's divisions and offices . . . regularly interface on a daily basis with multiple innovators, developers, and entrepreneurs on the topic of digital assets." Dkt. 152.13 at 14. The DASH memorandum is just one example of such relevant communications.[1] Coinbase is entitled to others that may exist, and the SEC should search for them.[2]

Comparing the burden here to that in *Ripple*, Opp. 7, is no help to the SEC. In *Ripple*, the court ordered the production of documents from 19 non-Enforcement Division custodians, including multiple Commissioners—essentially what Coinbase seeks here. And while *Ripple* ordered discovery relating only to three tokens, that action concerned just *one* token (XRP). Here, the SEC has sued the largest U.S. crypto exchange and put at issue transactions in *12* tokens. As the architect of its complaint, the SEC cannot be heard to complain about a scope of discovery that matches its pleadings.

The SEC also attempts to shield itself from further relevant discovery because it "review[ed] or produce[d]" 357,000 documents. Opp. 7. But nearly all of that comprised re-productions of files that *Coinbase* produced to the SEC in the pre-litigation investigation or files from public websites the SEC mass-downloaded by an IT vendor. Setting aside the lack of any new disclosures in such re-productions of files from Coinbase or public websites, producing these materials involved little burden.

RFP 27: The SEC does not contest that documents and communications concerning Coinbase's

---

[1] The SEC highlights one "example" document concerning FTX, Opp. 6, but ignores that *Coinbase* itself met numerous times with the SEC, including with Chair Gensler. *See* Mot. 7. And it again misses the point: SEC Commissioners and staff frequently met with, and received highly relevant materials from, digital asset issuers and trading platforms. Coinbase is entitled to documents concerning those and other such meetings.

[2] The SEC invokes *Vaigasi* v. *Solow Mgmt. Corp.*, Opp. 6, where a *pro se* plaintiff served 1,100 document requests, many entirely irrelevant. 2016 WL 616386, at *9-13 (S.D.N.Y. Feb. 16, 2016). That is nothing like the dispute here.

public listing may contain "facts compiled . . . about the digital assets on Coinbase's exchange," Mot. 10, including the named tokens. Nor does it contest the relevancy of those facts to the *Howey* analysis. By failing to address these arguments in its opposition, the SEC "concede[s] the point by silence." *In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012).

### B. The SEC should be ordered to run searches relating to Coinbase's fair notice defense.

The SEC objects to Coinbase's fair-notice requests on the same grounds: that the discovery sought allegedly is "not at all like" that in the authorities cited in Coinbase's motion. Opp. 8. Not so.

Take, for example, the *Ripple* discovery ruling with respect to fair notice: the court ordered the SEC to produce "communications with third-parties, including external agencies and market participants," and "[i]ntra-agency memoranda or formal position papers on Bitcoin, Ethereum, and XRP, including Division reports, final reports of internal working groups, or formal position papers submitted to the Commissioners." Dkt. 152.10 at 7. The SEC tries to distinguish that ruling as "based in part on aiding and abetting claims" requiring scienter, but the court stated explicitly that those documents were also "relevant to the fair notice defense." Dkt. 152.08 at 51.

And while the SEC cites *Citizens Union* to claim that Coinbase is seeking "expansive evidence," the SEC likewise ignores that in that case the government had already "produced *email communications* between the Governor's Counsel's Office and third-party entities"—the precise discovery the SEC resists here. 269 F. Supp. 3d 124, 140 (S.D.N.Y. 2017) (emphasis added).

The SEC's argument that the *Upton* and *General Electric* analyses were limited to "formal agency pronouncements" is also incorrect. Opp. 8. In *Upton*, the court looked to, among other evidence, the Commission's (i) informal instructions to "individual broker-dealers to discontinue" the practice at issue, and (ii) failure to take "steps to advise the public that it believed the practice was questionable," notwithstanding its "aware[ness]" of ongoing, allegedly violative conduct. 75 F.3d 92, 97, 98 (2d Cir. 1996). Mr. Upton made a record showing that the Commission's


conduct had spawned "substantial uncertainty" as to what the law prohibited, which deprived him of fair notice. *Id.* at 98. Coinbase should likewise be permitted to make its record here.

Nor is the SEC's characterization of *General Electric* accurate. *See* Opp 9. The evidence of intra-agency "confusion" that deprived G.E. of fair notice was not "two *official* letters." *Id.* (emphasis original). It was one letter from a regional office and G.E.'s assertion that another office "had *told* it the same thing." 53 F.3d 1324, 1332 (D.C. Cir. 1995) (emphasis added). The word "formal"—the SEC's basis for limiting evidence relevant to fair notice—nowhere appears in the opinion.[3]

### C. The SEC's inadequate search of, and ongoing refusal to log, documents from outside its Enforcement Division warrant relief from the Court.

