```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
           ------------------------------:

SECURITIES AND EXCHANGE         : Case No.: 23-cv-4738

COMMISSION,                     :

                   Plaintiff, :

     v.                         :

COINBASE, INC. and COINBASE     : New York, New York

GLOBAL INC.,                    : September 5, 2024

                   Defendants.:

           ------------------------------:
```

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE KATHERINE POLK FAILLA

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff:        U.S. SECURITIES AND EXCHANGE
                      COMMISSION
                      BY:  Jorge G. Tenreiro, Esq.
                      100 Pearl Street
                      New York, New York 10004

For Defendant:        WACHTELL, LIPTON, ROSEN & KATZ
                      BY:  Kevin S. Schwartz, Esq.
                      51 West 52nd Street
                      New York, New York 10019

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE  631.334.1445

THE DEPUTY CLERK:  Your Honor, this is in the matter of SEC versus Coinbase, Inc, et al.

Counsel, please state your name for the record, beginning with the SEC.

MR. TENREIRO:  Good afternoon, Your Honor. This is Jorge Tenreiro on behalf of the Securities and Exchange Commission.

THE COURT:  Good afternoon, sir.  And I am aware that you have colleagues with you participating on the line.  I thank them all for appearing.

Representing the Coinbase entities, please.

MR. SCHWARTZ:  Good afternoon, Your Honor. Kevin Schwartz here from Wachtell, Lipton on behalf of Coinbase.

THE COURT:  All right.  Thank you very much.  And I understand that you have colleagues as well from the Wachtell and SEC firms, and I thank them for appearing.

After we met yesterday, I thought and thought some more about our discussions, and I drafted an oral decision last night and finalized it.  Well, finalized it in advance of this conference.  So I am going to read it into the record and I will ask the parties, someone can

decide who, to obtain a transcript of this decision at whatever speed you think is appropriate.

I will issue an order later today.  It may not get docketed until tomorrow, but it's only a bottom line order that reflects what happened and not the reasons why.

Let me begin, as I always should, by thanking you for your helpful and comprehensive submissions in connection with the motion to compel that the Coinbase entities filed.  I also appreciated your availability for oral clarification of the points in dispute, which was easier for me than seeking supplemental briefing.

And let me just note, because I feel like it, that I appreciate it as well, and I continue to appreciate the level of advocacy, written and oral, that I get in this case.  It is great for me and it is great for my clerks to see how real lawyering is done.  So I thank you for that.

Separately, I'm confirming orally that in light of certain representations made by counsel for the SEC, Coinbase is no longer pursuing its request to compel searches of Mr. Gensler's personal e-mail accounts and devices.

Now, for the reasons I'm about to set

forth, I am granting in substantial part the remainder of Coinbase's motion to compel. However, in a manner that will soon become clear, I took to heart the statements of Coinbase's counsel about their sincere desire to work with the SEC to address certain search terms that yielded large numbers of potentially irrelevant documents. I am also mindful of the time that the SEC has spent already in producing and logging the discovery productions undertaken to date. I have no reason to discredit their estimates of the amount of work it would take to comply with Coinbase's request for production in their current state.

Now, I also want to say at the outset that though I gave very serious consideration to the Commission's request, I am requiring that responsive documents be either produced or logged, and that the logs be categorical but include metadata information.

Understanding the arguments that were made to me, understanding that some judges have concluded otherwise, it is my view that inclusion of the metadata is appropriate and will give the defense the information it needs to challenge, as appropriate, the SEC's privilege assertions.

Turning now to the analysis, having left these preliminary points behind, I'm not going to read into the record the relevant legal standards. I think the parties do not dispute those standards. If you disagree, let me know afterwards and I'll give you the case law in a separate written or oral supplement.

Instead, as I previewed for the parties, my focus has been balancing the relevance of the materials sought by Coinbase with the difficulty for the SEC in isolating and reviewing that material. Or, if you want to do this a little bit more metaphorically, the likelihood that a whole lot of haystacks will have to be reviewed in order to find a few needles.

So, on this point, let me note that I do not agree with the SEC's foundational premises that the facts relevant to the determination of Coinbase's liability, or not, are unlikely to be in serious dispute. Nor do I agree with the premise that the evidence sought by Coinbase is for that reason, irrelevant or somehow disproportionate.