After refusing for weeks to run the hit-report search as Coinbase requested, the SEC now asks the Court to bless its unilaterally circumscribed search. The Court should not do so.

*First*, the SEC seeks to defend its limited, unilaterally crafted search by contending Coinbase sought "review [of] . . . 3 million more documents." Opp. 11. But we know that the 3,000,000-figure is inflated: the SEC's initial search was run across 22 custodians *without* de-duplication, *see* Dkt. 151.02, Att. B n.1—a point the SEC now concedes in revising its hit report to approximately 690,000, Dkt. 155. And even that revised volume continues to reflect the use of an expansive search term not proposed by Coinbase.[4] In any event, Coinbase never asked the SEC to review all documents identified by the search; it sought the hit report to allow informed discussion and tailoring to address any substantiated burden issues. The SEC's decision not to run that search prevented those discussions.

Nor has Coinbase requested that the SEC "sample" Chair Gensler's e-mails. Opp. 12. Coinbase asked that Mr. Gensler confirm whether relevant communications exist on his personal e-mail. The

---

[3] The SEC again relies on the inapposite decisions in *Kik* and *LBRY*, Opp. 9; those cases involved subpoenas for *depositions*, not documents. Dkts. 152.09 at 2 (discussing *Morgan* doctrine), 136.08 at 2-4 (same).

[4] *Compare* Dkt. 147.03, App'x (search with "certainty"), *with* Dkt. 151.02 Att. B (*all* permutations of "certain").

SEC refuses, with no justification, even to ask him the question.[5] The Court should order it to do so.

*Second*, the SEC offers no justification for its circumscribed list of custodians. As noted above, Coinbase demonstrated that Commissioners, and Trading and Markets personnel, actively engaged with market participants on core issues in this litigation, including entities affiliated with the tokens named in the complaint. And Coinbase's proposed custodians involve the same persons, or persons in the same roles, as the custodians ordered in *Ripple*. The SEC disputes none of this.

*Third*, the SEC's refusal to log any documents it withholds, beyond those from its "Coinbase Investigative File," runs contrary to this Court's Rule 502(d) Order.[6] The SEC's reliance on *Deutsche Bank*, *see* Opp. 12, is unavailing—there, the court had not previously issued an order resolving the parties' dispute over logging requirements, and it ultimately *did* order a "document-by-document" log. *See* 2022 WL 3644822, at *7-10 (S.D.N.Y. Aug. 24, 2022). Coinbase will work in good faith to agree on a reasonable search protocol, but the incremental burden of logging relevant documents withheld after review is minimal, and largely automated; the SEC should not be excused from it.

## CONCLUSION

For these reasons, Coinbase asks the Court to grant its motion to compel the SEC to search the custodians proposed by Coinbase, to run searches addressing its fair notice defense, and to log withheld documents in accordance with the Rule 502(d) Order. With the foregoing, Coinbase remains ready to confer with the SEC on specific search strings to address burden concerns.

---

[5] The SEC misses the point by invoking the Chair's congressional testimony. Opp. 12. There is no dispute that, while Chair, Mr. Gensler made numerous public statements on relevant issues in his assertedly personal capacity *and not in his official role as SEC Chair*—the simple question is whether, while Chair, Mr. Gensler similarly communicated about such relevant statements in his personal capacity by using his personal e-mail. If not, Mr. Gensler should say so. The SEC's assertion that Coinbase "pervert[s]" the meaning of the disclaimer that preceded the public statements at issue, Opp. 10—"my views are my own, and I'm not speaking on behalf of the Commission or the SEC staff," Dkt. 146 at 10—likewise misses the mark. Chair Gensler well knows how to distinguish his statements as Chair, as opposed to those in his personal capacity: "I'd like to note that my views are my own as *Chair of the* [*SEC*], and I am not speaking on behalf of my fellow Commissioners or the staff." *Prepared Remarks Before the Yale Law School* (Feb. 13, 2024) https://tinyurl.com/bde475fk (emphasis added).

[6] The SEC points to the absence of a log from Coinbase to distract from its conduct. Coinbase has yet to furnish a log because, to date, it has withheld *no documents* from its production on the basis of privilege.

Dated: August 12, 2024  
New York, New York

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

/s/ *William Savitt*
William Savitt
Kevin S. Schwartz
Sarah K. Eddy
Adam M. Gogolak
David P.T. Webb
Emily R. Barreca
51 West 52nd Street
New York, New York 10019
(212) 403-1000
wdsavitt@wlrk.com

Steven R. Peikin
Kathleen S. McArthur
James M. McDonald
Julia A. Malkina
Olivia G. Chalos
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Defendants*