Beginning with the answer and continuing with the motion for judgment on the pleading submissions, Coinbase has explained in considerable

detail why it believes that the SEC's position on the application of the securities laws to digital assets isn't about faith, and conversely, why reasonable market participants could not fairly have been aware of the SEC's current position.

In other words, the relevant facts concerning Coinbase's liability are, and remain very much in dispute. What is more, I agree with Coinbase that it should be able to defend itself against these very significant charges by obtaining at least some of the evidence it seeks in discovery. And as I have hinted at in the past, there's a degree to which the SEC is the architect of Coinbase's current discovery demands. By pleading the complaint as it did, it is the SEC who set the parameters of the universe of permissible discovery.

And let me then turn to those permissible areas of discovery. I'll begin with what we've termed the Howie issue, the Howie discovery, and I agree with Coinbase that it is entitled to discovery on that issue. I think Coinbase is entitled to the majority of the search terms and the majority of the custodians that were put forward to the SEC and that were used by the SEC for the test runs discussed in the SEC's opposition papers.

As Judge Netburn noted, in allowing analogous discovery in the Ripple litigation, this quantum of discovery is reasonable for an incredibly high stakes, high value litigation.  However, and all of that being said, in recognition of the burdens that have been cited by the SEC in complying with such a request in its current form, I offer three provisos.

First, I am not requiring the Commissioners themselves to be searched as custodians, because I agree with the SEC attorneys that of the putative custodians listed, the Commissioners are among the least likely to have responsive information that wouldn't also be held by one of the other custodians.

Now, if the parties wish, they can agree to drop other custodians and keep in the Commissioners. But this Court concluded that it was too much to permit searches of all 22 e-mail accounts or custodian accounts, and this seemed like -- still seems like a sensible line of demarcation.

Second, I am not requiring the SEC to produce purely intra-agency communications like e-mails sent from sec.gov to sec.gov addresses unless the communications also include attachments,

AMM TRANSCRIPTION SERVICE   631.334.1445

including but not limited to memoranda, PowerPoint decks and materials received from third parties.

In part, and I want to make this clear, this restriction is being imposed to limit the number of false positives. And I'm using that term to refer to ultimately non-responsive documents that end up being included among the hits. I recognize the possibility that a responsive document may elude production as a result of this restriction, but in my estimation, the number of false positives that would otherwise ensue would render such searches disproportionate under the Federal Rules of Civil Procedure.

Now, also in part, I am doing this because I recognize that most, if not all of these documents, would be subject to deliberative process or similar privileges. I'm declining to order their production streamlined, the generation of the SEC's privilege log.

Third, the third proviso is that I am ordering the parties to meet and confer to address some of the searches that yielded an outsized number of hits in order to see if there's a way to modify the search terms and thereby reduce the number of false positives. I've been looking in particular at

Exhibit B to Mr. Margida's declaration.  And if you look at the 10th through 18th entries, they generate a striking number of hits.  I'm certain that not all of these are responsive.

Thinking out loud for a moment, I would probably keep the Crypto and Howie and the digital asset and Howie searches as they are because of the potential criticality of the Howie case and analysis to the issues in dispute here.  But I think the other searches in this section might benefit from additional limitations, if possible.

And ones I'm thinking of are things like within a certain number of words, like ten words, or within the same sentence.  And then later on in Mr. Margida's chart, there's a search term "flow" that generates an outsized number of hits.  I have to believe that there are further search terms that could be added to ensure that hits can turn the particular token or ecosystem, and not something more generic.

So I am asking you, I guess, indeed, I am instructing you to meet and confer on these issues.  And if you can agree on further restrictions, great.  And if you can't agree, fine.  Send me a joint letter with your competing provisions.  No argument,

please, and I'll decide it promptly.

And then, as I mentioned a little while ago, I am directing the SEC to produce or log the resulting documents, responsive documents.

On the fair notice issue, however, I am coming out differently, at least at this stage. Now, contrary to the SEC's initial position, I don't believe this issue was decided by my motion for judgment on the pleadings opinion, and I do believe Coinbase is entitled to raise this as a defense. However, my analysis of the motion to compel aligns more with that of Judge Barbadoro in the LBRY case. The fair notice inquiry is an objective standard. And while I can admit of the possibilities that there might be probative evidence within the SEC's files, it is here that I think the amount of effort that would have to be expended by the SEC and the likelihood of false positives would render the effort disproportionate to the possible results.

I did note, however, you heard me use the term "at least at this stage." I did so for a reason. If other productions from the SEC suggest that there is an easily identifiable cache of relevant documents, I might revisit the issue.

Let me also note in this regard that I took

seriously Mr. Schwartz's point that there could well be a degree of overlap between the responsive to Howie production and the responsive to fair notice production.  The conclusion he draws is that the incremental -- and yes, I use that term "effort" in searching those terms is small enough to merit their inclusion.  And I'm actually coming out of the converse position, which is that Coinbase will obtain enough information from the Howie production to make their fair notice arguments to me, and, if appropriate, to make a supplemental motion to compel.

Accordingly, I'm not compelling production of documents using the fair notice search terms that I saw listed in Exhibit B.  And I think that leaves one issue that was only briefly touched on by the parties in their briefing.  That's request for production 27, which requested documents concerning Coinbase's public listing.  I am granting that motion to compel production or logging of this information subject to the provisos I've just described; limits on custodians, limits on the production of purely intra agency communications, and an expectation that the parties can agree on a limited number of search terms to run through the

accounts of a limited number or the limited number of custodians.

Now, I believe that resolves the open issues. Let me please confirm with the parties that that is the case.

Mr. Tenreiro, is there anything I -- actually, let me please begin with Mr. Schwartz, because it is Coinbase's motion. Is there anything I've left open?

MR. SCHWARTZ: No, Your Honor. Your Honor, this is Kevin Schwartz here. Thank you very much for taking us through all that. I think that covered all of the many topics we discussed yesterday, and we really appreciate it.

THE COURT: You have my thanks.

Mr. Tenreiro, is there anything I've omitted from your perspective, sir?

MR. TENREIRO: Your Honor, I wonder if the Court had, and maybe it'll be something we'll have to clarify later, but when the Court referred to the Howie term and the fair notice terms, was there a delineation there? That might help us in our own meet and confer process, rather than coming back to you.

THE COURT: Okay. Sure. If you'll just

please give me a moment.  I need to -- I just, of course, filed that away, which is why you need to hear it.

MR. TENREIRO:  Sorry.

THE COURT:  No, not at all.

MR. TENREIRO:  Sorry.

THE COURT:  No, no, please don't apologize. I'm looking at Docket Entry 151-2, it is the attachment B to Mr. Margida's declaration.  It's called the Coinbase search report.  That's what I had been working from.  And I had understood, for example, that perhaps the first entry, crypto and fair notice, going down to at least digital asset and confusion, were things that were designed to address the fair notice inquiry.  I understood the other things to be Howie test related.  And those were the delineations we were using yesterday.

If I can be a little bit more precise, my understanding from yesterday's conference was that there were one or two proposed search strings that were given by Coinbase to the Commission, and that the Commission wasn't able to run them sort of as a bunch, but had to break them out in the way they are here.  So that's what -- when I was thinking of taking things out for fair notice, what I was

thinking about were the first nine or so entries in attachment B.  If the parties hold a different view, I will certainly let you have that debate.  But that's what I was thinking about when I was issuing the decision.

Does that clarify the point, Mr. Tenreiro?

MR. TENREIRO:  Yes, Your Honor.  And I think you also preempted my next question, which is, if we have a different view of that, I guess maybe the first thing to do is discuss it with Coinbase and then come back if we can.  There's one there that I think may be -- that we maybe disagree on, but I'm fine to discuss it with them, if that's the Court's preference.

THE COURT:  It is the Court's preference. Rather than having it in this conversation, I think it is my preference.  And I'm going to tell myself that I should be more optimistic than I was yesterday in thinking about the parties' ability to work through these things.

Now, let me say this, because it's sort of the elephant in the room.  I know there are discovery deadlines.  Someone's going to tell me that they can't be met.  I get it.  But I at least want you to have these really robust discussions

with each other before you come back to me to start talking about those issues. So I'm not unmindful of that. I'm not unmindful that there's extra work, and that may result in a moving of the deadlines. But for now, you needed an answer to this motion to compel and you have it.

All right. With that, I'll let you go and do other things, I'm sure more exciting things. I thank you very much for your time again, and I'll hear from you as appropriate.

We are adjourned.

MR. SCHWARTZ: Thank you, Your Honor.

MR. TENREIRO: Thank you.

0o0

C E R T I F I C A T E

I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of SEC v. Coinbase, Inc. and Coinbase Global Inc.; Docket #23CV4738 was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature  *Adrienne M. Mignano*  _____

ADRIENNE M. MIGNANO, RPR

Date:        September 6, 2024